# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

**Michael Abbondanza, an individual, on his own behalf,**

 Plaintiff,

v.

**Jason Weiss,**
**Weiss Law Group, PC,**
**Brett Huff,**
**Richard Leslie,**
**Huff and Leslie, LLP,**
**Peter Leiner,**
**Giovania Paloni,**
  Defendants.

---

## COMPLAINT

---

 Plaintiff, Michael Abbondanza, an individual, on his own behalf, pleads as follows against Defendants Jason Weiss; Weiss Law Group, P.A.; Brett Huff; Richard Leslie; Huff and Leslie, LLC; Peter Leiner; and Giovannia Paloni, collectively referred to herein as "Defendants."

### JURISDICTION AND VENUE

1. The Complaint alleges claims for relief arising under the Racketeering and Corrupt Practices Act, 18 U.S.C. §§ 1961(1)(B), 1962 (c) and (d), 1964 (a) and (c), 1341 and 1343.  This Court has original subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338.

2.  The Court has personal jurisdiction over Defendant Huff and Defendant Leslie because Defendant Huff and Defendant Leslie reside and work in Colorado.  The Court has personal jurisdiction over Defendant Huff and Leslie, LLP, because it is a registered Colorado LLP.

3.  The Court has personal jurisdiction over all of the other Defendants because Defendants Weiss, Leiner, Paloni, and Weiss Law Group P.C. had contacts with and within Colorado, pursuant to F.R.C.P. 4, through their filing, involvement with, and prosecution of Colorado District Court case 1:16-cv-00432-MEH, which included sending mail to Colorado, sending emails to people or businesses in Colorado, making telephone calls to people and businesses in Colorado, and transacting business in Colorado.

4.  The Court has supplemental jurisdiction over the state law claims alleged in the Complaint as the claims are so related to the claims for which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United states Constitution, pursuant to 28 U.S.C. 15 U.S.C. § 1367.

5.  Venue is proper in this judicial district pursuant to 28 U.S.C. 15 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred or had effects in this District and because Defendants Huff, Leslie, Huff and Leslie, LLP, Weiss, Weiss Law Group, P.A., Leiner, and Paloni live and/or conduct business in this District.

## THE DEFENDANTS

6.  Plaintiff is informed and believes, and thereon alleges, that Defendant Jason Weiss is a licensed Florida attorney whose legal practice primarily, if not solely, includes filing complaints under the Americans with Disabilities Act (the "ADA).  Plaintiff is informed and

believes, and thereon alleges that Defendant Weiss is the President and Owner of Defendant Weiss Law Group, P.A.

7. Plaintiff is informed and believes, and thereon alleges, that Defendant Weiss Law Group, P.A. is a Florida Professional Corporation which does business at 5531 N. University Dr., #103, Coral Springs, Florida and which is involved in filing complaints alleging violations of the ADA.  Plaintiff is informed and believes, and thereon alleges, that approximately 33 of Defendant Weiss Law Group's ADA filings have taken place in this judicial district.

8. Plaintiff is informed and believes, and thereon alleges, that Defendant Brett Huff is a licensed Colorado attorney whose legal practice includes filing complaints under the ADA. Plaintiff is informed and believes, and thereon alleges, that Defendant Huff is a partner and owner of Defendant Huff and Leslie, LLP.

9. Plaintiff is informed and believes, and thereon alleges, that Defendant Richard Leslie is a licensed Colorado attorney whose legal practice includes filing complaints under the ADA. Plaintiff is informed and believes, and thereon alleges, that Defendant Leslie is a partner and owner of Defendant Huff and Leslie, LLP.

10. Plaintiff is informed and believes, and thereon alleges, that Defendant Huff and Leslie, LLP is a Colorado corporation, which does business in Edgewater, Colorado at 2480 Gray Street. Plaintiff is informed and believes, and thereon alleges, that 29 of Defendant Huff and Leslie's ADA filings with plaintiff Santiago Abreu have taken place in this judicial district. Defendant Huff and Leslie was involved as local Colorado counsel for some, if not all, of the complaints alleging ADA violations that Defendant Weiss and Defendant Weiss Law Group, P.A. filed in this judicial district, including, but not limited to those with plaintiff Santiago Abreu.

11. Plaintiff is informed and believes, and thereon alleges, that Defendant Peter Leiner is a Florida licensed attorney who practices law in Coral Springs, Florida.  Plaintiff is informed and believes, and thereon alleges, that Defendant Leiner was employed by Weiss Law Group, P.A. during the pendency of Defendant Weiss's underlying lawsuit against Plaintiff Abbondanza's restaurant in Bailey, CO, 1:16-cv-00432-MEH, which gives rise to this current Complaint.   Plaintiff is informed and believes, and thereon alleges, that Defendant Weiss informed Plaintiff's Counsel that Defendant Leiner ceased being employed by Defendant Weiss Law Group, P.A. immediately prior to case number 1:16-cv-00432-MEH being dismissed.

12. Plaintiff is informed and believes, and thereon alleges, that Defendant Giovannia Paloni is the owner of Complete ADA Compliance and is the person Defendant Weiss retained to write a report regarding the ADA violations alleged in case number 1:16-cv-00432-MEH. Plaintiff is informed and believes, and thereon alleges, that Defendant Paloni has never visited Plaintiff Abbondanza's restaurant in Bailey, CO, which was the subject of Defendant Paloni's report that was used by Defendant Weiss in prosecuting case number 1:16-cv-00432-MEH.  Plaintiff is informed and believes, and thereon alleges, that Defendant Paloni's business, Complete ADA Compliance, is located in Palm Beach County, Florida, based on the area code listed on Complete ADA Compliance's website; however, no address is listed on the website.

## GENERAL ALLEGATIONS

### The Conspiracy

13. Plaintiff is informed and believes, and thereon alleges, that all Defendants named herein, working for or with Defendants Weiss Law Group and Huff and Leslie, LLP, have formed a

criminal enterprise by using the Americans with Disabilities Act, Title III ("ADA") to institute actions based on fictional plaintiffs, false allegations of injury, and false allegations of standing to collect quick settlements from Colorado businesses and citizens.

14. Plaintiff is informed and believes, and thereon alleges that each member of the criminal enterprise (as more fully described herein), helps to further the scheme to make money for all involved in the conspiracy at the expense of Colorado businesses and citizens, most of whom as small business owners who cannot afford legal representation.

15. Plaintiff is informed and believes, and thereon alleges that for most businesses and business owners sued by Defendants Weiss Law Group and Huff and Leslie, LLP, it is cheaper to settle than to litigate the merits of the action.

16. Plaintiff is informed and believes, and thereon alleges that knowing the propensity of small businesses to settle cases early to avoid distraction from their business vocation and costly litigation, Defendants have perverted the purpose of the ADA for their own greed and financial gain. Plaintiff is further informed and believes, and thereon alleges that, in fact, the evidence will show that the Defendants had no interest in having the businesses they sued undertake any improvements to become ADA compliant.

17. Plaintiff is informed and believes, and thereon alleges that the lawsuits initiated by the criminal enterprise herein lacked merit, are frivolous and vexatious because of the Defendants' many false assertions made in furtherance of their fraudulent litigation. Specifically, the Defendants' made false assertions regarding allegations of disabilities, visits to the Colorado businesses, encountering of barriers, and further, false assertions about the existence of Defendants' plaintiff "Santiago Abreu," who is the named plaintiff in hundreds of cases brought by Weiss Law Group across the country.

18. In Colorado, approximately 70 businesses located in Denver, Breckenridge, and elsewhere in Colorado were allegedly visited by Santiago Abreu between July 2015 and May 2016. Within the next year, all of those businesses would be sued by Defendants, purportedly on behalf of Mr. Abreu.

19. The complaints in the approximately 70 lawsuits were identical, boiler-plate complaints, except for paragraph twenty, which contains the alleged ADA violations for each Colorado business.

20. The Defendants alleged in their approximately 70 complaints, including the complaint filed against Plaintiff Abbondanza's Bailey, Colorado restaurant, that "Santiago Abreu" and a driver drove from Denver to Breckenridge and stopped at all of these businesses on their way. "Santiago Abreu" was allegedly visiting Colorado to obtain "medicine" that could "only be purchased in Colorado." (See complaint in case number 1:16-cv-00432-MEH, attached hereto as Exhibit 1).

21. On July 14, 2015, one "Santiago Abreu" is claimed to have visited Plaintiff's Riverbend Market and Eatery in Bailey, Colorado, and allegedly suffered injuries as a result of encountering barriers based on his alleged disability.

22. Plaintiff and his restaurant Riverbend Market and Eatery, in Bailey, Colorado, were sued on February 23, 2016, approximately 7 months after this alleged visit on July 14, 2015. Defendants Weiss, Leslie and Huff, acting through the Weiss Law Group and Huff and Leslie, LLP, initiated litigation against Plaintiff on behalf of a "Santiago Abreu." (See Exhibit 1).

23. The only evidence of Santiago Abreu's visit to Riverbend Market and Eatery was a receipt for an eleven dollar purchase.  The receipt the Defendants produced from Riverbend Market

shows that the purchase was made on "14-15," but it does not show the month, and moreover, it does not have the signature line or name of the purchaser displayed.  The receipt is conveniently cropped to not show the signature line, the name of the purchaser, what item was purchased, or the month the purchaser visited Riverbend Market. (See Receipt of Santiago Abreu's alleged visit to Riverbend Market & Eatery in Bailey, CO, attached hereto as Exhibit 2).

24. The complaint in Exhibit 1 alleged 14 ADA violations, but almost all were found to be without merit. Four minor violations, such as the mirror being positioned approximately 3.5 inches higher than that permitted under the ADA, were the only ones ever found to have merit.  (See Plaintiff's expert report prepared by Mark Douglass of Peak Access, attached hereto as Exhibit 3).

25. Defendant Giovannia Paloni filed an expert report in the litigation based on photographs provided to her by Defendants; however, according to Defendant Huff, Defendant Paloni never visited Plaintiff Abbondanza's restaurant in Bailey, Colorado and, instead, relied on photographs that "Santiago Abreu" or his chaperone took of the alleged ADA violations and provided to Defendant Huff and Defendant Huff and Leslie, LLP, who then sent them to Defendant Paloni for preparation of a report.  (See Email from Defendant Huff to Plaintiff's Counsel dated September 14, 2016, attached hereto as Exhibit 4).  Plaintiff is informed and believes, and thereon alleges, that as of the filing of this Complaint, Defendant Paloni has never visited and inspected Plaintiff Abbondanza's restaurant.

26. Despite representations made by Defendant Huff that Paloni never visited Riverbend Market and Eatery and only relied on photographs taken by "Santiago Abreu" and his chaperon, Defendant Paloni stated in an "Affidavit of Non-Compliance" in her report dated December

1, 2016 at line 4, "I used physical site visits and observations of the subject property." (See Defendant Paloni's December 1, 2016 report, attached hereto as Exhibit 5.

27. In further conflicting statements, in Exhibit 1 at paragraph 20, footnote 1, Defendants Huff and Weiss, on behalf of Defendants Huff and Leslie, LLP and Weiss Law Group, P.A., state "It is believed that these same violations are present in the Women's Restroom. However, due to Mr. Abreu's gender, same could not be confirmed by Plaintiff." (See Exhibit 1, paragraph 20, footnote 1). If Defendant Paloni did actually conduct a "physical site visit and [conduct] observations of the subject property," as her affidavit in her report states (See Exhibit 5), then Defendant Paloni certainly would have been able to enter the women's restroom to confirm or deny whether the alleged violations were present in the women's restroom.

28. Moreover, the restrooms at Riverbend Market and Eatery are individual, single person restrooms, as opposed to multi-stall public restrooms. While the restrooms are marked with "male" and "female" placards, simply because the male restroom has a urinal and the women's restroom does not, there is no reason that "Santiago Abreu," even if not accompanied by Defendant Ms. Paloni, could not have entered the women's restroom to confirm or deny alleged ADA violations.

29. On April 6, 2016 Defendant Huff, local counsel for "Santiago Abreu," sent Plaintiff a demand letter for $15,000 to make the lawsuit go away. (See April 6, 2016 letter, attached hereto as Exhibit 6). Defendant Huff further informed Plaintiff that he could face "penalties of $75,000 for the first violation and $150,000 for each subsequent violation of the ADA." (See Exhibit 6).

30. Plaintiff and Riverbend Market and Eatery could not afford counsel, so the parent company for Riverbend – Tavin Foods, Inc. – was appointed pro bono counsel through the federal pro bono panel.

31. Courtenay Patterson, Plaintiff's Counsel, was appointed pro bono counsel for Tavin Foods, Inc. on August 1, 2016.

32. On September 14, 2016, Defendant Huff sent an email to Plaintiff's Counsel again urging Plaintiff to pay more than $10,000 for the lawsuit against his restaurant to be dismissed.  (See Exhibit 4).

33. In an unusual email to Abbondanza's counsel on October 19, 2016, Defendant Huff stated that he might "have to withdraw from the case" as local counsel for Mr. Abreu because he "may ultimately become a witness in this case."  (See email from Defendant Huff to Plaintiff's Counsel, attached hereto as Exhibit 7).

34. Following the email contained in Exhibit 7, Defendant Huff and Defendant Huff and Weiss, LLP, made no further appearances in the case, nor did Plaintiff's Counsel hear anything further from Defendant Huff or Defendant Huff and Weiss.  Defendant Huff and Defendant Huff and Leslie continue to be listed as counsel for Santiago Abreu in case number 1:16-cv-00432-MEH.

35. In December 2016, Plaintiff filed its expert report (See Exhibit 3), which shows that only 4 of the 14 alleged ADA violations had any merit and the 4 violations were very minor violations in comparison to many of the frivolous allegations that were made in the complaint (See Exhibit 1).

36. On January 13, 2017, Plaintiff's Counsel notified Defendant Leiner that she would like to depose "Santiago Abreu."  Defendant Leiner said that he would request dates from "Santiago

Abreu." (See emails between Plaintiff's Counsel and Defendant Leiner regarding dates for the deposition, attached hereto as Exhibit 8). Thereafter, Defendant Leiner never followed up with Plaintiff's Counsel's deposition request.

37. On January 25, 2017, Plaintiff's Counsel scheduled the deposition for February 27, 2017, filed a Notice of Deposition, and sent the Notice of Deposition to Defendant Leiner and Defendant Weiss Law Group. (See Notice of deposition, attached hereto as Exhibit 9)

38. On February 3, 2017, one week after Plaintiff's Counsel served the Notice of Deposition of "Santiago Abreu," Defendant Leiner filed a motion for summary judgment. At this point, no discovery had been conducted, no interrogatories had been filed, no depositions had been taken, and no evidence of any kind (except the pair of dueling expert reports) had been collected. (See Motion for Summary Judgment, attached hereto as Exhibit 10).

39. On February 9, 2017 Defendant Jason Weiss called Plaintiff's Counsel. Defendant Weiss informed Plaintiff's Counsel that Defendant Leiner was no longer employed by Defendant Weiss Law Group. Defendant Weiss asked Plaintiff's Counsel what her client's intentions were with regard to remedying the four violations that Plaintiff's expert had confirmed. Plaintiff's Counsel informed Defendant Weiss that Plaintiff had already fixed the four minor violations. Defendant Weiss immediately stated, "Well if he fixed the problems, then the case is moot and should be dismissed." Weiss further said that he would prepare a joint stipulation for dismissal with each side to bear its own attorney's fees and costs, and would send it to Plaintiff's Counsel for her signature right away.

40. When asked if Defendant Weiss wanted photographic proof of the remediation or whether he, personally, or Defendants Huff or Leslie, wanted to visit the restaurant to confirm the remediation, Defendant Weiss responded, "I'll take your word for it."

41. Less than ten minutes after the phone call ended, Defendant Weiss had sent Plaintiff's Counsel a joint stipulation for dismissal.

42. Defendant Leiner's untimely motion for summary judgment, Defendant Leiner's abrupt departure from Defendant Weiss Law Group, the phone call wherein Defendant Weiss displayed no interest in ADA compliance, and Defendant Weiss's rushed joint stipulation for dismissal all occurred less than two weeks after Plaintiff's Counsel served the Notice of Deposition and less than three weeks before "Santiago Abreu" was scheduled to be deposed.

43. Bailey, Colorado is a very small, tight-knit community with a population of approximately eight thousand. No one working at or associated with Riverbend Market has any recollection of  seeing "Santiago Abreu," or anyone in a wheel chair, visiting Plaintiff's restaurant on July 14, 2015.  Plaintiff and the few people who worked at the restaurant stated they are very attentive to any customer in a wheelchair or that appears to need assistance, and are acutely aware of any new customers to the restaurant, since most everyone who visits the restaurant is local to Bailey, CO and a regular at the restaurant.

44. In case number 1:16-cv-00432-MEH, there was no evidence ever disclosed by Defendants that contained any photographic proof of Mr. Abreu, his presence at Riverbend eatery, or his presence in Colorado. There is no proof of any kind of Mr. Abreu's presence at Riverbend eatery, besides the receipt (Exhibit 2), which did not contain any name or signature.   No evidence was ever disclosed containing Mr. Abreu's signature.

45. On two occasions prior to filing this Complaint, Plaintiff's Counsel sent demand letters to Defendant Weiss and Defendant Huff requesting documentary proof of Mr. Abreu's trip to Colorado, including plane tickets, proof of Abreu's purchase of "medicine that can only purchased in Colorado," or any other proof of Mr. Abreu's presence in Colorado and,

specifically at Riverbend Market and Eatery on July 14, 2015.  (See November 2, 2018 and

January 3, 2019 Demand Letters to Defendant Weiss and Defendant Huff, attached hereto as

Exhibits 11-14).  Plaintiff's Counsel also emailed the January 3, 2019 Demand Letters to

Defendants Huff and Weiss to their respective email addresses that are listed with the Florida

State Bar and were the email addresses through which Plaintiff's Counsel corresponded with

Defendants Weiss and Huff during the pendency of case number 1:16-cv-00432-MEH.  No

proof of Mr. Abreu's existence or presence in Colorado was ever produced.  As of the filing

of this Complaint, there is no proof that Santiago Abreu exists or that he ever came to

Colorado, beyond Defendants' assertions in legal documents and litigation-related

communication from case number 1:16-cv-00432-MEH.

46. There are no pictures on Google Images of anyone named "Santiago Abreu" in a wheelchair,

despite being a plaintiff that has filed several hundred ADA cases across the country.

47. Plaintiff is informed and believes, and thereon alleges that "Santiago Abreu" has never been

deposed in any of the other hundreds of cases in which he is a plaintiff.  Rather, the

Defendants settle the cases, enter joint stipulations, or have the cases dismissed for lack of

merit.

48. Plaintiff is informed and believes, and thereon alleges that the Defendants were never in

contact with any "Santiago Abreu," and that the fraudulent litigation was brought on behalf

of a fictional person; or, in the alternative, that no Santiago Abreu, and, in particular, no

disabled person, visited Riverbend Market and Eatery or any of the other 70 Colorado small

businesses that were sued by Abreu.

49. Plaintiff is informed and believes, and thereon alleges that in fact, the sham litigation brought against his business was part of a larger scheme to extort money out of small businesses by alleging violations of the ADA.

50. Plaintiff is informed and believes, and thereon allege that Defendants have actively conspired, participated and agreed to join in aiding and abetting a racketeering enterprise whose activities affect interstate commerce within the meaning of 18 U.S.C. §§ 1961 (1) (B), 1341 and 1343 (relating to mail and wire fraud) and by operating, managing or otherwise being actively involved by aiding and abetting in the enterprise through a pattern of racketeering activities in conspiring schemes designed to defraud the public, and principally to defraud Plaintiff, all in violation of 18 U.S.C. § 1962 (c) and (d).

## THE CRIMINAL ENTERPRISE

51. All defendants lead and/or participated in the criminal enterprise.

52. Defendant Weiss Law Group is still operated by Jason Weiss.  Plaintiff is informed and believes, and theron alleges that Defendant Jason Weiss approached Defendants Huff and Leslie to join the criminal enterprise complained of herein and that Defendants Huff and Leslie, understanding the nature of the Enterprise, agreed to assist its goals in return for a financial benefit for themselves and for Defendant Huff and Leslie, LLP.

53. Plaintiff is informed and believes, and thereon alleges that all defendants derive earnings and income from the lucrative ADA sham litigation practices of the enterprise.

54. Plaintiff is informed and believes, and thereon alleges that Defendant Weiss knows or should know in the exercise of reasonable care as a licensed attorney and sole partner of the Weiss Law Group, that the ADA complaints filed by the Weiss Law Group contain falsities

regarding the ADA plaintiff's visit to Colorado, visits to establishments, encounters with barriers, and intent to return so as to establish standing under the ADA and related state law, and further, that the ADA complaints contained falsities about the existence of "Santiago Abreu."

55. Defendants Huff, Leslie, and Huff and Leslie, LLP have taken a significant role in joining and filing Defendant Weiss Law Groups numerous ADA complaints since approximately November 2016 to the present day.  However, Plaintiff is informed and believes, and thereon alleges, that the ringleader, Defendant Jason Weiss, still directs and performs the majority of the daily activities of Defendant Weiss Law Group and that Defendants Huff, Leslie, Leiner, and Huff and Leslie, LLP, took direction from Defendant Weiss and performed any and all tasks organized by Defendant Weiss to accomplish the goals of the enterprise, until Defendants Huff, Leslie, and Leiner left the enterprise.

56. Plaintiff is informed and believes, and thereon alleges that Defendants Huff and Leslie know or should have known, in the exercise of reasonable care as licensed attorneys and partners of Huff and Leslie, LLP, that the ADA complaints filed by the Weiss Law Group and Huff and Leslie contain falsities regarding the ADA plaintiffs' visit to Colorado, visits to establishments, encounters with barriers, and intent to return so as to establish standing under the ADA, and further, that the ADA complaints contained falsities about the existence of "Santiago Abreu." The Plaintiff is further informed and believes, and thereon alleges that Defendants Huff and Leslie withdrew from the case, recognizing that Huff, specifically, "may ultimately become a witness in this case," because he knew of the falsities and fraudulent nature of the ADA litigation.

57. Plaintiff is informed and believes, and thereon alleges that Defendant Peter Leiner knows or should have known, in the exercise of reasonable care as a licensed attorney who practiced for the Weiss Law Group, that the ADA complaints filed by the Weiss Law Group contain falsities regarding the ADA plaintiffs' visits to Colorado, visits to establishments, encounters with barriers, and intent to return so as to establish standing under the ADA and related state law, and further, that the ADA complaints contained falsities about the existence of "Santiago Abreu." The Plaintiff is further informed and believes, and thereon alleges that Defendant Leiner withdrew from the case after the Plaintiff asked to depose Mr. Abreu because Defendant Leiner knew that the false statements and fraudulent nature of the ADA litigation would be discovered.

58. Plaintiff is informed and believes, and thereon alleges that Defendant Weiss hurriedly dismissed the case after Plaintiff's Counsel served the Notice of Deposition of "Santiago Abreu" (Exhibit 9) on Defendant Weiss, Defendant Weiss Law Group, and Defendant Leiner.

59. Plaintiff is informed and believes, and thereon alleges, that Defendants Weiss, Leiner, Huff, and Leslie ignored their duties of professional responsibility, including duty of candor to the Court, and for their own financial gain, agreed to participate in the criminal enterprise.

60. As a result, Plaintiff is informed and believes and thereon alleges that Defendants Weiss, Leiner, Leslie and Huff knowingly continued to offer and argue in court pleadings, court filings, correspondence with the ADA defendant, and in correspondence with opposing counsel, false statements regarding "Santiago Abreu's" visit to Colorado, visit to establishments, encounter with barriers, and intent to return so as to establish standing under

the ADA, and further, that the ADA complaints contained falsities about the existence of

"Santiago Abreu."

**FIRST CAUSE OF ACTION**
**Racketeer Influenced and Corrupt Practices Act**
**18  U.S.C. §§ 1961 (1) (B), 1962 (c), 1964 (a) and (c), 1341 and 1343**
**As to all Defendants**

61. Plaintiff re-alleges and incorporates herein by this reference the allegations in Paragraphs 1

through 60 above as though fully set forth herein.

62. Plaintiff is informed and believes, and thereon alleges, that all named Defendants have

engaged in a pattern of fraud and deception by participating in the preparation, drafting,

filing and prosecution of ADA lawsuits based on falsities in verified complaints in violation

of the Racketeer Influenced and Corrupt Practices Act ("RICO").

63. Plaintiff is informed and believes, and thereon alleges, that all named Defendants have

participated, and continue to participate, in a racketeering enterprise (the "Enterprise"), as

defined in 18 U.S.C. § 1961 (4) by the forming of a "group of individuals associated-in-fact"

to create schemes to defraud the public, and specifically to defraud Plaintiff as alleged herein.

64. Plaintiff is informed and believes, and thereon alleges, that the racketeering Enterprise

advanced and further promoted the Defendants' wrongful acts and unlawful activities by

unlawfully initiating, prosecuting and supporting false claims thereby deriving income

directly or indirectly from a closed end pattern of criminal acts, constituting a racketeering

activity.

65. Plaintiff is informed and believes, and thereon alleges, that Defendants are operating and

benefiting with the income derived directly or indirectly from closed-end criminal acts that

formed a pattern of racketeering activities and continues in an open-ended pattern of carrying on with the specified unlawful activities which affect interstate commerce.

66. Plaintiff is informed and believes, and thereon alleges, that the unlawful activities promoted and advanced by the group of individuals associated in fact constitute criminal acts (and predicate acts) that advanced a pattern of racketeering activities as defined, and in violation of 18 U.S.C. §§ 1341 and 1343 (relating to mail and wire fraud), as alleged herein, and by operating, managing or otherwise being actively involved by aiding and abetting in the enterprise through open-ended patterns of criminal acts which constitutes racketeering activities in conspiring schemes designed to defraud the public, and principally to defraud Plaintiff, all in violation of 18 U.S.C. § 1962 (c) and (d) as alleged herein.

67. Plaintiff is informed and believes, and thereon alleges, that violation of 18 U.S.C. §§ 1961 (1) (B), 1962 (c) and (d), 1341 and 1343 continues to this day on an open-ended pattern of criminal acts by the actions of the Enterprise in using the U.S. Mail, telephone and internet services to transfer information that is fraudulent by means of a closed-end pattern of racketeering by Defendants Weiss and Weiss Law Group, which constitutes an unlawful activity and an advancement of the racketeering Enterprise.

68. Plaintiff is informed and believes, and thereon alleges, that the racketeering enterprise deprived Plaintiff of monies entitling plaintiff to damages pursuant to 18 U.S.C. § 1964(c).

## MAIL FRAUD

69. Plaintiff is informed and believes, and thereon alleges, that commencing in approximately July 2015 to February 2017, all named Defendants devised a scheme or artifice to defraud

the pubic, and principally, to defraud Plaintiff of money and property by means of false or fraudulent pretenses and representations.

70. Plaintiff is informed and believes, and thereon alleges, that Defendants, in their roles and involvement as alleged in this Complaint, periodically used the U.S. Mail to submit receipts, reports, signatures, verifications, declarations, complaints, discovery, correspondence, and other documents containing false information ("Sham Documents") related to the litigation being prosecuted.  Plaintiff is informed and believes, and thereon alleges, that the U.S. Mail was used to submit the Sham Documents by Defendants to each other, to Plaintiff and Plaintiff's counsel, to the Court, and to other members of the public in the course of litigating and prosecuting ADA cases.

71. Plaintiff is informed and believes, and thereon alleges, that the contents of the Sham Documents contained false statements in violation of law.  Plaintiff is informed and believes, and thereon alleges, that the Sham Documents, at a minimum, included information that was used to falsely establish "Santiago Abreu's" visits to Colorado, his visits to specific businesses in Colorado, his encounter of barriers, and his intent to return in a sham effort to establish standing under the ADA.  Further, Plaintiff is informed and believes and thereon alleges, that the Sham Documents included information falsely establishing the existence of Santiago Abreu, and falsely establishing that the Defendants had any contact with Santiago Abreu.

72. Plaintiff is informed and believes, and thereon alleges, that the false or fraudulent pretenses and representations were ultimately delivered to Plaintiff and the court through periodic documents or correspondence.

73. Plaintiff is informed and believes, and thereon alleges, that Defendants prepared the Sham Documents that contained the false pretenses and representations and submitted and delivered said Sham Documents to each other, Plaintiff, and the court by placing a true copy of the Sham Document in a sealed envelope addressed to one or more of Defendants, Plaintiff, Plaintiff's counsel, and the court.

74. Plaintiff is informed and believes, and thereon alleges, that Defendants then placed the envelope(s) for collection and processing for mailing in their normal course of business in which Defendants were familiar, the documents were then placed for collection and mailing and deposited in the ordinary course of business with the United States Postal Services, with postage fully prepaid.  Plaintiff is informed and believes, and thereon alleges, that Defendants and each of them used the United States Postal Service to perpetrate their fraudulent schemes, all in violation of Title 18 U.S.C. §§ 1961 (1) (B), 1962 (c) and (d), and 1341.

75. For example, Defendant Weiss, as the owner of Defendant Weiss Law Group, mailed a copy of the complaint (Exhibit 1) and associated exhibits to Plaintiff.

76. Defendant Huff, as a partner and owner of Defendant Huff and Leslie, LLP, mailed photographs and a letter seeking $15,000 (Exhibit 4) in exchange for a dismissal by Defendants and "Santiago Abreu" of the complaint.

77. In particular, Plaintiff is informed and believes, and thereon alleges, that Defendants Jason Weiss, Peter Leiner, Richard Leslie, and Brett Huff are duly licensed to practice law, and had knowledge, or should have had knowledge, due to the profession that they are in, that the Sham Documents submitted in prosecution of the prior ADA litigation to Plaintiff's counsel and the Court were indeed fraudulent.

78. Plaintiff is informed and believes, and thereon alleges, that violation of 18 U.S.C. § 1341 for mail fraud continues to this day on an open-ended pattern of criminal acts by the actions of the Enterprise in using the U.S. Mail to transfer information that is fraudulent by means of a closed-end pattern of racketeering by Defendants which constitutes an unlawful activity and an advancement of the racketeering Enterprise.

## WIRE FRAUD

79. Plaintiff is informed and believes, and thereon alleges, that all named Defendants in their roles and involvement as alleged in this Complaint, periodically used U.S. wire services to submit the Sham Documents related to the litigation being prosecuted.  Plaintiff is informed and believes, and thereon alleges, that U.S. wire services were used to submit the Sham Documents by Defendants to each other, to Plaintiff and Plaintiff's counsel, to the Court, and to other members of the public in the course of litigating and prosecuting ADA cases.

80. Plaintiff is informed and believes, and thereon alleges, that Defendants also used U.S. wire services to conduct telephone calls with each other, opposing counsel (including Plaintiff's counsel), witnesses, and the court to communicate false information for the advancement of the conspiracy as alleged herein.

81. Plaintiff is informed and believes, and thereon alleges, that Defendants also used U.S. wire services to submit electronic mail to each other, opposing counsel (including Plaintiff's counsel), witnesses and the court to communicate false information for the advancement of the conspiracy,

**Particularized Allegations of Wire Fraud Through Use of Interstate Electronic Communications**

82. Defendants Weiss, Leiner, Leslie, and Huff, on behalf of Defendants Weiss Law Group and Huff and Leslie, LLP have filed numerous documents using the PACER-CM/ECF ("PACER") filing system (See activity in case number 1:16-cv-00432-MEH, as well as all cases in which Santiago Abreu is listed as a party). Plaintiff is informed and believes, and thereon alleges, that the PACER service center is located in San Antonio, Texas and is operated by the U.S. Party/Case Index server, also located there, where information about each case in each federal judicial district is maintained. Therefore, Plaintiff is informed and believes, and thereon alleges, that all documents filed by Defendants Weiss Law Group and Huff and Leslie, LLP on behalf of Santiago Abreu using PACER were each individual acts of wire fraud, wherein false statements were provided in interstate commerce through the use and facilitation of the PACER-CM/ECF system and for the purpose of carrying out the goals of the racketeering Enterprise as alleged herein.

83. For example, Defendants Weiss Law Group and Huff and Leslie filed: (1) a complaint on February 23, 2016 (Exhibit 1); (2) Motion to Strike Answer to Complaint on March 24, 2016; (3) Motion to Stay on April 8, 2016; (4) Proposed Scheduling Order on July 8, 2016; (5) Consent to Magistrate Jurisdiction on July 12, 2016; (6) Response to defendant's Motion to Dismiss on October 21, 2016; (7) Initial Disclosures on October 25, 2016; (8) Motion for Summary Judgment on February 3, 2017; (9) Notice of Entry of Appearance by Defendant Leiner; and (10) Stipulation of Dismissal of Case with Prejudice.  Each of these filings contained false statements regarding Santiago Abreu's visit to Colorado, visit to Colorado businesses like Riverbend Market and Eatery, personal encounters with barriers or intent to return.  Plaintiff is informed and believes, and thereon alleges, that Defendants Huff, Weiss,

and Leiner assisted in the preparation and filing of these documents. The PACER system

lists Defendants Weiss and Leiner, on behalf of Defendant Weiss Law Group, and

Defendants Leslie and Huff, on behalf of Defendant Huff and Leslie, LLP, as the filers of the

documents. The PACER system electronically mailed notice of the filing of these documents

to counsel for Plaintiff at courtenay.patterson@gmail.com, and Defendants at

Jason@jswlawyer.com; peter@jswlawyer.com; bhuff@huffandleslie.com and Defendant

Huff's law partner, Richard Leslie at rleslie@huffandleslie.com.

84. Plaintiff is informed and believes, and thereon alleges, that Defendant Paloni of Complete

ADA Compliance also committed acts of wire fraud when she submitted signed and sworn

declarations to be filed by Defendant Weiss Law Group and which was sent via electronic

mail to Plaintiff's Couinsel to assist the Group's sham ADA litigation.  Specifically,

Defendant Paloni signed an "Affidavit of Non-Compliance" contained in her report

regarding Riverbend Market and Eatery's alleged ADA violations, in which she states at

page 7, "I used physical site visits and observations of the subject property."  (See report of

Defendant Paloni, attached hereto as 5).  As stated above, Defendant Huff clearly stated in

his September 14, 2016 email to Plaintiff's Counsel that Defendant Paloni relies on

photographs provided to her by Defendants.


**Particularized Allegations of Wire Fraud Through Use of Interstate Electronic
Communications**

85. Plaintiff is further informed and believes and thereon alleges, that Defendant Weiss Law

Group has a registered domain name, web hosting and e-mail services.

86. Plaintiff is informed and believes, and thereon alleges, that throughout litigating the sham

ADA lawsuits, all e-mail communications from Defendants Weiss, Leiner, Leslie and Huff

that were submitted on behalf of Defendants Weiss Law Group and Huff and Leslie, LLP,

through the firm defendants' email accounts, traveled through interstate commerce via

servers and data centers in and around the United States before reaching their intended

recipient(s).

87. Furthermore, e-mails sent by Defendants to Plaintiff's Counsel at

courtenay.patterson@gmail.com, travelled through interstate commerce via Law Offices of

Courtenay Patterson's e-mail service provider's servers and data centers which are located

either in Oregon, Georgia, Tennessee, North Carolina, Oklahoma, South Carolina, Iowa, or

California.

88. For example, on April 6, 2016, Defendant Brett Huff emailed Mr. Abbondanza a settlement

offer trying to get Plaintiff to pay $15,000 to make the lawsuit go away. This email and

settlement agreement contained false statements regarding the ADA plaintiff's alleged visit

to Colorado, to Plaintiff's restaurant, and "Santiago Abreu's" encounter of barriers therein,

with such false statements furthering the activities of the racketeering Enterprise. (Exhibit

6). This email and settlement offer was subsequently forwarded to Plaintiff's Counsel's

email.

89. Also in the prior litigation, Defendant Huff emailed Plaintiff's Counsel on September 14,

2016, with misleading and false evidence tending to further the false allegation of the ADA

plaintiff's visit to Colorado, to Plaintiff's restaurant, and "Santiago Abreu's" encounter of

barriers therein, with such false allegations furthering the activities of the racketeering

enterprise. (Exhibit 4). For instance, Defendant Huff emailed a cropped photograph of the

receipt from the ADA plaintiff's alleged visit. (Exhibit 2). This photograph was the only

evidence to establishing standing for the ADA plaintiff in the prior litigation, but the photo

does not show the name of the purchaser, the signature line, or fully display the date of purchase.  The cropped photograph of the receipt was evidence used to perpetuate the false statements of the ADA plaintiff's case in the prior litigation.

90. Also in the prior litigation, Defendant Brett Huff emailed Plaintiff's Counsel on September 14, 2016 (Exhibit 4), again with an offer of settlement, wherein Defendant again made false statements concerning "Santiago Abreu's" visit to Colorado, to Plaintiff's restaurant, and "Santiago Abreu's" encounter of barriers therein, with such false allegations furthering the activities of the racketeering enterprise.

91. Also in the prior litigation, Defendant Weiss sent emails to Plaintiff's Counsel on February 9, 2017, threatening to file Motions to Strike and threatening to pursue sanctions against Plaintiff's Counsel with the court.  (See February 9, 2017 emails between Defendant Weiss and Plaintiff's Counsel, attached hereto as Exhibits 15 and 16).

92. Just 3 hours after sending such threats in an email, Defendant Weiss contacted Plaintiff's Counsel via telephone and informed Plaintiff's Counsel that the case should be dismissed with each side to bear its own fees and costs.

93. Defendant Weiss sent, via electronic mail, the proposed stipulated joint dismissal to Plaintiff's Counsel and, immediately upon Plaintiff's Counsel signing the stipulation, Defendant Weiss filed the stipulation on the PACER-CM/ECF system.

94. Also in the prior litigation, Defendant Leiner corresponded with Plaintiff's Counsel via electronic mail on several occasions, including on December 1, 2016, December 5, 2016, and December 14, 2016, as well as Defendant Leiner's email on January 13, 2017 regarding dates for the deposition.  (See emails between Defendant Leiner and Plaintiff's Counsel, attached hereto as Exhibits 17-19; see also Exhibit 8).

95. Plaintiff is informed and believes, and thereon alleges that the Defendants were never in contact with any ADA plaintiff named "Santiago Abreu" and that all emails referenced above, and any other emails Defendants sent in this case to further the conspiracy, repeated that false assertion that there was a plaintiff named "Santiago Abreu" and that this false statement furthered the activities of the racketeering enterprise by allowing them to establish standing in approximately 70 ADA cases in Colorado.

### Particularized Allegations of Wire Fraud Through Use of Interstate Credit Card Processing

96.  Plaintiff is informed and believes and thereon alleges that Defendants Huff and Leslie, LLP, and Weiss Law Group, P.A., also participated in wire fraud in advancing the objectives of the racketeering Enterprise by using a credit card to pay the PACER system filing fees so that the Defendants could file the Sham Documents in furtherance of the sham ADA litigation and furthering the activities of the racketeering Enterprise.

97. Plaintiff is informed and believes and thereon alleges that Defendants used wire services, such as telephonic and cellular use, in the normal course of business in which Defendants were familiar to make inquiries or respond to the Sham Documents and Communications with each other, Plaintiff, Plaintiff's Counsel, and the court and that the fraud would be confirmed and upheld by Defendants through use of wire services.

98. Plaintiff is informed and believes and thereon alleges that all Defendants had knowledge of their participation in providing and preparing the falsities contained in the Sham Documents and Communications as alleged herein, and that the Sham Documents and Communications were being used in supporting false ADA complaints in federal court, and in particular, in the prior litigation against the Plaintiff.

99. In particular, Plaintiff is informed and believes and thereon alleges that Defendants Weiss, Leiner, Leslie and Huff are duly licensed to practice law, and had knowledge, or should have had knowledge, due to the profession that they are in, that the Sham Documents and Communications submitted in prosecution of the Prior Litigation to Plaintiff's counsel and the court were indeed fraudulent and contained falsities.

100.    The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused injuries to Plaintiff in its business or property.

101.    The racketeering activities set forth herein caused damage to Plaintiff in that the racketeering Enterprise deprived Plaintiff of monies in violation of 18 U.S.C. §§ 1961 (1) (B), 1962 (c) and (d), 1964 (c), 1341, and 1343.

102.    The Defendants are each jointly and severally liable to Plaintiff for damages, costs and attorney's fees as alleged herein.

103.    As a direct and proximate result of the actions of Defendants and each of them, Plaintiff has been damaged (including general and consequential damages) in an amount to be determined at trial, which includes, but is not limited to, financial losses and damages incurred as a result of Defendants' fraud uncovered throughout the course of the Prior Litigation. Plaintiff's financial losses and damages as a result of Defendants' fraud includes, but is not limited to, amounts paid for investigative services to uncover the fraud of the enterprise, amounts paid to consultants, experts and contractors as a result of the false statements made by the enterprise, amounts paid for litigation costs and expenses incurred in defending against the false allegations made in the Prior Litigation, and attorney's fees incurred in defending against the false allegations made in the Prior Litigation.  The Plaintiff further suffered harm and damages in that he was forced to close his business. As a further

direct and proximate result of the actions of Defendants and each of them per law, Plaintiff is entitled to triple damages for all harm caused to them.

104.     As a further direct and proximate result of the actions of Defendants and each of them, due to their willful, malicious, despicable, fraudulent and unlawful actions, Plaintiff requests exemplary damages in the form of punitive damages in an amount according to proof at the time of trial.

105.     As a further direct and proximate result of the actions of Defendants' acts, Plaintiff is entitled to interest on all consequential and general damages at the legal rate of 10% per annum, until judgment is collected, should Plaintiff prevail in this immediate action.

106.     As a further direct and proximate result of Defendants' acts, Plaintiff is entitled to costs and reasonable attorney's fees according to proof at the time of trial for prosecuting this action, and for that other and further relief the Court may deem just and proper.


## SECOND CAUSE OF ACTION
### Conspiracy to Violate Racketeer Influenced and Corrupt Practices Act
### 18 U.S.C. §§ 1961 (1) (B), 1962 (d), 1964 (a) and (c), 1341 and 1343
### As to all Defendants

107.     Plaintiff re-alleges and incorporates herein by this reference the allegations in Paragraphs 106 above as though fully set forth herein.

108.     In violation of 18 U.S.C. § 1962(d), Plaintiff is informed and believes, and thereon alleges, that Defendants knowingly, willfully, and unlawfully agreed to facilitate a scheme which included the, participation, agreement, operation and/or management of a RICO enterprise through a pattern of racketeering activity as alleged in Paragraphs 13 to 50 above.

109.    Plaintiff is informed and believes, and thereon alleges, that each Defendant was aware of the objectives of the Enterprise and agreed and intended to participate in it as alleged in Paragraphs 51 to 60.

110.    The conspiracy commenced at least as early as July 2015 and is ongoing.

111.    The conspiracy's purpose is to divert money from Colorado businesses and residents to the benefit of all Defendants and to facilitate the racketeering Enterprise as alleged in Paragraphs 13 to 106.

112.    Each named and DOE Defendant committed at least one overt act in furtherance of such conspiracy as alleged in Paragraphs 13 to 60. These acts in furtherance of the conspiracy include misleading federal courts in Colorado, businesses and residents throughout Colorado, defendants in sham ADA litigation prosecuted by Defendants Weiss Law Group, PC and Huff and Leslie, LLC, and counsel for such defendants as to the true nature of Santiago Abreu's alleged disability, his visit to establishments sued, his encounter with barriers and his intent to return to establishments sued in order to confer standing to prosecute the false ADA actions as alleged in Paragraphs 13 to 106.

113.    Plaintiff is informed and believes, and thereon alleges, that each Defendant agreed to participate and, in fact, did participate in the racketeering Enterprise as alleged in Paragraphs 51 to 60 with full knowledge of the scheme of the Enterprise and with the intent to financially benefit from such scheme.

114.    Each Defendant committed acts to further the conspiracy as alleged in Paragraphs 13 through 106.  Such assistance included supporting primary violations of mail and wire fraud which traveled in interstate commerce as alleged in Paragraphs 69 through 106.

115.   To the extent that any named or DOE Defendant is determined to have not committed a primary violation of 18 U.S.C. § 1962 (c) through commission of predicate acts of mail or wire fraud in furtherance of the purposes of the racketeering Enterprise as alleged in Paragraphs to 69 to 106, the Defendant(s) alternatively must be held liable for having provided assistance to other primary participants of the racketeering Enterprise as alleged in Paragraphs 51 through 60 above.

116.   Such assistance is a violation of 18 U.S.C. § 1962 (d) in that the assistance of the primary acts supported, facilitated, assisted, operated, and/or managed the functioning of the racketeering Enterprise to defraud Plaintiff herein, by each named and DOE Defendant by generating, providing, and advancing false information in the Sham Documents presented to courts, defendants and opposing counsel.

117.   Even if some of the Defendants did not agree to harm Plaintiff specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' actions.

118.   Plaintiff is informed and believes, and thereon alleges, that violation of 18 U.S.C. §§ 1341 and 1343 for mail and wire fraud continues to this day in an open-ended pattern of criminal acts by the actions of the Enterprise in using mail and wire services to transfer information that is fraudulent by means of a closed-end pattern of racketeering by Defendants which constitutes an unlawful activity and an advancement of the racketeering Enterprise.

119.   The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in her business or property.

120.    The racketeering activities and the conspiracy to commit such activities as set forth herein caused damage to Plaintiff in that the racketeering Enterprise deprived Plaintiff of monies in violation of 18 U.S.C. §§ 1961 (1) (B), 1962 (c) and (d), 1964 (c), 1341, and 1343.

121.    The Defendants are each jointly and severally liable to Plaintiff for damages, costs and attorney's fees as alleged herein.

122.    As a direct and proximate result of the actions of Defendants and each of them, Plaintiff has been damaged (including general and consequential damages) in an amount to be determined at trial, which includes, but is not limited to, financial losses and damages incurred as a result of Defendants' fraud uncovered throughout the course of the Prior Litigation, case number 1:16-cv-00432-MEH, filed in the District of Colorado.  Plaintiff's financial losses and damages as a result of Defendants' fraud includes, but is not limited to, amounts paid for investigative services to uncover the fraud of the enterprise, amounts paid to consultants, experts and contractors as a result of the false statements made by the enterprise, amounts paid for litigation costs and expenses incurred in defending against the false allegations made in the Prior Litigation, and attorney's fees incurred in defending against the false allegations made in the Prior Litigation.

123.    As a further direct and proximate result of the actions of Defendants and each of them per law, Plaintiff is entitled to triple damages for all harm caused to them.

124.    As a further direct and proximate result of the actions of Defendants and each of them, due to their willful, malicious, despicable, fraudulent and unlawful actions, Plaintiff requests exemplary damages in the form of punitive damages in an amount according to proof at the time of trial.

125.    As a further direct and proximate result of the actions of Defendants' acts, Plaintiff is

entitled to interest on all consequential and general damages at the legal rate of 10% per

annum, until judgment is collected, should Plaintiff prevail in this immediate action.

126.    As a further direct and proximate result of Defendants' acts, Plaintiff is entitled to costs

and reasonable attorney's fees according to proof at the time of trial for prosecuting this

action.

### THIRD CAUSE OF ACTION: Colorado Organized Crime Control Act
### C.R.S. 18-17-101 et seq.
### Against All Defendants

127.    Plaintiff incorporates by reference the allegations above in Paragraphs 1-126 as if

repeated here.

128.    By the actions described above, Defendant Plaintiff is informed and believes, and thereon

alleges, that all named Defendants have engaged in a pattern of fraud and deception by

participating in the preparation, drafting, filing and prosecution of ADA lawsuits based on

falsities in verified complaints in violation of the Colorado Organized Crime Control Act

("COCCA").

129.    Plaintiff is informed and believes, and thereon alleges, that all named Defendants have

participated, and continue to participate, in a racketeering enterprise (the "Enterprise"), as

defined in C.R.S. § 18-17-103(2), by the forming of a "group of individuals associated-in-

fact" to create schemes to defraud the public, and specifically to defraud Plaintiff as alleged

herein.

130.    Plaintiff is informed and believes, and thereon alleges, that the racketeering Enterprise

advanced and further promoted the Defendants' wrongful acts and unlawful activities by

unlawfully initiating, prosecuting and supporting false claims thereby deriving income

directly or indirectly from a closed end pattern of criminal acts, constituting a racketeering activity.

131.    Plaintiff is informed and believes, and thereon alleges, that Defendants are operating and benefiting with the income derived directly or indirectly from closed-end criminal acts that formed a pattern of racketeering activities and continues in an open-ended pattern of carrying on with the specified unlawful activities which affect interstate commerce.

132.    Plaintiff is informed and believes, and thereon alleges, that the unlawful activities promoted and advanced by the group of individuals associated in fact constitute criminal acts (and predicate acts, as defined in C.R.S. § 18-17-103(5)) that advanced a pattern of racketeering activities as defined, and in violation of 18 U.S.C. §§ 1341 and 1343 (relating to mail and wire fraud), as alleged herein, and by operating, managing or otherwise being actively involved by aiding and abetting in the enterprise through open-ended patterns of criminal acts which constitutes racketeering activities in conspiring schemes designed to defraud the public, and principally to defraud Plaintiff, all in violation of 18 U.S.C. § 1962 (c) and (d) as alleged herein.

133.    Plaintiff is informed and believes, and thereon alleges, that violation of 18 U.S.C. §§ 1961 (1) (B), 1962 (c) and (d), 1341 and 1343 continues to this day on an open-ended pattern of criminal acts by the actions of the Enterprise in using the U.S. Mail, telephone and internet services to transfer information that is fraudulent by means of a closed-end pattern of racketeering by Defendants Weiss and Weiss Law Group, which constitutes an unlawful activity and an advancement of the racketeering Enterprise.

134.    Plaintiff is informed and believes, and thereon alleges, that the racketeering enterprise deprived Plaintiff of monies entitling plaintiff to damages under COCCA.

135.   Defendants were involved in a pattern of racketeering activity by engaging in over two acts of racketeering activity that were related to the conduct of the enterprise.

136.   Defendant's actions include, but are not limited to the following: Mail fraud (as alleged in Paragraphs 69-78), wire fraud (as alleged in Paragraphs 79-106). These are predicate acts of racketeering activity as defined in C.R.S. § 18-17-103(5)(a), and taken together constitute a pattern of racketeering activity in furtherance of the Defendant's Enterprise.

137.   Defendant knowingly received proceeds from this pattern of racketeering activity to maintain in furtherance of the enterprise that they were operating.

138.   These actions of racketeering are related in that they had the same purposes, participants, victims, and methods of commission. These actions of racketeering activity were conducted for the purpose of scaring small businesses with the threat of fraudulent litigation so that the businesses would pay the enterprise money to make the fraudulent litigation go away. These fraudulent actions were all brought by Defendants Huff, Leslie, Weiss, Huff and Leslie, LLP and Weiss Law Group, P.A., through the enterprise, and all actions were commenced against small businesses. These fraudulent actions were all brought with documents sent via interstate mail service, utilizing various aspects of wire transfers, as detailed in Paragraphs 69-106.

139.   All of the racketeering activities occurred in Colorado after July 1, 1981, and the last of these racketeering activities occurred within ten years after a prior act of racketeering activity. The scheme began in Colorado on or about July 2015 and continued at least until Mr. Weiss and his enterprise dropped the fraudulent action against Plaintiff (upon Plaintiff's Counsel inquiring about deposing the non-existent plaintiff) on February 9, 2017.

140.    The defendants knowingly participated, directly or indirectly, in this fraudulent litigation enterprise through the pattern of racketeering.

141.    As a direct and proximate result of this racketeering activity by Defendants, Plaintiff suffered losses and other compensatory and consequential damages to be established at trial, entitling Plaintiff to treble damages pursuant to C.R.S. § 18-17-106(7).

**FORTH CAUSE OF ACTION**
**Abuse of Process**
**Against All Defendants**

142.    Plaintiff incorporates by reference the allegations above in Paragraphs 1-141 as if repeated here.

143.    Defendants had an ulterior motive in the use of judicial proceedings;

144.    Defendants' willful actions in the use of that process were not proper in the regular course of the proceedings;

145.    Plaintiff suffered damages as a result of Defendants' willful actions; and

146.    Defendants' legal action lacked a reasonable factual basis or cognizable basis in law.

147.    Defendants' Prior Litigation was used to extort money out of small businesses rather than to remedy ADA violations and raise awareness of the ADA, as represented by Defendants in those lawsuits.

148.    Defendants used the Prior Litigation to get Plaintiff to pay $15,000 to Defendants in order for Defendants to dismiss the lawsuit.

149.    The Prior Litigation alleged 14 violations of the ADA, many of which would have required significant and expensive repairs had they been valid allegations.

150.    Instead, only 4 violations were valid and required minimal work and expense in order to repair.

151.   Defendants asserted the 14, mostly significant, violations in order to scare Plaintiff into paying the money, rather than facing $75,000-$150,000 in penalties, for which Defendants claimed Plaintiff could be responsible. (See Exhibit 4).

152.   Defendants had no intention to actually litigate the Prior Litigation any further than necessary to obtain money from Plaintiff and, upon Plaintiff's insistence that "Santiago Abreu" be deposed, Defendants immediately offered to dismiss the case without any proof of any remediation of Plaintiff's restaurant.

153.   Plaintiff suffered significant damages as a result of Defendants' Abuse of Process.  Such damages include, among those already delineated above, attorney's fees spent in defending the Prior Litigation and punitive damages, based on Defendants' malicious or willful and wanton conduct in bringing the Prior Litigation.

**FIFTH CAUSE OF ACTION**
**Civil Conspiracy**
**Against All Defendants**

154.   Plaintiff incorporates by reference the allegations above in Paragraphs 1-153 as if repeated here.

155.   Defendants Weiss, Weiss Law Group, P.A., Huff, Leslie, and Huff and Leslie, LLP entered into an unlawful plan and agreement to mislead and falsely accuse small business owners in Colorado, including Plaintiff, by filing fraudulent lawsuits alleging violations of the ADA in order to extort settlement money out of the businesses in exchange for Defendants dropping the lawsuits.

156.   Among the manifestations of the unlawful plan and agreement were the following: an agreement between Defendants Huff and Leslie, LLP and Weiss Law Group, P.A. that "when Defendants Huff or Leslie were contacted by someone with a potential ADA case,

Defendants Huff or Leslie would have a conversation with their "client" and "client's counsel in Florida." They would then "review photographs taken by the client and/or client's chaperone and send them to an ADA expert who would review the photographs and prepare a preliminary report and would charge Weiss Law Group and/or Huff and Leslie, LLP $2500 for the preliminary report." (See Exhibit 4). Further details of how each case would be handled are contained in Exhibit 4, which was written by Defendant Huff and sent to Plaintiff's Counsel on September 14, 2016.

157.   The agreement was furthered by one or more unlawful, overt acts intentionally performed by the conspirators, including the inception of case number 1:16-cv-00432-MEH and all subsequent litigation until the case's dismissal on February 9, 2017.

158.   As a result of the actions of Defendants Jason Weiss, Weiss Law Group, PC, Brett Huff, Richard Leslie and Huff and Leslie, LLC, Plaintiff was physically, emotionally and financially harmed, particularly in that Plaintiff had to close his restaurant for approximately 2 years following being served with the Prior Litigation, and Plaintiff continues to suffer.

159.   Plaintiff's injuries have resulted in damages and losses, including, without limitation: severe physical and mental pain and suffering; emotional distress, loss of life enjoyment and impairment of quality of life, all past and future; physical impairment, past and future; economic losses including lost profits, loss of business opportunities, loss of contract rights, hospitalization, medical, therapy and rehabilitation expenses, loss of earnings and earning capacity; injury to reputation; and damage to his career.

160.   Plaintiff suffered the above-described injuries and damages as a proximate result of the defendants' conspiracy and unlawful actions; these injuries and damages were caused by acts

of the conspirators who undertook to accomplish and complete the unlawful purposes of the agreement they had made.

## SIXTH CAUSE OF ACTION
### Fraud
### Against All Defendants

161.    Plaintiff incorporates by reference the allegations above in Paragraphs 1-160 as if repeated here.

162.    Defendants made a false representation of past or present fact when filing the Prior Litigation and alleging 14 violations of the ADA, most of which were major alleged violations that would require significant time and expense to repair;

163.    The facts were material;

164.    Defendants made the representations knowing they were false;

165.    Defendants made the representations with the intent that Plaintiff rely on them;

166.    Plaintiff relied on the representations of Defendants;

167.    Plaintiff's reliance was justified; and

168.    Plaintiff's reliance resulted in damages to Plaintiff.

169.    In addition to the above damages Plaintiff seeks in this action, Plaintiff seeks actual damages, consequential damages, and non-economic damages, including mental and emotional suffering.  Plaintiff further seeks punitive damages for Defendants' malicious intent in making the fraudulent claims in the Prior Litigation.

## PRAYER FOR RELIEF

170.    Plaintiff requests that this court enter judgment in Plaintiff's favor and against Defendants, and award to Plaintiff:

171.   Payment of both economic and non-economic damages, as well as actual, consequential, and compensatory damages;

172.   Payment of treble damages;

173.   Payment of punitive damages;

174.   Interest at the rate of 10% per annum;

175.   Payment of attorneys' fees, including litigation expenses, and costs, pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505, and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines.

176.   Declaration that the conspiracy, and the conduct in furtherance of the conspiracy, between the Defendants violates 18 U.S.C., § 1962 (c);

177.   Declaration that the conspiracy, and the conduct in furtherance of the conspiracy, between the Defendants violates 18 U.S.C., § 1962 (d);

178.   Declaration that the conspiracy, and the conduct in furtherance of the conspiracy, between the Defendants violates 18 U.S.C., § 1341;

179.   Enjoining Defendants, and each of them, pursuant to 18 U.S.C., § 1964 (a) from further violations of 18 U.S.C., § 1962 by issuing appropriate orders, including, but not limited to: (1) ordering divestment of any interest, direct or indirect, in any enterprise; (2) imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in; and (3) ordering dissolution or reorganization of any enterprise

180.   Any other relief deemed just, necessary and proper by this Court.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

**RESPECTFULLY** submitted on this 7th day of February, 2019.

LAW OFFICES OF COURTENAY PATTERSON
/s/ Courtenay Patterson_____
Courtenay Patterson, Esq., CO Bar No. 49215
Law Offices of Courtenay Patterson
1716 N. Main St., Suite A #331
Longmont, CO 80501
Email: courtenay.patterson@gmail.com
Telephone: (925) 237-1187

*Attorney for Plaintiff*