**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-00328-JLK

MICHAEL ABBONDANZA and
TAVIN FOODS, INC.,

   Plaintiffs,

v.

JASON WEISS,
WEISS LAW GROUP, PC,
BRETT HUFF,
RICHARD LESLIE,
HUFF AND LESLIE, LLP,
PETER LEINER, and
GIOVANIA PALONI,

   Defendants.

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 14, 15) AND
MOTION FOR SANCTIONS (ECF NO. 40)**

Kane, J.

  Before me are two Motions to Dismiss. The first, ECF No. 14, was filed by Defendants Brett Huff, Richard Leslie, and Huff & Leslie, LLP ("Huff Defendants"). The second, ECF No. 15, was filed by Defendants Peter Leiner, Jason Weiss, and Weiss Law Group, PC ("Weiss Defendants"). For the reasons that follow, I find that the allegations contained in the First Amended Complaint (ECF No. 8-1) are sufficient to withstand the Motions to Dismiss. Because I am denying the Motions to Dismiss and find sanctions to be premature and inappropriate at this time, the Weiss Defendants' Motion for Sanctions (ECF No. 40) is also denied.

1

## I. Background

Plaintiffs are Michael Abbondanza and his business, Tavin Foods, Inc. Plaintiffs own and operate a restaurant, Riverbend Market and Eatery, in Bailey, Colorado. Compl. at ¶¶ 20–22. The Defendants are attorneys, law firms, and an Americans with Disabilities Act (ADA) expert, who allegedly conspired to institute a long string of fictitious ADA claims against small businesses across the country. *Id.* at ¶ 13. The Weiss Defendants are Florida-based attorneys and their law firm; Plaintiff Abbondanza alleges that the Weiss Defendants employed the Huff Defendants, two Colorado attorneys and their law firm, as local counsel for lawsuits filed here. *Id.* at ¶ 10.

Plaintiffs allege the Defendants represented a Florida man named Santiago Abreu, who is confined to a wheelchair because of several disabilities. ECF No. 1-1 at ¶ 6 (Complaint in *Abreu v. Tavin Foods Inc.*, 1:16-cv-00432-MEH). Mr. Abreu allegedly visited at least 70 businesses in Colorado between July 2015 and May 2016. He ultimately sued all of them for ADA violations. Compl. at ¶¶ 18–19. It is unclear whether the Huff Defendants served as local counsel in all 70 lawsuits, but they joined the Weiss Defendants as counsel for at least 29 of the 33 suits Mr. Abreu brought in the U.S. District Court for the District of Colorado. *Id.* at ¶¶ 7–10.

Mr. Abreu allegedly visited Plaintiffs' restaurant on July 14, 2015. Compl. at ¶ 21. As expected, a lawsuit followed on February 23, 2016. *Id.* at ¶ 22. In his complaint, Mr. Abreu alleged he visited Riverbend Market and Eatery both as a private citizen and as a "tester" for "the purpose of discovering, encountering and engaging discrimination against the disabled in public accommodations." ECF No. 1-1 at ¶ 10. He alleged that while on the premises, he encountered fourteen different ADA violations. *Id.* at ¶ 24. The Plaintiffs later retained their own ADA expert who found only four minor violations. *Id.*; ECF No. 1-3 (expert report prepared by Mark Douglass of Peak Access).

On April 6, 2016, Defendant Huff sent a letter to Plaintiff Abbondanza in which he demanded Plaintiffs pay $15,000 to make the "lawsuit go away." Compl. at ¶ 29; ECF No. 1-6 (copy of letter). He also requested written assurances that the Plaintiffs would fix the violations within twelve months and provide documentation upon completion. ECF No. 1-6 at 5. He followed up with another demand on September 14, 2016 in which he asked Plaintiffs to pay more than $11,000 in attorney fees and costs. Compl. at ¶ 32; ECF No. 1-4 (copy of email). In this email, he asked that Plaintiff Abbondanza also write a letter and promise remediation work. ECF No. 1-4 at 2–3.

The Plaintiffs refused the demands. On January 13, 2017, Plaintiffs' counsel notified Defendant Leiner that she wanted to depose Mr. Abreu. Compl. at ¶ 36. When she did not hear back from him on dates and times that worked for his client, she filed a Notice of Deposition that stated Mr. Abreu was to be deposed on February 27, 2017 in Boulder. *Id.* at ¶ 37; ECF No. 1-9 (copy of Notice of Deposition). One week after filing this Notice, Defendant Leiner filed a Motion for Summary Judgment even though no discovery had been conducted. Compl. at ¶¶ 36–38; ECF No. 1-10 (copy of motion).

Six days later, on February 9, 2017, Defendant Weiss contacted Plaintiffs' counsel. When counsel informed him that the Plaintiffs had already begun repairing the four ADA violations their expert found, Defendant Weiss offered to voluntarily dismiss the suit with prejudice without asking for Plaintiffs to first pay any of Defendants' costs or provide any other documentation. Compl. at ¶ 39. Plaintiffs' counsel asked whether Weiss wanted photographic evidence of the remediation, but Weiss allegedly stated that he would take counsel's word for it. *Id.* at ¶ 40.

Plaintiffs agreed to the voluntary dismissal, but they found the series of events suspicious. The case was abruptly settled shortly after Plaintiffs attempted to depose Mr. Abreu, no employees at Plaintiffs' restaurant remembered seeing a man in a wheelchair on July 14, 2015, and there was no evidence disclosed in the underlying suit confirming that Mr. Abreu existed, let alone that he came to Colorado or visited Plaintiffs' restaurant. *Id.* at ¶¶ 42–44. There was also no indication that Mr. Abreu had ever been deposed in any of the hundreds of cases he has filed across the country, and the Plaintiffs could find no photographs on Google Images of a man named Santiago Abreu in a wheelchair. *Id.* at ¶¶ 46–47.

As a result, Plaintiffs bring six claims against the Defendants: (1) a violation of the Racketeer Influenced and Corrupt Practices Act (RICO), (2) conspiracy to violate RICO, (3) violation of the Colorado Organized Crime Control Act, (4) abuse of process, (5) civil conspiracy, and (6) fraud.

There are currently two pending Motions to Dismiss. The first was filed by the Huff Defendants, and the second was filed by the Weiss Defendants. Each motion argues that, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs have failed to sufficiently plead violations of RICO. I have federal question jurisdiction over the RICO claims pursuant to 28 U.S.C. § 1331. Because there is not complete diversity between the parties, I will not have jurisdiction over Plaintiffs' state law claims if their RICO claims fail. 28 U.S.C. § 1367.

## II. Analysis

Dismissal under Rule 12(b)(6) is appropriate when a plaintiff fails to state a claim upon which relief can be granted. My role in reviewing "a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." *Peterson v.*

*Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). I must accept all factual allegations in the complaint as true but need not "accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The motion to dismiss should only be granted if the complaint does not contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausible" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Instead, it requires simply a nudge beyond "conceivable." *Id.*

The Defendants attack the sufficiency of Plaintiffs' RICO allegations. In order to state a RICO claim under 18 U.S.C. § 1962(c), Plaintiffs must allege that the Defendants "(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999). In total, the Defendants raise seven arguments[1] as to why the Complaint should be dismissed. I will address each in turn.

    1.    <u>Failure to Sufficiently Plead RICO Predicate Act</u>

The Defendants first argue that the Complaint should be dismissed because abusive litigation cannot serve as a RICO predicate act. ECF No. 14 at 2. The Plaintiffs respond that they pled predicate acts of mail and wire fraud, not abusive litigation. ECF No. 16 at 3.

Abusive litigation, alone, cannot form a proper predicate act under RICO. *Bixler v. Foster*, 596 F.3d 751 (10th Cir. 2010). If plaintiffs could bring a RICO claim for abusive

---

[1] The Huff Defendants present the first five arguments in their Motion to Dismiss, ECF No. 14. The Weiss Defendants adopt these arguments in their Motion to Dismiss, ECF No. 15, and present two additional arguments.

litigation, this would open the door for almost any aggrieved plaintiff to bring such a suit. *Id.* at 758. It seems unsettled, however, whether mail and wire fraud can be a proper predicate act when those acts occurred in the context of litigation. In *Deck v. Engineered Laminates*, the Tenth Circuit suggested that this would be a proper use of RICO. 349 F.3d 1253, 1255 (10th Cir. 2003) ("We also hold that although extortion is a proper predicate act, a claim of extortion cannot be based on mere abusive litigation. On the other hand, mail and wire fraud are proper predicate acts."). Some courts have held that a plaintiff cannot creatively plead mail and wire fraud to bring a RICO claim based on litigation activities. *See, e.g., Snyder v. United States Equities Corp.*, No. 12-CV-6092 CJS, 2014 WL 317189, at *22 (W.D.N.Y. Jan. 28, 2014); *Eastern Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014). The Eleventh Circuit noted this is true in part because "[s]erving a motion by mail is an ordinary litigation process." *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002).

By the same token, the context of the allegedly fraudulent litigation seems relevant. For example, in *United States v. Eisen*, the Second Circuit held that seven attorneys who filed personal injury suits could be convicted under criminal RICO for bribing witnesses, pursuing counterfeit claims, and using false witnesses at trial to fraudulently earn millions in contingency fees. 974 F.2d 246, 251 (2d Cir. 1992). Mail fraud was an appropriate predicate act there because the "fraudulent criminal scheme underlying the predicate mail fraud offenses . . . was entirely external to, and independent of, any of the particular disputes between the litigants in the civil actions that were improperly filed and litigated by the *Eisen* defendants in execution of their scheme. *Nakahara v. Bal*, No. 97 CIV.2027(DLC), 1998 WL 35123, at *9 (S.D.N.Y. Jan. 30, 1998) (citing *United States v. Eisen*).

Likewise, the Eastern District of California found mail and wire fraud to be a proper predicate act in a case with substantially similar facts to the case at hand. ECF No. 16-1 (*Saniefar v. Moore*, No. 1:17-cv-00823-LJO-BAM (E.D. Cal. Mar. 13, 2018), Memorandum Decision and Order Denying Defendants' Motion to Dismiss). There, like here, the defendants were attorneys and others who allegedly filed over 1,400 fraudulent ADA suits across California. *Id.* at 2–3. The plaintiff in the underlying ADA suits falsely claimed to be disabled and could not provide any evidence that he ever even visited the plaintiffs' restaurant. *Id.* at 3–4.

Plaintiffs here pled predicate acts of mail and wire fraud. Like in *Eisen*, the acts were external to the underlying suit because the goal was not to produce a favorable outcome for Mr. Abreu—it was to obtain settlement money to which Defendants were not otherwise entitled. If there was no basis for the Defendants to bring the underlying suit in the first place, it can hardly be said that they used mail and wire to transmit communications in the ordinary course of litigation. This is not an instance in which this rule would protect Mr. Abreu from an aggrieved Plaintiff seeking revenge. Thus, dismissal on these grounds would be inappropriate.

    2.    Litigation Privilege

Second, the Defendants argue that they are protected by the litigation privilege. This privilege allows attorneys to publish defamatory material concerning another in the context of litigation. Restatement (Second) of Torts § 586 (1977); *see also Renner v. Chilton*, 351 P.2d 277 (Colo. 1960) (adopting the doctrine). The Defendants argue that this privilege should apply because all of Plaintiffs' allegations against them relate to their conduct in prosecuting the underlying ADA case. ECF No. 14 at 10.

The privilege was originally established to protect attorneys from defamation actions, but its protections have been extended to a variety of other claims, including common-law torts. *See*

*Buckhannon v. U.S. West Commc'ns, Inc.*, 928 P.2d 1331, 1334–35 (Colo. App. 1996). In *Patterson v. James*, a division of the Colorado Court of Appeals stated that the privilege protects attorneys from any tort claims based on statements that were an "essential and integral part of the judicial process." 2018 COA 173, at ¶¶ 20–21. There, the integral statements included the drafting and filing of legal documents, provision of legal advice, and communication as counsel in a probate proceeding. *Id.* at ¶ 21; *see also Buckhannon*, 928 P.2d at 1335.

However, the Supreme Court and the Tenth Circuit have seldom recognized an absolute privilege for attorneys, and "one claiming such immunity must demonstrate clear entitlement." *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1370 (10th Cir. 1991) (citing cases). The Supreme Court takes a functional approach in resolving claims of absolute privilege. *Id.* This approach asks me to consider factors such as "the recognition of the immunity at common law, the risk of vexatious litigation given the function involved, and the availability of checks other than civil litigation if absolute immunity was recognized." *Id.* at 1370–71 (citations omitted).

Looking at these factors, I fail to see why Defendants should be protected by this privilege. Plaintiffs have alleged that the Defendants engaged in a long string of vexatious litigation based on a fake plaintiff and exaggerated ADA violations. If these Defendants can avail themselves of an absolute privilege, there is arguably no other way for the Plaintiffs to vindicate their rights against the Defendants. Further, I am unconvinced that the statements giving rise to this suit were essential to the underlying litigation. If I take Plaintiffs' allegations as true and assume Mr. Abreu never existed, there was no need for the Defendants to communicate with the Plaintiffs or each other or file any court documents.

Because the Defendants fail to demonstrate how they are clearly entitled to this privilege, dismissal on these grounds is improper.

### 3.     *Noerr-Pennington* Doctrine

Third, the Defendants argue that the *Noerr-Pennington* doctrine bars Plaintiffs' suit. This doctrine protects the right to petition the government under the First Amendment. *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Mine Workers v. Pennington*, 381 U.S. 657 (1965). It was first established to protect litigants from antitrust liability. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). However, many courts have expanded the doctrine to other kinds of claims, including abuse of process, civil conspiracy, negligence, and tortious interference with business expectancy. *Comput. Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 831 F. Supp. 1516, 1521 (D. Colo. 1993).

The *Noerr-Pennington* doctrine does not apply if the Plaintiffs can show that the underlying litigation was a sham. *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 56. This requires the Plaintiffs to first show that the claims were "objectively baseless," which means that "no reasonable litigant could realistically expect success on the merits." *Id.* at 60. If they can do so, the court then looks to the subjective intent of the Defendants in bringing suit. *Id.* at 56. The court should examine whether the litigants interfered with another party through the "use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.* at 61.

Taking all of Plaintiffs' allegations as true, the underlying suit was clearly a sham. If Mr. Abreu never existed or visited Plaintiffs' restaurant, standing to sue did not exist in the first place. A fictitious plaintiff has no standing objective and cannot proceed, much less expect success on the merits. Further, the Defendants' alleged intent was to abuse the litigation *process* rather than obtain an *outcome* of that process. It was to procure settlement proceeds to which they had no right. Therefore, the *Noerr-Pennington* doctrine does not apply here.

### 4. Claim Preclusion

Next, the Defendants argue that res judicata, or claim preclusion, warrants dismissal of the present suit. Res judicata bars relitigation of issues that were or could have been the subject of a previously issued final judgment. *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997). Three elements must exist in order to apply the doctrine: "(1) a judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity or the cause of action in both suits." *Id.*

A stipulated, voluntary dismissal, approved by the court with prejudice, is considered a judgment on the merits for purposes of res judicata. *Clark v. Haas Grp., Inc.*, 953 F.2d 1235, 1238 (10th Cir. 1992); *Brooks v. Barbour Energy Corp.*, 804 F.2d 1144, 1146 (10th Cir. 1986).

Further, there is privity between the parties here and those in the underlying suit. Privity between a party and non-party "requires both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen*, 296 F.3d 982 (10th Cir. 2002). Attorneys act as the representative of their clients' interests, *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986)), so there is privity between the Defendants here and Mr. Abreu in the underlying suit. Likewise, Plaintiff Abbondanza owns Tavin Foods, which is a Plaintiff here and was a defendant in the underlying suit.

However, the claims do not share an identity or cause of action. The Tenth Circuit takes a transactional approach to this question, which requires me to ask whether the suit at hand arises "out of the same 'transaction, or series of connected transactions'" as the previous suit. *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1202 (10th Cir. 2000) (quoting Restatement (Second) of

10

Judgments § 24 (1982)). I should analyze the two suits pragmatically and consider factors such as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting Restatement (Second) of Judgments § 24 (1982)). Even if two cases are based on the same transaction or occurrence, however, res judicata does not bar a subsequent suit "based on conduct that occurred after the initial complaint was filed," *id.*, or instances in which the underlying parties did not have "a full and fair opportunity to litigate the claim in the prior suit." *Plotner*, 224 F.3d. at 1170.

I fail to see how these two matters share an identity. The underlying suit arose out of Mr. Abreu's alleged visit to Plaintiffs' restaurant and his experience with ADA violations there. The present suit arises out of Mr. Abreu's subsequent lawsuit against Plaintiffs and the conduct of Defendants through the pendency of that suit. Plus, an ADA claim and a RICO claim would hardly make a convenient trial unit.

The Plaintiffs did not have a full and fair opportunity to litigate their RICO claim in the underlying suit. The Defendants argue that the Plaintiffs doubted the legitimacy of Mr. Abreu's claims from the outset. But even if this is true, Plaintiffs' suspicions were based on all of Defendants' conduct throughout the underlying suit, including the manner in which it was ultimately dismissed. Thus, Plaintiffs could not have litigated their RICO claims in the underlying suit. Dismissal because of res judicata would be improper.

5.  Lack of Standing

Finally, in a footnote, the Defendants argue that Plaintiff Abbondanza has no standing to bring this suit in the first place because he was not a named defendant in the underlying action. ECF No. 14 at 12 n.7. They cite no legal authority for this proposition. The Plaintiffs did not

11


address this in their Response to the Huff Defendants, ECF No. 16, so in their Reply the Defendants state that this failure can be deemed a confession and Plaintiff Abbondanza can be dismissed for lack of standing. ECF No. 18 at 8 n. 6.

The Huff Defendants cite to *Green v. Dorrell* in their Reply. *See id.* There, the Tenth Circuit found that a *pro se* litigant's failure to respond to a motion by the opposing party effectively served as a confession. *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). However, that decision was based solely on the Local Rules of the United States District Court for the Eastern District of Oklahoma. *Id.* At the time, the Eastern District of Oklahoma's Local Rule 14(a) stated that a party must file a memorandum in opposition to a motion "within ten days after the filing of the motion. Failure to comply with this paragraph will constitute waiver of objection by the party not complying, and such failure to comply will constitute a confession of the matters raised by such pleadings." *Id.* There is no parallel rule in this court's local rules that would support dismissing Plaintiff Abbondanza for his failure to reply to this argument.

In adopting this argument, the Weiss Defendants cite favorably to the Colorado Court of Appeals' opinion in *Nicholson v. Ash*. *See* ECF No. 15 at 3. There, the court stated that the general rule was "a stockholder cannot maintain a personal action against a director or other third party whose action causes harm to the corporation." *Nicholson v. Ash*, 800 P.2d 1352, 1356 (Colo. App. 1990). Instead, the corporation itself could bring suit or a stockholder could bring a derivative action. *Id.*

This rule is inapplicable to the facts at hand. Plaintiff Abbondanza is the President of Tavin Foods, which is the parent company of Riverbend Market and Eatery. A derivative action is available for a shareholder or shareholders to enforce the rights of a corporation that the corporation itself has failed to protect. Fed. R. Civ. P. 23.1(a). A derivative action would be

inappropriate, and the Defendants fail to show any other grounds on which I should dismiss Plaintiff Abbondanza for lack of standing.

      6.     Failure to State a Distinct Enterprise

The Weiss Defendants raise two additional arguments beyond the five presented by the Huff Defendants. First, they argue that the Plaintiffs have failed to plead a RICO enterprise distinct from the Defendants themselves. ECF No. 15 at 3.

RICO liability requires a Plaintiff to allege the existence of two distinct entities: "(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). In *Boyle v. United States*, the Supreme Court held that an association-in-fact RICO enterprise must have at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." 556 U.S. 938, 946 (2009).

Defendants rely heavily on *Switzer v. Coan*, in which the Tenth Circuit held that a plaintiff failed to meet this pleading standard. 261 F.3d 985 (10th Cir. 2001). There, the plaintiff alleged in his complaint that various magistrate, district, and appellate judges, the circuit's clerk, a former chief staff attorney, unspecified staff attorneys and law clerks, and a former U.S. Attorney engaged in a racketeering enterprise by denying him "meaningful access to the courts" and conducting an "obstruction of justice conspiracy . . . because of his status as a pro se litigant." *Id.* at 987. His complaint was dismissed, however, because the alleged enterprise he pled was "simply the group of individual defendants accused of engaging in the racketeering." *Id.* at 992.

Defendants' reliance on this case is misplaced. The Tenth Circuit does not demand that litigants demonstrate a RICO enterprise is somehow greater than the sum of its parts. Instead, a plaintiff must simply allege that the defendants conducted or participated in the affairs of the criminal enterprise, not just the defendant's own affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). In *Switzer*, the defendants were simply engaging in their own affairs—working as judges, court staff, and attorneys. There were no allegations that the defendants worked together to advance the *enterprise's* affairs.

The Complaint here sufficiently pleads that distinction. Presumably the attorneys and law firms have clients besides Mr. Abreu. These were the Defendants' own affairs. These Defendants also worked to advance the enterprise's own goals, however, by bringing a string of fraudulent lawsuits across Colorado and the country as a whole on behalf of Mr. Abreu. The Plaintiffs have not simply named a list of Defendants and argued that they formed a criminal enterprise by simply associating with one another. Instead, the Plaintiffs allege that the Weiss Defendants enlisted the help of the Huff Defendants to bring dozens of fraudulent ADA cases in Colorado. Plaintiffs have clearly met their burden of pleading a distinct RICO enterprise.

7.      Failure to Set Forth Plausible Claims

Finally, the Weiss Defendants argue that the Plaintiffs have failed to state a sufficiently specific claim and thus the Complaint must be dismissed as conclusory. ECF No. 15 at 5–7. As stated above, the Complaint need only contain enough "facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Plausible" doesn't mean "likely to be true," but instead means that the Complaint is a nudge beyond "conceivable." *Robbins*, 519 F.3d at 1247.

The Defendants argue that the Complaint is not plausible because *if* Mr. Abreu exists, much of the Complaint becomes obsolete. ECF No. 15 at 6. Further, they present what they view as the "most plausible" explanation of Plaintiffs' allegations. *Id.* at 7. As proof that Mr. Abreu exists, they point to an affidavit purportedly signed by him and a scheduling order in the underlying case which stated that it was undisputed Mr. Abreu is a resident of Florida.

While it is conceivable that there is a legal explanation for the Defendants' conduct, this possibility does not warrant dismissal of Plaintiffs' claims at this stage of the present case. The Plaintiffs have alleged specific facts to suggest that Mr. Abreu never had standing to bring the underlying suit in the first place. The record does not definitively place Mr. Abreu at Plaintiffs' restaurant in July 2015. The Defendants did not provide Plaintiffs with any evidence of Mr. Abreu's trip to Colorado, let alone his visit to Plaintiffs' restaurant. Despite being the named plaintiff in hundreds of cases across the country, Plaintiffs could not find a single instance in which Mr. Abreu was deposed. Nor could they find any photographic evidence of Mr. Abreu's existence online. These allegations plausibly suggest that the Defendants engaged in a long string of fraudulent ADA cases across the country, and thus dismissal would be inappropriate.

### III. Motion for Sanctions (ECF No. 40)

The Weiss Defendants have also filed a Motion for Sanctions. (ECF No. 40). They argue that there is definitive proof Mr. Abreu exists, and as such this suit is frivolous and sanctions are appropriate. *Id.* at 1–2. Because I find the imposition of sanctions to be premature at this time, this motion is DENIED.

To determine whether sanctions are appropriate under Rule 11 of the Federal Rules of Civil Procedure, I must ask whether "a reasonable attorney admitted to practice before the district court would file such a document." *Adamson v. Bowen*, 855 F.2d 668 (10th Cir. 1988).

15

Conduct is sanctionable if "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law." *Id.*; citing *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985). The attorney's subjective belief is not important—this is a purely objective analysis. *White v. General Motors Corp., Inc.*, 908 F.2d 675, 680 (10th Cir. 1990).

I am reluctant to impose sanctions before the parties have even had a chance to conduct discovery. Plaintiffs' lawsuit does not become entirely frivolous if Mr. Abreu exists, as there would still be questions regarding whether Mr. Abreu visited Plaintiffs' restaurant or any of the dozens more he has sued in Colorado or whether there is more than one person acting as Mr. Abreu.

## IV. Conclusion

For the reasons given above, Defendants' arguments fail to persuade me that dismissal under Rule 12(b)(6) is warranted. Accordingly, Defendants' Motions to Dismiss (ECF Nos. 14, 15) are DENIED. The Weiss Defendants' Motion for Sanctions (ECF No. 40) is also DENIED.

DATED this 23rd day of October, 2019.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE