IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00328-TMT-MEH

MICHAEL ABBONDANZA and
TAVIN FOODS, INC.,

    Plaintiffs,

v.

JASON WEISS,
PETER LEINER,
WEISS LAW GROUP, PC,
BRETT HUFF,
RICHARD LESLIE,
HUFF & LESLIE, LLP, and
GIOVANNIA PALONI,

    Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendant Jason S. Weiss's Motion to Compel RICO Case Statement. ECF 74. The Motion is fully ripe for review, and the Court heard oral arguments at the Motion Hearing on February 11, 2021.

### BACKGROUND

<u>The Underlying Lawsuit of *Abreu v. Tavin Foods, Inc.*, No. 16-cv-00432-MEH (D. Colo.)</u>

On February 23, 2016, Santiago Abreu, a Florida resident, filed a lawsuit against Tavin Foods, Inc. In his complaint (filed at ECF 1 in that case), Mr. Abreu stated that he suffers from moderately severe multiple sclerosis and sudden onsets of severe pain. He is paraparetic and requires use of a wheelchair. The subject of the lawsuit was Mr. Abreu's visit to the Riverbend

Market and Eatery restaurant that Tavin Foods, Inc. operated in Park County, Colorado. Mr. Abreu represented that he "personally visited the Premises and dined at the Premises, but was denied full and equal access and full and equal enjoyment of the facilities, services, goods and amenities within the Premises, even though he was a 'bona fide patron.'" *Id*. at ¶¶ 2-3, 6-7. Attached to the complaint was a photograph of the top of a meal order ticket showing the restaurant's name and address. Nothing of the receipt's photographed portion refers to Mr. Abreu.

He alleged that he "suffered an injury in fact" from the denial of full access as a restaurant visitor. *Id*. at ¶ 17. He identified multiple access barriers that he encountered in the men's restroom, bar area, entrance pathway, and parking lot. *Id*. at ¶¶ 20-23. Mr. Abreu sued under 42 U.S.C. § 12188 of the Americans with Disabilities Act ("ADA") to remove the barriers. Mr. Abreu was represented by Jason Weiss, Esq. and Peter S. Leiner, Esq. of the Weiss Law Group, PA in Florida and by Richard W. Leslie, Esq. and Brett Huff, Esq. of Huff and Leslie, LLP in Colorado.

Courtenay Patterson, Esq. represented Tavin Foods, Inc. on a *pro bono* basis. ECF 28. On February 3, 2017, Mr. Abreu moved for summary judgment. ECF 50.  He attached to the motion an affidavit in which he confirmed his allegations about visiting the restaurant and the barriers that he encountered. On February 10, 2017, the parties filed a Stipulation of Dismissal with Prejudice (ECF 53), and the case was closed (ECF 54).

<u>The Current Lawsuit</u>

Tavin Foods, Inc. and its owner, Michael Abbondanza, ("Plaintiffs") now sue the attorneys and law firms who represented Mr. Abreu. Courtenay Patterson, Esq., who defended them against the underlying lawsuit, represents them as the Plaintiffs in bringing this lawsuit. ECF 9. In their Amended Complaint (ECF 8-1), Plaintiffs raise the claims of abuse of process, civil conspiracy, fraud, federal RICO Act violations, and Colorado Organized Crime Control Act violations.

Plaintiffs allege that the Defendant attorneys and law firms practice in the area of ADA access law. ECF 8-1 at ¶¶ 6–9. Defendant Weiss Law Group has represented Mr. Abreu in hundreds of cases across the country (*id*. at ¶ 17), and Huff and Leslie, LLP has represented Mr. Abreu in twenty-nine ADA access lawsuits in Colorado (*id*. at ¶ 10). Plaintiffs include Giovannia Paloni, who owns the Florida business, Complete ADA Compliance, as a Defendant. Mr. Weiss retained Ms. Paloni to write the ADA violations report about the restaurant. *Id*. at ¶ 12. Despite attempts to serve Ms. Paloni with process (ECF 70 & 77), she has not appeared in this case.

Plaintiffs' claims are based on the allegation that Defendants have operated as a conspiracy to file baseless ADA access lawsuits against small businesses for the purpose of obtaining quick settlements. *Id*. at ¶ 13. In support, Plaintiffs cite various irregularities from the underlying case against them. They allege that Ms. Paloni never visited the restaurant in person, contrary to what she represented in her affidavit. *Id*. at ¶¶ 25–27. They say that of the fourteen ADA violations that Mr. Abreu reported in his lawsuit, they found only four, and they were minor. *Id*. at ¶ 24. They dispute whether "Santiago Abreu" even exists, and if he does, whether he visited the restaurant. *Id*. at ¶¶ 17, 23, 43–44, 46–48. Plaintiffs say that before they filed the current lawsuit, they had requested proof of Mr. Abreu's trip to Colorado and visit to the restaurant but received none. *Id*. at ¶ 45.

Plaintiffs also refer to how the underlying lawsuit was litigated. Defendant Huff twice sent settlement offers, but then on October 19, 2016, he reported that he might have to withdraw as Mr. Abreu's local counsel because he may become a witness. *Id*. at ¶¶ 29–33. Plaintiffs were unsuccessful in deposing Mr. Abreu. *Id*. at ¶¶ 36–37. Then Mr. Abreu filed a summary judgment motion even though no discovery had taken place. *Id*. at ¶ 38. After Plaintiffs reported remediation

3

of the four violations that their expert could find, Mr. Abreu's counsel agreed to dismiss the case. *Id.* at ¶¶ 39–41.

Plaintiffs argue that the above conspiracy rises to the level of a criminal enterprise that Defendant Jason Weiss leads. *Id.* at ¶¶ 51–60. Plaintiffs claim as damages their litigation and investigation costs, the loss of their restaurant business, and non-economic damages. *Id.* at ¶¶ 103, 159.

## **LEGAL STANDARD**

Neither the Federal Rules of Civil Procedure nor the Court's Local Rules expressly provide for the kind of "RICO case statement" that Defendants request. Instead, it is a case management tool that some courts use to request a plaintiff to provide details about the factual and legal bases of a RICO claim. *Northland Ins. Co. v. Shell Oil Co.*, 930 F. Supp. 1069 (D.N.J. 1996). As *Northland* explains further, its purpose is to obtain a complete statement about a RICO claim akin to a supplemental pleading or the heightened pleading requirement for fraud claims (which often underlie a RICO claim). It may help screen ill-conceived RICO claims, focus discovery, assist in resolving a summary judgment motion, or provide a blueprint for trial. It can be used to clarify otherwise vague allegations. For example, *Northland* concerned property damage from leaky polybutylene plumbing systems, about which both sides "recognized the certain complexity of the case". *Id.* at 1071. The plaintiffs had made "only generalized and vague allegations" of consumer fraud and consumer protection violations and did not quantify their damages. *Id.* at 1070–71. Moreover, the RICO claim was the court's only basis for federal subject matter jurisdiction over the case. *Id.* at 1075.

## ANALYSIS

First, Defendants seek a RICO case statement from Plaintiffs because they "do not know precisely what plaintiffs claim each of [them] did wrong." ECF 74 at 1. The Court disagrees that Plaintiffs allegations are vague or are in need of clarity and precision. The contours of their theory of wrongdoing are readily apparent. At the Motion Hearing, Defendants cited the case of *Ghandi v. Ehrlich*, 2020 WL 5633416, No. 19-cv-03511-SDG (N.D.Ga. Sept. 21, 2020), in which a RICO claim based on the filing of ADA access lawsuits against small businesses was raised. As summarized above, Plaintiffs allege that they likewise were victims of a baseless lawsuit that was part of Defendants' larger scheme. Plaintiffs express that grievance through different fraud theories, and they base it on events from the underlying lawsuit. The Defendants were parties to it, and thus, they should be familiar with the basis of Plaintiffs' present allegations. This case stands in sharp contrast to the situation in *Dobson v. Anderson*, 319 F. App'x 698, 700 (10th Cir. 2008) in which *pro se* plaintiffs brought "conclusory allegations" about the alleged monopolization of the county's bail-bond business against hundreds of defendants (including federal and state court judges as well as the presiding judge) without "facts sufficient to support a RICO claim."

Moreover, Plaintiffs' pleadings already have been tested. Defendants filed two Motions to Dismiss (ECF 14 and 15), a Motion for Sanctions (ECF 40), and a Motion for Judgment on the Pleadings (ECF 49). The Court denied all four motions. ECF 41 and 65. Whether Plaintiffs will prevail on their claims has yet to be determined, but for present purposes, they are pleaded with sufficient clarity.

Second, Defendants complain that they "are entitled to far more information and details concerning the plaintiffs' serious charges." ECF 74 at 4. They contend that Plaintiffs have been "unable or unwilling to comply with discovery requirements." ECF 74 at 3. While one purpose for

a RICO case statement may be to "focus discovery," *Northland*, 930 F. Supp. at 1075, the parties' arguments show that they already know what subject matter areas require exploration and development through the discovery process. For example, there were the questions about whether Mr. Abreu exists and whether he was at Plaintiffs' restaurant (which Defendant Jason Weiss, Esq. answered in the affirmative at the Motion Hearing). The parties also dispute whether Defendants' ADA litigation practice remains an ongoing enterprise, Plaintiffs' claimed damages, and the reason for closing the restaurant. Because Plaintiffs' theory of wrongdoing is straightforward and the areas of inquiry already are known, a RICO case statement would not aid in the discovery process.

The parties' arguments suggest that the issue is not a lack of clarity or focus, but rather the production of discovery. Indeed, Plaintiffs submitted their answers to Defendant Jason Weiss's First Set of Interrogatories shortly before the Motion Hearing. ECF 82. However, a RICO case statement "does not *displace* traditional discovery requests." *Northwood*, 930 F. Supp. at 1075 (emphasis in the original). The parties should follow the Court's already established discovery rules for resolving any discovery disputes, as was done in *Saniefar v. Moore*, 2019 WL 3202924, No. 17-cv-00823-LJO-BAM (E.D. Cal. July 16, 2019), which addressed discovery disputes in a case about alleged fraudulent ADA access lawsuits.

## CONCLUSION

Defendants ask to compel Plaintiffs to submit a RICO case statement. As it explained at the Motion Hearing, the Court declines to place that additional procedural requirement on Plaintiffs. Moreover, regardless of whether there is authority permitting such a request, it would serve no practical purpose in this case. The Court sees no need for a more precise or complete pleading and no need to clarify the scope of discovery.

For the above reasons, the Court **denies** Defendant's Motion to Compel RICO Case Statement [filed January 14, 2021; ECF 74].

Entered this 12th day of February, 2021, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge