**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**CASE NO.:  1:19-cv-00328-TMT**

**MICHAEL ABBONDANZA AND TAVIN FOODS, INC.,**

          **Plaintiffs,**

**v.**

**WEISS LAW GROUP, P.A., PETER LEINER, RICHARD LESLIE, BRETT HUFF, HUFF & LESLIE, LLP, GIOVANIA PALONI, AND JASON S. WEISS,**

          **Defendants.**

<u>**DEFENDANTS WEISS LAW GROUP, P.A., JASON S. WEISS AND PETER LEINER'S MOTION FOR SUMMARY JUDGMENT**</u>

JOEL B. ROTHMAN
joel.rothman@sriplaw.com

**SRIPLAW**
21310 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF UNDISPUTED FACTS ............................................................. 3

III.    SUMMARY JUDGMENT STANDARD ................................................................. 11

IV.     THERE ARE NO ISSUES OF FACT THAT PLAINTIFF CANNOT PROVE CIVIL
        RICO LIABILITY ................................................................................................. 12

    a.  Elements Plaintiffs are Required to Prove for Civil RICO..................................... 12

    b.  The Allegations of the Amended Complaint.......................................................... 14

    c.  There is No Proof of the Commission of Any Predicate Act. There is No Proof of
        the Commission of Any Fraud. There is No Proof of Any Enterprise. There is No
        Proof of Any Racketeering Activity....................................................................... 15

    d.  Plaintiff Abbondanza Failed to Demonstrate Standing; Neither Plaintiff Proved any
        Cognizable Injury Proximately Caused by Defendants. ........................................ 17

V.      CONCLUSION.................................................................................................... 18

## TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)......................................11, 12

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)......................................................................................................14

*Beck v. Prupis*,
   529 U.S. 494 (2000)......................................................................................................17

*Bixler v. Foster*,
   596 F.3d 751 (10th Cir. 2010) ................................................................................13, 14

*Boyle v. United States*,
   556 U.S. 938, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009)...................................12, 13

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008)...................................12, 13

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001)...........................................12

*Franchise Tax Bd. of Calif. v. Alcan Aluminium Ltd.*,
   493 U.S. 331 (1990)......................................................................................................14

*George v. Urb. Settlement Servs.*,
   833 F.3d 1242 (10th Cir. 2016) ...................................................................................13

*Gillmor v. Thomas*,
   490 F.3d 791..................................................................................................................14

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010)...........................................................................................................14

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S. 258 (1992)......................................................................................................14

*Robbins v. Wilkie*,
   300 F.3d 1208 (10th Cir. 2002) ...................................................................................17

*Schmuck v. United States*,

  489 U.S. 705, 109 S. Ct. 1443, 103 L. Ed. 2d 734 (1989)........................................... 13

*Sedima, S.P.R.L. v. Imrex Co.,*
  473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)...................................... 12, 17

Statutes

18 U.S.C. § 1341............................................................................................................. 13

18 U.S.C. § 1343............................................................................................................. 13

18 U.S.C. § 1961(1)(B)................................................................................................... 12

18 U.S.C. § 1961(4) ....................................................................................................... 13

18 U.S.C. § 1964(c)........................................................................................................ 17

Rules

Fed. R. Civ. P. 56........................................................................................................... 11

Fed. R. Civ. P. 56.1 ......................................................................................................... 1

Defendants, Jason S. Weiss, Peter Leiner and Weiss Law Group, P.A., by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and Rule 56.1 of the Civil Rules for the District of Colorado, hereby file this Motion for Summary Judgment against Plaintiffs, Tavin Foods, Inc. d/b/a Riverbend Market and Eatery and Michael Abbondanza ("Plaintiffs"), and in support thereof states as follows:

## I.    INTRODUCTION

Plaintiffs claim defendants "formed a criminal enterprise by using the Americans with Disabilities Act, Title III ("ADA") to institute actions based on fictional plaintiffs, false allegations of injury, and false allegations of standing to collect quick settlements from Colorado businesses and citizens…most of whom as small business owners [] cannot afford legal representation." (ECF No. 8-1 at ¶¶ 13, 14.) Plaintiffs' RICO violations are based on the defendants' alleged fraud concerning their efforts to "falsely establish Santiago Abreu's visits to Colorado" where he encountered "barriers" on which the defendants based "Sham Documents" alleging ADA violations that they delivered to Plaintiffs and others through the mails and wires. (ECF No. 8-1, ¶ 70-95).

The amended complaint alleges six (6) causes of action for civil RICO, conspiracy to violate RICO, Colorado Organized Crime Control Act, Abuse of Process, Civil Conspiracy, and Fraud against Weiss Law Group, PC , Weiss, and Peter Leiner ("Weiss Defendants"); Brett Huff, Richard Leslie and Huff and Leslie, LLP ("Huff Defendants") and Giovania Paloni ("Paloni"). None of the allegations are true or supportable. The amended complaint is a work of fiction.

Discovery has demonstrated that none of the Plaintiffs' allegations are true. Santiago Abreu exists. Abreu is severely disabled from multiple sclerosis. He visited

**SRIPLAW**

C ALIFORNIA ◆ G EORGIA ◆ F LORIDA ◆ T ENNESSEE ◆ N EW Y ORK

Colorado in 2015. Abreu went to Plaintiffs' Riverbend restaurant. Abreu encountered barriers to access in violation of the ADA there. Abreu was angry and upset because he was unable to use the bathroom without assistance.

When Abreu returned to Florida, he contacted his lawyer Jason Weiss, and ADA expert Giovana Paloni. Paloni made her own visit to the Riverbend and observed ADA violations. She took photographs of the violations and reported them to Weiss. Weiss prepared a complaint based on Paloni's violations.

Weiss gave the complaint to Brett Huff. Huff filed the complaint in this court. After receiving the complaint, Abbondanza fixed some more (but not all) of the ADA barriers at the Riverbend. He appeared *pro se* for his company Tavin Foods, Inc. but soon after Courtenay Patterson agreed to represent Tavin *pro bono.*

Paloni prepared a written non-compliance report based on her visit to and photographs of the Riverbend showing numerous ADA violations. Paloni gave her report to Weiss and Leiner. Tavin obtained its own inspection report that showed some of the same violations found in Paloni's report. Patterson filed the report in the record as Tavin's expert disclosure.

Weiss and Patterson spoke by phone. Patterson represented to Weiss that the remaining ADA violations at the Riverbend were fixed. The case was moot. Weiss agreed to dismiss. So did Patterson. A stipulation of dismissal was filed and so ordered.

Plaintiffs' conspiracy claims are pure fantasy. There was never a grain of truth to any of Plaintiffs' claims. Plaintiffs never had more than speculation to support them. Plaintiffs could have and should have investigated this case before it was filed. If they had they would never have filed it. Now it must be dismissed.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## II.    STATEMENT OF UNDISPUTED FACTS

1.    Santiago Donalito Abreu, Jr. is 42 years old and physically disabled, having suffered the debilitating effects of multiple sclerosis for his entire adult life. (Abreu Tr. 11:3-25; Ex. 2). Before he got sick, he did everything for himself and was never concerned whether a public toilet had a grab bar or a mirror was lowered so he could see his reflection. (Abreu Tr. 230:10-16). Since he got sick Abreu sees the world differently: he and others with disabilities cannot get by without simple accommodations, like grab bars in bathrooms, that allow the disabled to "live life to the fullest extent." (Abreu Tr. 230:17-24).

2.    Abreu has lived in Palm Beach County, Florida for 32 years; he moved there from New Jersey when he was ten years old. (Abreu Tr. 218:23-219:7). He has lived in the same home at the same address since he was ten years old. (Abreu Tr. 232:6-7). Abreu attended high school in Florida but dropped out of school; he subsequently earned his GED. (Abreu Tr. 219:10-17). From the time he was 16 years old, Abreu worked repairing polo mallets. (Abreu Tr. 9:21-10:8).

3.    Abreu was diagnosed with multiple sclerosis in April of 2008 when he was 27 years old, but he was told by his doctor that he probably began suffering from the disease in his teens. (Abreu Tr. 11:3-25, 221:17). Abreu is disabled from MS and has been since 2009. (Abreu Tr. 11:6-16). Abreu receives social security disability and is registered to vote. (Abreu Tr. 232:21-233:14). Abreu cannot use his legs and requires a wheelchair or a motorized scooter to get around. (Abreu Tr. 221:4-7). He cannot use his right arm and, as a result, he can no longer write or hold things with that arm. (Abreu Tr.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

29:24-30:1). Abreu's expectation for the future of his disease "is to lay in a bed for 24 hours." (Abreu Tr. 223:8-9).

4.      Abreu's disease has gotten progressively worse. (Abreu Tr. 222:1). Abreu suffers pain from his MS. (Abreu Tr. 222:3). Abreu is on medical marijuana. (Abreu Tr. 8:10). He uses cannabis oil to relieve his pain. (Abreu Tr. 8:10). Abreu has used marijuana to help alleviate the pain of his MS since at least 2002 before it was legalized. (Abreu Tr. 18:3-21:24).

5.      Abreu was arrested in Maryland for possession of 13 pounds of marijuana in 2002. (Abreu Tr. 18:3-21:24). Abreu was arrested while traveling back to his home in Florida from New York by car with the marijuana intending to learn to make cannabis oil with it to treat his MS pain. (Abreu Tr. 18:3-21:24; 200:12-201:1).

6.      Abreu met attorney defendant Jason Weiss in Miami, Florida through Abreu's friend Manny Noriega. (Abreu Tr. 26:23-25, 38:7-9). They met in person three to five times. (Abreu Tr. 39:6). Abreu was accompanied by Noriega to the meetings with Weiss. (Abreu Tr. 41:9). Abreu often traveled with Manny "because Manny is kind of heavy and can lift" Abreu. (Abreu Tr. 41:9-11).

7.      In October of 2015, Abreu engaged Weiss to represent Abreu in ADA claims, including the claim against Tavin concerning the Riverbend. (Weiss Tr. 157:9-19, Ex. 5; Abreu Tr. 113:4-115:21, Ex. 5). Abreu was not entitled to receive any compensation from ADA lawsuits according to the agreement he signed with Weiss. (Weiss Tr. 157:20-158:25; Abreu Tr. 113:4-115:21, 117:4-16). Abreu was financially responsible for any potential sanctions awarded to defendants in lawsuits. (Abreu Tr. 116:5-14).

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

8.      Abreu visited Colorado in the summer of 2015 with his friend Noriega. (Abreu Tr. 52:15-53:2). They drove together to Colorado in a borrowed minivan with a wheelchair lift. (Abreu Tr. 53:9-17, 58:24). The purpose of the trip was to look into whether it would be feasible for Abreu to move to Colorado start a marijuana business where he could also satisfy his own need for medical marijuana to alleviate his MS pain. (Abreu Tr. 53:18-55:15).

9.      On July 14, 2015, at approximately 1:00 p.m., Abreu and Noriega were driving by the Riverbend Market and Eatery. (Abreu Tr. 223:14-17). Abreu and Noriega stopped at the Riverbend to eat lunch because they were hungry; they "chose that place randomly." (Abreu Tr. 223:14-224:1).

10.     Abreu recalled that the Riverbend had "a bunch of white rocks on the side" next to the front entrance. (Abreu Tr. 85:14-18). Abreu was in a wheelchair and there was no ramp to the front door. (Abreu Tr. 85:21-86:1). Abreu did not have his cane with him. (Abreu Tr. 87:25). Noriega had to lift Abreu in his wheelchair over the steps. (Abreu Tr. 100:24-25). Abreu and Noriega went in the through the front door and sat at the first table on the left. (Abreu Tr. 98:1-8).

11.     Abreu went to the bathroom and encountered barriers that made it impossible for him to use the bathroom at the Riverbend without Noriega's assistance. (Abreu Tr. 86:17-87:15). Abreu could not turn his wheelchair around 360 degrees because the Riverbend bathroom was not ADA compliant. (Abreu Tr. 86:17-87:15). Noriega had to lift his friend Abreu's wheelchair to turn it around so Abreu could use the bathroom. (Abreu Tr. 86:17-87:15).

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

12.     The lack of a ramp to the front door and the bathroom that was not ADA compliant made Abreu so angry he lost his appetite and did not order a burger. (Abreu Tr. 86:13-14). Instead, Noriega purchased antipasti. (Abreu Tr. 228:10-19). Nicole Garcia was the server at the Riverbend who waited on Abreu. (Abbondanza Tr. 65:4-21).

13.     Abbondanza never asked Garcia if she remembered someone fitting the description of Abreu visiting the Riverbend that day. (Abbondanza Tr. 66:25-68:1). The receipt attached to Abreu's complaint in the Underlying Case showing an order of "antipasti," a dish served at the Riverbend, was produced by the Riverbend Point-of-Sale (POS) system. (Abbondanza Tr. 56:12-15, 68:11-13). A record of that receipt is in the Riverbend's POS system, but no one on behalf of plaintiff ever looked for it. (Abbondanza Tr. 57:2-23). Garcia was no longer working at the Riverbend when Abbondanza was served with the complaint in the Underlying Case, but he never reached out to Garcia to ask her if she remembered seeing Abreu. (Abbondanza Tr. 68:2-7).

14.     Abreu took photographs to document his observations of barriers at the Riverbend. (Abreu Tr. 111:7-9). Abreu took photographs of the sink, the toilet (without a grab bar), and the outside of the restaurant to show that there was no ramp to the front door. (Abreu Tr. 111:7-112:18).

15.     According to Abreu, it is important for suits to be filed for ADA violations against establishments like Riverbend because "nobody that's in my condition or situation or similar should have to go through that. They should -- we should be able to

go everywhere just like normal people…. To go live life. To be a part of life." (Abreu Tr. 229:20-230:2).

16.     After Abreu's visit and his return from Colorado, he contacted his attorney, Jason Weiss. Abreu complained to Weiss about the "complete lack of access" for the disabled in Colorado. (Weiss Tr. 109:12-25). Abreu gave Weiss the pictures he took at the Riverbend. (Abreu Tr. 112:19-21). Abreu gave Weiss receipts from his travels in Colorado. (Weiss Tr. 112:11-14).

17.     After his visit to the Riverbend, Abreu contacted ADA expert Giovannia Paloni. (Abreu Tr. 87:16-21, 107:3-113:3; Paloni Tr. 139:6-140:16). Abreu gave Noriega the photographs he took at the Riverbend and Noriega gave them to Paloni. (Abreu Tr. 137:18-138:12). Weiss also gave Paloni photographs and data from Abreu's visit using Dropbox. (Paloni Tr. 141:14-24).

18.     After Abreu's trip to Colorado, Paloni went to Colorado and confirmed violations at different places that Abreu encountered. (Weiss Tr. 110:19-21). In January or February of 2016, Paloni drove to the Riverbend from Breckenridge. (Paloni Tr. 120:5-121:13; 154:8-10). Paloni took photographs, made observations, and prepared a non-compliance report with her findings showing the disability barriers. (Abreu Tr. 107:3-113:3; Paloni Tr. 141:1-10).

19.     Paloni identified numerous barriers at the Riverbend including the following:

- **The men's room urinal was too high for a disabled person.**
  (Violation: failing to provide a urinal designed for a person with a disability where the rim height is no more than 17 inches from the finished floor in violation of 2010 ADAAG §§605 and 605.2.)

- **The men's room side grab bar was not long enough and slanted.** (Violation: providing grab bars of improper horizontal length or spacing on the back or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1, 604.5.2, 609, 609.4 when resolution is readily achievable.)

- **The men's room toilet paper holder was installed at the wrong height.** (Violation: failure to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§604, 604.7 and 309.4 when resolution is readily achievable.

- **The men's room mirror was mounted too high.** (Violation: failure to provide mirror(s) located above lavatories or countertops at the proper height above the finished floor 2010 in violation of ADAAG §§603 and 603.3 when resolution is readily achievable.

- **The Premises lacked designated van accessible parking spaces.** (Violation: 2010 ADAAG §§208, 208.1 and 208.2.4.)

(Paloni Tr. Ex. 1; 184:8-186:16).

20.     In addition, Paloni also observed that the trash can was in front of the bathroom door which prevented the door from opening sufficiently for a disabled person. (Paloni Tr. 145:19-149:3). Paloni also observed that there was no handicap accessible parking spot with an accessible route to the entrance of the property. (Paloni Tr. 162:22-166:2).

21.     Paloni communicated the violations to Weiss so he could prepare a lawsuit based upon Paloni's observations. (Paloni Tr. 182:1-10; Weiss Tr. 125:6-14). After the lawsuit was filed, Paloni drafted her non-compliance report. (Paloni Tr. 182:3; Weiss Tr. 125:6-14). Paloni was not paid for her non-compliance report on the Riverbend; she waived her fee as a professional courtesy to Weiss because the case was dismissed. (Paloni Tr. 86:8-16, 245:22-246:10).

22.     Tavin Foods, Inc. owned and operated the Riverbend restaurant. (Abbondanza Tr. 29:19). Tavin Foods, Inc. did not own the real estate on which the

Riverbend sat, it was owned by Abbondanza and his former partners the Schafers individually. (Abbondanza Tr. 285:20-286:10).

23.     In late 2014, before the Riverbend opened, the owners of the Tavin Foods, Inc. business were Michael Abbondanza (40%), David and Serina Shaefer (40%), and David and Mary Lou Jespersen (20%). (Abbondanza Tr. 33:18-34:4). Tavin did not keep or create periodic profit and loss statements. (Abbondanza Tr. 55:8-11). The tax returns for Tavin Foods, Inc. show that the business never turned a profit. (Abbondanza Tr., Exs. 17 and 18)[1].

24.     On February 23, 2016, Abreu, through his attorneys Huff and Leslie, LLP, filed *Santiago Abreu v. Tavin Foods, Inc.*, 1:16-cv-00432-MEH, in the District of Colorado (the "Underlying Action"). (Weiss Tr. 193:10-12). The complaint in the Underlying Action alleged the same barriers Paloni and Abreu found at the Premises that violated the ADA. (See ECF No. 65 taking judicial notice of certain facts in the Underlying Action; Paloni Tr. Ex. 1).

25.     After receiving the Complaint, Abbondanza fixed some of the violations at the Riverbend. (Abbondanza Tr. 156:13-157:4). Then, on March 21, 2016, Abbondanza filed an Answer on behalf of Tavin *pro se.* (Underlying Action ECF No. 9). After Tavin's answer was stricken, after the Court gave Tavin additional time to retain counsel, and after further filings and a hearing, Courtenay Patterson, Esq., was appointed by the Court as pro bono counsel for Tavin pursuant to D.C. COLO. L. Atty. R. 15(e)(1) and appeared for Tavin in the Underlying Action. (ECF No. 55 at 4; Underlying Action ECF No. 30).

---

[1] The tax returns will be filed by the co-defendants on a restricted basis.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

26.     On September 26, 2016, the parties filed a proposed scheduling order that stipulated to the fact that "Plaintiff Santiago Abreu is a resident of the State of Florida," and that "Plaintiff is seeking injunctive relief and attorney's fees and costs only. Plaintiff is not seeking any monetary award." (Underlying Action ECF No. 32 at 3). The parties agreed to jurisdiction by Magistrate Judge Hegarty. (Underlying Action ECF No. 24, 33).

27.     On December 30, 2016, Tavin, through Ms. Patterson, filed its expert witness disclosures that designated Mr. Mark Douglass of Peak Access as its expert witness. (Underlying Action ECF No. 49). Attached to the expert witness disclosure for Tavin was a "Site Accessibility Evaluation" pursuant to the ADA authored by Douglass based on his inspection of the Premises on December 6, 2016. (Underlying Action ECF No. 49-1).

28.     Douglass' Site Accessibility Evaluation reviewed the violations noted by Paloni in her report, many of which Douglass disagreed with, but Douglass' report confirmed that the Premises, at the time of his visit, still suffered from the following ADA violations:

- **The men's room urinal was too high for a disabled person (repair cost $800-1,200).** (Violation: 2010 ADAS § 605.2.) (ECF 49-1 at 6).

- **The men's room side grab bar was not long enough and slanted (repair cost $40-80).** (Violation: 2010 ADAS § 604.5.1.) (ECF 49-1 at 7).

- **The men's room toilet paper holder was installed at the wrong height (repair cost $5-10).** (Violation: 2010 ADAS § 604.7.) (ECF 49-1 at 8).

- **The men's room mirror was mounted too high (repair cost $75-125).** (Violation: 2010 ADAS § 603.2.) (ECF 49-1 at 9).

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

- **The Premises lacked designated van accessible parking spaces and signage (repair cost $75-150).** (Violation: 2010 ADAS § 502.6.) (ECF 49-1 at 16).

29.     On February 3, 2017, Weiss appeared for Abreu by filing a Motion for Summary Judgment ("MSJ"). (Underlying Action ECF No. 50). Attached to the MSJ was a declaration signed by Santiago Abreu. (Abreu Tr. Ex. Defendants' 1; Underlying Action ECF Nos. 50-1). On February 9, 2019, Weiss and Patterson spoke by telephone; during the call, Patterson advised Weiss that she could "verify and [] confirm that the -- that [the remaining ADA violations were] fixed," and Weiss "took an officer of the court at her word." (Weiss Tr. 168:14-17, 170:14-15). The case was then dismissed by joint stipulation. (Weiss Tr. 97:2-7; Underlying Action ECF No. 53; ECF No. 8-1, ¶¶ 39 and 40). On February 13, 2017, the Court in the Underlying Action entered its final order dismissing the case with prejudice with the parties to bear their own fees and costs. (Underlying Action ECF No. 54).

30.     On February 11, 2021, Judge Hegarty conducted a hearing on Weiss' Motion to Compel RICO statement and concluded that Abreu was real and that Weiss believed that Abreu was at the Riverbend on July 14, 2015. (Transcript of February 11, 2021 hearing, ECF No. 102).

**III.    SUMMARY JUDGMENT STANDARD**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (*quoting* Fed. R. Civ. P. 56).

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. However, once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250.

### IV. THERE ARE NO ISSUES OF FACT THAT PLAINTIFF CANNOT PROVE CIVIL RICO LIABILITY

#### a. Elements Plaintiffs are Required to Prove for Civil RICO.

RICO provides a private right of action in federal court for individuals injured in their business or property through fraudulent conduct. A RICO plaintiff must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985). "The term 'racketeering activity' is defined to include a host of so-called predicate acts," *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008), including "any act which is indictable under ... section 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1)(B).

RICO liability requires a Plaintiff to allege the existence of two distinct entities: "(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001). In *Boyle v. United States*, 556 U.S. 938, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009), the Supreme Court held that an association-in-fact RICO enterprise must have at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946.

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

RICO broadly defines "'enterprise' as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) (quoting 18 U.S.C. § 1961(4)). An "enterprise" must have a purpose. *Boyle*, 556 U.S. at 946. An "association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle*, 556 U.S. at 946.

The predicate acts claimed by Plaintiffs here are mail fraud and wire fraud. (ECF No. 8-1, ¶¶ 69-99). Mail fraud "occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.'" *Bridge*, 553 U.S. at 647 quoting 18 U.S.C. § 1341. Wire fraud is the same just by phone or electronic communications. 18 U.S.C. § 1343. The gravamen of both offences is a scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element,' even if the mailing itself 'contain[s] no false information.'" *Bridge*, 553 U.S. at 647 quoting *Schmuck v. United States*, 489 U.S. 705, 712, 109 S. Ct. 1443, 103 L. Ed. 2d 734 (1989).

Abusive litigation, alone, cannot form a proper predicate act under RICO. *Bixler v. Foster*, 596 F.3d 751 (10th Cir. 2010). The predicate acts alleged "must be external to the underlying suit because the goal was not to produce a favorable outcome for Mr. Abreu—it was to obtain settlement money to which Defendants were not otherwise entitled." ECF No. 41 at 7. ("If there was no basis for the Defendants to bring the underlying suit in the first place, it can hardly be said that they used mail and wire to

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

transmit communications in the ordinary course of litigation.")

A plaintiff has standing only if his injuries were proximately caused by the RICO violation. *Gillmor v. Thomas*, 490 F.3d 791, 797 n. 4 (10th Cir. 2007); *Holmes*, 503 U.S. at 268 (1992) (holding plaintiff lacked standing to bring RICO claims because there was no "direct relation between the injury asserted and the injurious conduct alleged"). Conduct which harms a corporation confers standing on the corporation, not its shareholders. *Bixler v. Foster*, 596 F.3d 751, 756–57 (10th Cir. 2010). An exception to this rule "allow[s] a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." *Franchise Tax Bd. of Calif. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990).

Proof of a civil RICO violation requires "a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). "Proximate cause for RICO purposes…should be evaluated in light of its common-law foundations; proximate cause thus requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 262-263 (1992). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Grp., LLC v. City of New York,* 559 U.S. 1, 9 (2010) quoting *Holmes*, 503 U.S. at 271, 274.

### b. The Allegations of the Amended Complaint.

The Plaintiffs claim defendants "formed a criminal enterprise by using the Americans with Disabilities Act, Title III ("ADA") to institute actions based on fictional Plaintiffs, false allegations of injury, and false allegations of standing to collect quick settlements from Colorado businesses and citizens…most of whom as small business

owners [] cannot afford legal representation." (ECF No. 8-1 at ¶¶ 13, 14). Plaintiffs allege that Santiago Abreu does not exist, and his existence has been "falsified" by defendants. (ECF No. 8 at ¶¶ 17, 45, 54, 56, 57, 60, 61, 71, 139).

The Amended Complaint claims defendants used the mails to "falsely establish Santiago Abreu's visits to Colorado" where he encountered "barriers" (ECF No. 8-1, ¶ 71) on which the defendants based "Sham Documents" alleging ADA violations that they delivered to Plaintiffs and others through the mails. (ECF No. 8-1, ¶¶ 72-74). Plaintiffs' wire fraud allegations are based on the same facts. (ECF No. 8-1, ¶¶ 82-95). The alleged instrumentalities of "Sham Documents" are defined as "receipts, reports, signatures, verifications, declarations, complaints, discovery, correspondence, and other documents containing false information related to the litigation being prosecuted." (ECF No. 8-1, ¶ 70).

The Amended Complaint alleges Tavin, owner of the Premises, and Abbondanza, were damaged by the alleged RICO enterprise when they suffered "financial losses and damages… as a result of Defendants' fraud" including "amounts paid for investigative services to uncover the fraud of the enterprise, amounts paid to consultants, experts and contractors as a result of the false statements made by the enterprise, amounts paid for litigation costs and expenses incurred in defending against the false allegations" in the underlying litigation, and "harm and damages" Plaintiffs suffered because "they were forced to close their business." (ECF No. 8-1, ¶ 103 at 26-27).

> **c. There is No Proof of the Commission of Any Predicate Act. There is No Proof of the Commission of Any Fraud. There is No Proof of Any Enterprise. There is No Proof of Any Racketeering Activity.**

There are no material facts showing the commission of any wire fraud or mail fraud by Weiss, Leiner, the Weiss Firm, or any other defendants. The Plaintiffs' case is pure fantasy. Abreu is real. Abreu is really disabled, severely so in fact. Abreu really visited the Premises. Abreu really observed barriers to the disabled at the Riverbend. Abreu really took pictures of the barriers. Abreu really reported the barriers to Paloni and Weiss.

Paloni really visited the Riverbend. Paloni really observed barriers there. Paloni advised Weiss of the violations of the ADA at the Premises. Weiss drafted a complaint for ADA violations against Tavin based on what he was told by Paloni and Abreu.

Weiss gave his draft complaint to Huff & Leslie. Huff & Leslie filed the complaint against Tavin. Abbondanza fixed some of the violations after receiving the Complaint. Then Abbondanza hired his own ADA expert who confirmed that there were still ADA violations at the Premises. Abbondanza fixed the remaining violations and told Patterson they were fixed. Patterson told Weiss the violations were fixed. Weiss took the word of an officer of the Court and offered to dismiss the case. Patterson agreed. The Underlying Action was dismissed.

There are no material facts showing the defendants, either individually or together, associated with each other for the common purpose of filing fraudulent ADA cases. Paloni associated with the other defendants to provide expert ADA consulting services, not to commit fraud. Weiss associated with Huff & Leslie to file ADA claims on behalf of Abreu and vice versa, not to commit fraud. Abreu engaged Weiss and Huff & Leslie to represent him, not to commit fraud. There are no material facts in dispute that the defendants did not associate with each other to commit fraud.

16

No fraud was committed. No evidence of any fraud was discovered by Plaintiffs. Plaintiffs' assertions of fraud in the amended complaint are fantastic and unproven. No predicate acts supporting the RICO allegations were committed and there are no facts to prove them.

There was no enterprise. There was no racketeering activity. There was no pattern of such activity. There are no facts here to support such claims.

### d. Plaintiff Abbondanza Failed to Demonstrate Standing; Neither Plaintiff Proved any Cognizable Injury Proximately Caused by Defendants.

18 U.S.C. § 1964(c) provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

18 U.S.C. §1964(c).

Section 1964(c)'s language that a plaintiff be "injured in his business or property" imposes a proximate cause requirement that "the injury [be] caused by the underlying predicate violations." *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir. 2002) quoting *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Any recoverable damages occurring by reason of a violation of §1962(c) will flow from the commission of the predicate acts." *Sedima*, 473 U.S. at 497.

A RICO plaintiff must show that an enumerated predicate act caused the complained-of injuries. *Beck v. Prupis*, 529 U.S. 494, 505 (2000) (predicate act must cause damages and "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO" is not sufficient to give rise to a cause of action under §1964(c)).

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Abbondanza offered no proof of any cognizable injury he suffered personally that was proximately caused by any of the defendants' acts. His testimony was pure speculation concerning all damages claims. There was no proof of causation for any of the losses he claimed to have suffered. All his losses were self-inflicted. None were the result of anything the defendants did or did not do.

Plaintiffs' alleged losses were caused by their own admitted violations of the ADA in the Underlying Action, not by anything Weiss Defendants did or did not do. Rather, Plaintiffs' losses were caused by their own failure to address and remediate the ADA violations found at the Riverbend, the repair cost of which was approximately $1,000.00. Following confirmation of those repairs, the Underlying Action was dismissed with prejudice by Tavin and Patterson's own stipulation.

## V.      CONCLUSION

There are no material facts supporting Plaintiffs' claims. There never were. Therefore, this court should grant the Weiss Defendant's Motion for Summary Judgment and dismiss the amended complaint with prejudice.

Dated:  November 30, 2021              Respectfully submitted,

*/s/ Joel B. Rothman* _____
JOEL B. ROTHMAN
joel.rothman@sriplaw.com

**SRIPLAW**
21310 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Defendant Weiss Law Group, P.A., Peter Leiner, And Jason S. Weiss*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on November 30, 2021, a true and correct copy of the foregoing document was served by electronic mail by the Court's CM/ECF System to all parties listed below on the Service List.

*/s/Joel B. Rothman*
Joel B. Rothman

## SERVICE LIST

Mr. Courtenay Patterson
Law Offices of Courtenay Patterson
1716 North Main Street
Suite A #331
Longmont, CO 80501
courtenay.patterson@gmail.com
Attorney for Michael Abbondanza and
Tavin Foods, Inc.

Mr. George Blackmore
Blackmore Law PLC
1129 West 14 Mile Road
#1006
Clawson, MI 48017
george@blackmore.law
Attorney for Giovania Paloni

Mr. Franz Hardy
Gordon Rees Scully Mansukhani, LLP
555 Seventeenth Street
Suite 3400
Denver, CO 80202
fhardy@grsm.com
Attorneys for Richard Leslie, Brett Huff
and Huff & Leslie, LLP

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK