IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00328-TMT-MEH

MICHAEL ABBONDANZA,
TAVIN FOODS, INC.

    Plaintiffs,

v.

JASON WEISS,
WEISS LAW GROUP, PC,
BRETT HUFF,
RICHARD LESLIE,
HUFF AND LESLIE, LLP,
PETER LEINER,
GIOVANIA PALONI,

    Defendants.

---

## RESPONSE TO OBJECTION TO RECOMMENDATION

Defendants Brett Huff, Richard Leslie, and Huff & Leslie, LLP (collectively "Huff & Leslie"), through their attorneys, Franz Hardy and Stephanie Brizel of Gordon Rees Scully Mansukhani, LLP, submit this Response to the Objection to United States Magistrate Judge's Recommendation. (Doc. 169).

### I.    INTRODUCTION

This case arises out of an underlying Americans with Disabilities Act ("ADA") lawsuit. In the underlying lawsuit, Santiago Abreu claimed that Tavin Foods, Inc. had various architectural barriers in violation of the ADA. For a period of time, Huff & Leslie served as local counsel for

Mr. Abreu. The parties eventually reached a settlement and, thereafter, filed a stipulation for dismissal with prejudice.

Approximately two years later, plaintiffs filed this lawsuit alleging, *inter alia*, violation of the Racketeer Influenced Corruption Act ("RICO") based upon their supposition that Mr. Abreu was fictional and did not actually visit Tavin Foods. Since filing this lawsuit, the parties have participated in substantive discovery, including the deposition of Mr. Abreu, who identified himself and confirmed that he visited Tavin Foods and authorized the underlying lawsuit. Based upon this and other various corroborative evidence, Huff & Leslie filed a Motion for Summary Judgment. In response, plaintiffs did not produce any contrary evidence, but merely challenged Mr. Abreu's and others' credibility and argued that this was sufficient to preclude summary judgment.

Upon consideration of the briefs, Magistrate Judge Hegarty issued a thirty-seven page Recommendation determining that plaintiffs' reliance on credibility was insufficient to defeat summary judgment based upon the otherwise undisputed materials facts. He also confirmed that litigation conduct was not a recognized predicate act for purposes of RICO. Therefore, Huff & Leslie's purported conduct in the underlying ADA lawsuit was not actionable. Based upon these grounds, he recommended entry of summary judgment.

Plaintiffs now object to the Recommendation primarily by continuing to rely upon allegations of wrongdoing and challenges to credibility – rather than actual evidence. They continue to contend that Huff & Leslie was part of a scheme to file fraudulent lawsuits against businesses that Mr. Abreu never visited despite the lack of evidence to support this assertion.

Despite case law to the contrary, they also assert that litigation conduct is a sufficient predicate act for RICO.

This Court should adopt the Recommendation as it correctly applies the standard of review on summary judgment to determine that plaintiffs failed to present actual evidence to raise any genuine issue of material fact. Challenges to credibility and raising immaterial facts are insufficient as a matter of law. Also, the Recommendation accurately applies the law to conclude that Huff & Leslie's alleged conduct that occurred in the course of litigation is insufficient to maintain a RICO claim. Based upon this, this Court should adopt the Recommendation.

## II.    FACTS AND PROCEDURAL HISTORY

On February 26, 2016, Santiago Abreu filed a lawsuit against Tavin Foods, Inc., the owner of the restaurant known as Riverbend Market and Eatery. (Doc. 1-1). Mr. Abreu asserted ADA violations against Tavin Foods based upon architectural barriers he encountered at its premises. *Id.* The Complaint attached a copy of a purchase receipt from Mr. Abreu evidencing that he visited the restaurant. (Doc. 1-2).

Mr. Abreu was represented by defendants Jason Weiss, Peter Leiner, and Weiss Law Group (collectively "Weiss Law Group") from Florida. (Doc. 1-1, p. 11). Huff & Leslie served as local counsel. *Id.* Defendant Giovania Paloni served as an expert witness on behalf of Mr. Abreu. (Doc. 1-5). During the lawsuit, plaintiffs agreed to correct the violations and the parties filed a Stipulation for Dismissal with Prejudice. (Doc. 8-1, ¶¶ 39-41).

Approximately two years later, on February 7, 2019, Tavin Foods and one of its owners, Michael Abbondanza, filed this lawsuit based upon their conjecture that Mr. Abreu was fictitious
Response to Objection to Recommendation
Civil Action No. 1:19-cv-00328-TMT-MEH

and did not actually visit the restaurant. (Doc. 1, 8). Plaintiff also speculated that Ms. Paloni never visited the Riverbend. *Id.*

Over the last three years, the parties have engaged in various discovery. (Doc. 73). Mr. Abreu provided an affidavit testifying:

> I have numerous disabilities. . . . On July 14, 2015 I personally visited the Riverbend . . . I experienced violations of the 2010 American with Disabilities Act at the Riverbend… and requested my lawyer file suit against them.

(Doc. 125-1, p. 74).[1] He also testified by deposition that he suffered from multiple sclerosis. (Doc. 125-1, p. 76). Mr. Abreu testified that his interest in becoming a "tester" began after watching a television special on the ADA and due to his personal struggles with barriers. *Id.* at p. 77. He came to Colorado in May and June 2015 and visited several establishments. *Id.* at p. 79-82. He was introduced to Mr. Weiss and entered into a fee agreement with Weiss Law Group. (Doc. 125-1, Exhibit K, p. 2).

Mr. Abreu confirmed at his deposition that he visited the restaurant and experienced issues with barriers:

> A. I was on my wheelchair because they had no ramp for me to even take out my scooter. Manny put -- had to lift my wheelchair. He put the knee in my back and he lifted up the wheelchair. That's how I went in.
> \* \* \*
>
> A. The bathroom, it had a small sink and a regular toilet and I couldn't do a 360 in the bathroom because of how small it was. So I had – Manny had to come in and turn my wheelchair around and all that.

(Doc. 125-1, p. 83-84).

---

[1] Plaintiffs claim that Mr. Abreu did not review the affidavit. (Doc. 169, p. 10). This is incorrect. In fact, a Florida attorney, John Bradley, testified that Mr. Abreu read and signed the affidavit in his presence, which Mr. Bradley then notarized. (Doc. 40-1, p. 2). As to a previous affidavit, Mr. Abreu confirmed that it contained his signature and he recalled signing it before a notary public. (Doc. 151-3, pp. 183-184).

Ms. Paloni testified at her deposition that she came to Colorado and inspected the restaurant in January or February 2016, approximately six months after Mr. Abreu's visit, and utilized his photographs and her personal observations to draft her non-compliance report. (Doc. 125-1, p. 91-93). Despite also taking the depositions of Mr. Weiss and Mr. Huff, there was no evidence that they knew that Mr. Abreu did not actually visit the restaurant, yet nevertheless decided to file a lawsuit with false allegations in order to obtain a settlement. (*See* Doc. 151-16, 151-19). There was no evidence that they conspired to file lawsuits on the false premise that Mr. Abreu did not exist or did not visit the places identified in the lawsuits. *Id*. There was no evidence that Mr. Abreu did not visit the other restaurants or locations named in other lawsuits. *Id.*[2]

Given this and based upon the actual facts revealed during discovery, Huff & Leslie filed a Motion for Summary Judgment. (Doc. 125). The other defendants also filed motions for summary judgment. (Doc. 124 and 129). Nearly three months later, plaintiffs filed a single response to the various motions for summary judgment. (Doc. 151).

Upon review of the briefing, Magistrate Judge Hegarty issued a thirty-seven page Recommendation, wherein he recommended the Motions for Summary Judgment be granted with respect to the RICO claims based upon the facts and law. (Doc. 163). As to the testimony of Mr. Abreu and others, Magistrate Judge Hegarty announced:

---

[2] Plaintiffs allege that "defendants" filed over 300 lawsuits in multiple states on behalf of Mr. Abreu, including over 70 in Colorado. (Doc. 169, p. 21). This is inaccurate as to Huff & Leslie, which served as local counsel in 29 cases only in Colorado. (Doc. 125, p. 14). As further detailed in the Motion for Summary Judgment and Reply thereto, as well as herein, plaintiffs failed to produce any evidence that Huff & Leslie specifically were involved in any fraudulent activity. It is insufficient to merely argue that "defendants" broadly engaged in wrongful conduct without describing the specific involvement of each individually named defendant. Plaintiff notably decided to file a single Response to the various motions for summary judgment rather than to attempt to specifically address their claims against each named party defendant. Huff & Leslie adamantly maintains that it and its attorneys were not involved in and unaware of any improper conduct.

> Deposition testimony is a central feature of the current evidentiary record. For example, it provides the main evidence on whether Mr. Abreu and Ms. Paloni each actually visited the Riverbend restaurant. Plaintiffs object to Defendants' reliance on deposition testimony (and for Mr. Abreu, two affidavits on the same subject) to establish those two facts. Plaintiffs content that their credibility is in doubt and should be left for the factfinder to resolve.
>
> As a general rule, a party may not defeat the entry of summary judgment simply by calling a witness's credibility into doubt. It is irrelevant to the summary judgment analysis whether the court believes the movant's evidence. The court's task instead is to determine whether the nonmovant offers any specific facts that demonstrate the existence of a material fact to be tried. This obliges the nonmovant to do more than merely attack the credibility of the evidence. The nonmovant must provide its own evidence to place the matter in dispute.

(Doc. 163, pp. 5-6) (citations omitted). Based upon this standard, Magistrate Judge Hegarty then determined that plaintiffs had failed to produce any such evidence:

> A meal order ticket was attached to the underlying complaint (which Mr. Abbondanza does not dispute came from his restaurant), and at his deposition, Mr. Abreu discussed many aspects of his trip including what drew him to various towns (including Bailey, where the Riverbend was located) and the activities he pursued while in Colorado. Mr. Abreu explained why there is no record of air travel (he traveled in a borrowed RV or van), and he identified those personally knowledgeable of the trip (such as Mr. Noriega and Mr. Merwin). Riverbend's own ADA expert found access barriers at the property some of which were similar to what Mr. Abreu included in his complaint[.]
>
> On the other hand, Plaintiffs submit no evidence to contradict his testimony or that suggests Mr. Abreu was *not* at the restaurant. As noted above, Plaintiffs must do more than simply question his credibility to survive summary judgment review.

*Id*. at pp. 27-28. (emphasis in original).

Beyond the undisputed facts that supported summary judgment, Magistrate Judge Hegarty continued by also addressing the requisite acts necessary to maintain a RICO claim, including extortion and mail or wire fraud. (Doc. 163, pp. 29-30).

> Abusive litigation, while extortive in nature, is not [the] kind [of] extortion that is actionable under RICO. This Court cited *Bixler* for the general rule that '[a]busive

> litigation, alone, cannot form a proper predicate act under RICO' in a prior Order.
> . . .
>
> Consistent in the case law is the strong reluctance to recognize litigation activities as mail and wire fraud even if undertaken in the pursuit of baseless or bad faith litigation. Allegations of frivolous litigation, perjury, or deceit upon the court instead should be raised in the civil action itself. Alternatively, an aggrieved litigant may avail itself of the state tort causes of action of malicious prosecution or abuse of process. The private RICO civil cause of action does not supplant those means of redress.

*Id*. (citations omitted). Based upon this announced legal standard as applied to the undisputed materials facts, he concluded:

> The dispositive issue here is whether Plaintiffs show a genuine dispute of material fact sufficient to permit a factfinder to find the occurrence of the requisite predicate acts. The evidentiary record does not show a fraud scheme beyond the litigation activity itself . . . .
>
> There is no evidence of fraudulent activity that occurred 'entirely external to, and independent of,' the dispute over whether the Riverbend violated the ADA's public access requirements. Instead, Plaintiffs' RICO theory is premised on that lawsuit itself. The Court finds Defendants entitled to summary judgment on that basis.

*Id*. at pp. 32-33.[3]

Plaintiffs, thereafter, filed an Objection to the Recommendation. (Doc. 169).

### III. STANDARD OF REVIEW

"[O]bjections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 E. 30 St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "When a magistrate

---

[3] Magistrate Judge Hegarty proceeded to recommend that this Court not exercise supplemental jurisdiction over the remaining state law claims and, therefore, dismissed them without prejudice. *Id*. at pp. 33-36. Based upon the Recommendation, he did not address several other bases for summary judgment raised by Huff & Leslie, including the lack of evidence to support causation or damages; the lack of requisite expert testimony; litigation immunity and the Noerr-Pennington doctrine; and *res judicata*.

judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge 'determine *de novo* any part of the magistrate judge's recommendation that has been properly objected to.'" *Garewal v. Sliz*, Civil Action No. 12-cv-02348-RM-BNB, 2014 WL 11271453, *1 (D. Colo. Sept. 24, 2014) (quoting Fed. R. Civ. P. 72(b)(3)). "An objection is proper if it is filed within fourteen days of the Magistrate Judge's recommendations and specific enough to enable the 'district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute.'" *Id.* (quoting *2121 East 30th Street*, 73 F.3d at 1059).

In contrast, "issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir. 1996). "[A]rguments not raised before the magistrate judge need not be considered by this Court." *Christen-Loper v. Bret's Elec., LLC*, 175 F. Supp. 3d 1213, 1216 (D. Colo. 2016); *see also Collins v. Colvin*, 640 F. App'x 698, 700 (10th Cir. 2016). Absent a specific objection, the district judge may review the magistrate judge's recommendation "'under any standard it deems appropriate.'" *Garewal v. Sliz,* Civil Action No. 12-cv-02348-RM-BNB, 2014 WL 11271453, *1 (D. Colo. Sept. 24, 2014) (quoting *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991)).

## IV.  LEGAL ANALYSIS

### A. The Recommendation Applied the Correct Summary Judgment Standard and Determined that Issues of Credibility are Insufficient to Create a Genuine Issue of Material Fact.

Once a defendant files a properly supported motion for summary judgment, it is the plaintiff's burden to show specifically in the record what material facts preclude summary judgment. *Burnette v. Dresser Indus., Inc.*, 849 F.2d 1277, 1284 (10th Cir. 1988). "[O]n summary

[8]                          Response to Objection to Recommendation
                              Civil Action No. 1:19-cv-00328-TMT-MEH

judgment…the court looks to the uncontested evidence…on an earlier motion to dismiss…it merely looks to the allegations of the complaint." *Behrens v. Pelletier*, 516 U.S. 299, 300 (1996). "At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Id.* at 309 (emphasis added). "On summary judgment, however, the plaintiff can no longer rest on the pleadings…and the court looks to the evidence before it." *Id.*

"[I]n the face of the defendant's properly supported motion for summary judgment, the plaintiff could not rest on his allegations…to get to a jury without any significant probative evidence tending to support the complaint." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal citation omitted); *see e.g. McGrath v. Tavares*, 757 F.3d 20, 28 n. 13 (1st Cir. 2014) (court rejected argument that a party could be lying as a genuine dispute cannot be created "by relying on the hope that the jury will not trust the credibility of the witness"); *see also Rinieri v. Scanlon,* 254 F. Supp. 469, 474 (E.D.N.Y. 1966) (party opposing summary judgment "may not merely recite the incantation 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof").

Magistrate Judge Hegarty applied the above summary judgment standard in his Recommendation to determine that plaintiff had failed to produce any material evidence to preclude entry of summary judgment. Based upon this standard, he properly rejected plaintiffs' argument that summary judgment was improper based upon Mr. Abreu's or others' purported credibility. Even as to the challenge of credibility, it was not based upon material facts that addressed the central issues or claims in dispute, but a series of irrelevant and immaterial

recollection of tangential events that is common to occur among witnesses after years have passed. Magistrate Judge Hegarty noted:

> Plaintiffs challenge matters such as how many times Mr. Weiss and Mr. Abreu actually met and where; the parties' various discussions about ADA lawsuits and the underlying lawsuit; how Defendants exchanged restaurant photographs; the details in Mr. Abreu's and Ms. Paloni's recollections of their visits to the restaurant and Colorado; and the differences between how Mr. Huff and Mr. Weiss described the Huff Defendants' participation in their ADA lawsuits.

(Doc. 163, p. 27 n. 4). He determined, "none of those inconsistences are sufficient to create a material issue of fact over whether Mr. Abreu was at the restaurant." *Id*. at p. 27.

As to the central issue, Huff & Leslie presented direct evidence that Mr. Abreu visited the restaurant through, *inter alia*, his deposition testimony and two affidavits, which then shifted the burden to plaintiffs.[4] Yet, in response, they failed to muster any material facts to create a genuine dispute to preclude summary judgment. Instead, as determined by Magistrate Judge Hegarty, plaintiffs only made a "conclusory denial of an asserted material fact" and failed to "explain the reason for the denial with an accompanying specific reference to the evidentiary record." *Id.* at p. 25 (citations omitted). "Plaintiffs no longer may rely on their allegations that call into question whether Mr. Abreu actually exists, and if so, whether he is disabled; whether he visited the Riverbend; whether he encountered barriers there." *Id.* at p. 30.[5]

---

[4] Despite this, the Objection still contends that Huff & Leslie "have failed to establish *prima facie* entitlement to summary judgment as a matter of law because, despite Santiago Abreu testifying that he visited the Riverbend restaurant, there is no evidence to support that assertion." (Doc. 169, p. 5). Plaintiffs fail to explain how Mr. Abreu's own testimony is insufficient to establish this fact and how it does not shift the burden to them for purposes of summary judgment. Nevertheless, his testimony was corroborated by the receipt from the restaurant and various photographs he took while there, as well as the testimony of both Mr. Weiss and Ms. Paloni who spoke to him about his visit at the restaurant.

[5] Plaintiffs relied on this Court's prior denial of Huff & Leslie's Motion to Dismiss, but clearly this was under a distinct standard of review than summary judgment. Magistrate Judge Hegarty recognized, "[t]he Court may revisit it on summary judgment and reach a different conclusion after development of a factual record." (Doc. 163, pp. 30).

Despite this, and further establishing the lack of any evidence, plaintiffs continue to rely on mere allegations in support of their Objection. They acknowledge the lack of evidence by again contending that "plaintiffs do challenge the *credibility* of Defendants and Mr. Abreu to support that Summary Judgment should be denied." (Doc. 169, p. 25) (emphasis added). They continue: "Plaintiffs are *alleging* that the litigant, Santiago Abreu, did not go to the Riverbend, did not experience barriers to access, and did not have standing to be the plaintiff in the Underlying Lawsuit. Instead, Defendants utilized Mr. Abreu as their 'straw man' because they could only bring an ADA/Title III suit on behalf of a disabled plaintiff." *Id*. (emphasis added). Plaintiffs have no evidence to support these accusations.[6]

Yet, despite over three years since filing this lawsuit and the opportunity to conduct a full panoply of discovery, they failed to produce any evidence to create a genuine issue of material fact that Mr. Abreu visited the restaurant. More precise to their allegations of wrongdoing directed to Huff & Leslie, they failed to produce any evidence that it and its attorneys actually knew that Mr. Abreu did not visit the restaurant yet nevertheless proceeded to file the underlying lawsuit based upon ulterior and improper motives. Indeed, plaintiffs concede this point, "none of the defendants could know, with certainty, if Mr. Abreu actually visited the Riverbend because none of the defendants accompanied Mr. Abreu to the Riverbend." *Id*. at p. 5.

---

[6] The Objection further states, "First, Plaintiffs have *alleged* that Defendants conspired together . . ."; "Second Plaintiffs *allege* Defendants' fabrication of evidence . . ."; and "Third, Plaintiffs *allege* the fabrication of the two affidavits signed by Mr. Abreu." (Doc. 169, pp. 22-23) (emphasis added). Also, plaintiffs seemingly acknowledge that they had the ability to perform an investigation through the restaurant's receipt records and by identifying who worked at the restaurant that particular day, but simply did not do so. (Doc. 169, p. 8). Despite this and other avenues, plaintiffs now argue "the only way for Plaintiffs to prove their claim is by showing inconsistencies amongst Defendants' testimony[.]" *Id.*

Improperly, the Objection groups all "defendants" together in plaintiffs' broad theory of wrongdoing rather than setting forth actual evidence as to each individual defendant's participation in the alleged scheme, "Defendants in this case conspired to sue 70 businesses in Colorado and nearly 300 businesses across the country in the name of Santiago Abreu, yet Santiago Abreu never went to the businesses that were sued." *Id*. at p. 21. Importantly, Huff & Leslie served as local counsel in 29 lawsuits filed only in Colorado and there is no evidence that they had any knowledge of or participated in the other alleged lawsuits. (Doc. 125, p. 14). In fact, there is no evidence that Huff & Leslie was aware of any scheme – let alone actively participated in a scheme to attempt to defraud plaintiffs or anyone else. The Recommendation confirmed, "the Court adds that Plaintiffs have no evidence that Mr. Abreu's other lawsuits were frivolous[.]" (Doc. 163, p. 32).

Plaintiffs rely on a series of foreign state court cases to support their argument as to the proper summary judgment standard (Doc. 169, pp. 3-4), including a Florida state court opinion, *Desvarieux v. Bridgestone Retail Operations, LLC*. 300 So. 3d 723, 727 (Fla. Dist. Ct. App. 2000). However, in *Desvarieux*, the court applied Florida civil rules of procedure and interpretive case law to opine that witnesses had conflicting versions of events to preclude summary judgment. *Id.* Here, there is no such conflict. Instead, as confirmed by the Recommendation, Huff & Leslie properly presented evidence to establish Mr. Abreu actually exists, he is disabled, he visited the restaurant, and he encountered barriers. Plaintiffs simply did not present any evidence to the contrary or that Huff & Leslie knew of facts to the contrary.

**B.  The Recommendation Correctly Determined that, as a Matter of Law, Litigation Conduct Is Not a Recognized Predicate Act Under RICO.**

To state a RICO claim, a plaintiff establish that the defendant violated 18 U.S.C. § 1962, by setting forth "four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). A pattern of racketeering activity must include commission of at least two predicate acts, which may include mail and wire fraud. *Resolution Trust Corp. v. Stone*, 998 F. 2d 1534, 1543 (10th Cir. 1993). "The type of fraud which serves as a RICO predicate act is not common law fraud." (Doc. 169, p. 29). "The gravamen of the offense is the scheme to defraud, and the two statutes cover any such communication that is incidental to an essential part of the scheme, even if the communication contained no false information itself." *Id.*

Courts around the country have consistently determined that allegations of "frivolous", "fraudulent", "meritless", or "fabricated" litigation do not constitute a RICO predicate act. *See Bixler v. Foster*, 596 F.3d 751, 758 (10th Cir. 2010) ("plaintiffs' abusive-litigation claim does not state a RICO predicate act"); *Eastern Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014) ("abusive or sham litigation does not constitute a RICO predicate act"); *see Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (concluding that "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act"); *Melton v. Blankenship*, No. 08-5346, 2009 WL 87472, *2 (6th Cir. Jan. 13, 2009) (efforts and filings by lawyers, even if overly zealous and malicious, cannot be considered RICO predicate acts); *Langan v. Smith*, 312 F. Supp. 3d 201, 207 (D. Mass. 2018) (litigation activities alleged as fraud do not constitute mail or wire fraud for a RICO claim); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087–

88 (11th Cir. 2004) (deciding that the "alleged conspiracy to extort money through the filing of malicious lawsuits" were not predicate acts of extortion or mail fraud under RICO); *Curtis & Assocs., P.C. v. Law Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 171 (E.D.N.Y. 2010) ("join[ing] a long line of cases in finding" that "litigation activities" such as filing "false affidavits" and "perjury" are insufficient to "form the basis for RICO predicate acts"); *Kashelkar v. Rubin & Rothman,* 97 F. Supp. 2d 383, 393 (S.D.N.Y 2000) ("soundly" rejecting "contention that" "legitimate conduct of attorneys representing their clients in pending litigation" can "constitute mail or wire fraud"); *Ippolito v. State of Fla.*, 824 F. Supp. 1562, 1575 (M.D. Fla. 1993)("[T]he initiation of a lawsuit cannot constitute a predicate act, even if that lawsuit is malicious."). [7]

The undisputed materials facts establish that Huff & Leslie's alleged conduct that forms the basis of the RICO claim took place in the context of the underlying lawsuit. As such, it does not form the necessary predicate act to maintain a violation of RICO as a matter of law. Notably, plaintiffs now seemingly concede this point, but argue that litigation as part of a larger scheme can support a RICO claim. (Doc. 169, p. 26).[8] In support of this assertion, plaintiffs improperly rely on newly cited legal authority not referred to in their Response to the Motion for Summary Judgment. *See Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir. 1996) ("issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived").[9]

---

[7] The U.S. Court of Appeals for the Tenth Circuit has also refused to "recogniz[e] abusive litigation as a form of extortion [because doing so] would subject almost any unsuccessful lawsuit into a colorable extortion (and often a RICO) claim." *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003).
[8] Plaintiffs also rely on the alleged involvement of Manny Noriega and George Merwin, however, it is undisputed that these are two individuals that Mr. Huff and Mr. Leslie did not meet or interact with.
[9] The Objection also newly references various deposition testimony. (Doc. 169, pp. 5-7, 24).

Nevertheless, plaintiffs' newly cited legal authority does not support their argument. Plaintiffs now cite *Saniefar v. Moore*, 1:17-cv-00823-LJO-BAM, 2017 WL 5972747, at *10 (E.D. Cal. Dec. 1, 2017) for the proposition that "sham ADA litigation" as a predicate act has been allowed to "move forward.". (Doc. 169, p. 17). However, in *Saniefar*, the plaintiffs filed a lawsuit asserting a RICO claim based on the filing of ADA lawsuits alleging falsities, namely, a frequent plaintiff was not disabled and the law firm misrepresented that the plaintiff actually visited the entities sued. *Id.* at *2. Yet, the court granted a motion to dismiss "[b]ecause the Complaint fails to allege predicate acts of fraud with the requisite particularity to survive a motion to dismiss at this stage." *Id.* at *11-12.

Plaintiffs also now rely on *Daddona v. Gaudio*, where a plaintiff alleged his former attorneys engaged in "acts of racketeering" in violation of the RICO. 156 F. Supp. 2d 153, 155 (D. Conn. 2000). However, the court determined that those "allegations at best amount to a vague abuse of process or malicious prosecution claim… Courts have found that allegations of malicious prosecution or abuse of process do not, on their own, suffice as predicate acts for a RICO violation." *Id.* at 162. "Those cases that have found that alleged mail and wire fraud violations arising out of malicious prosecution or abuse of process could be RICO predicate acts involved additional allegations of extortion or some other pattern of racketeering activity." *Id.* at 163. Therefore, the court granted a motion to dismiss. *Id.* at 165.

Plaintiffs further rely on *United States v. Eisen,* 974 F.2d 246 (2d Cir. 1992), where "the defendants were part of a law practice that brought fraudulent personal injury lawsuits and whose

conduct included bribing witnesses and creating false evidence." (Doc. 163, pp. 30).[10] "The Second Circuit affirmed the defendants' criminal RICO conviction following a jury trial." *Id.* at p. 30. The conduct described in *Eisen* is clearly distinguishable because the fraud was "much wider in scope." *Id.* The attorneys had gone "well beyond their capacities as legal representatives in conducting their fraudulent scheme" and it "was entirely external to, and independent of, any of the particular disputes between the litigants in the civil actions that were improperly filed and litigated." *Id.* (citing *Curtis & Assocs., P.C. v. Law Offs. Of David M. Bushman, Esq.,* 758 F. Supp. 2d 153,175-76 (E.D.N.Y. 2010)). *Eisen* is distinguishable because there was evidence presented at trial that the defendants engaged in mail fraud, including "pressuring accident witnesses to testify falsely, paying individuals to testify falsely that they had witnessed accidents, paying unfavorable witnesses not to testify, and creating false photographs, documents, and physical evidence of accidents for use before and during trial." *Eisen*, 974 F.2d at 251. In directly addressing *Eisen*, Magistrate Judge Hegarty recognized that while plaintiffs "allege a scheme of bringing multiple baseless lawsuits," "[p]laintiffs have no evidence that Mr. Abreu's other lawsuits were frivolous, in contrast to those cases, such as *Eisen*, in which there was direct evidence of how the law practice brought baseless lawsuits on the whole." (Doc. 163, pp. 31-32).

Although plaintiffs maintain in their Objection that the underlying lawsuit was part of a larger scheme, this is still not the type of predicate act recognized under RICO. In *Curtis & Assocs., P.C. v. Law Offs. Of David M. Bushman, Esq.,* the court determined that it was "unavailing plaintiffs' reliance on *Eisen* and reaffirms that plaintiffs' allegation based on defendants allegedly

---

[10] Plaintiffs cited this case in their Response to the Motions for Summary Judgment.

[16]                    Response to Objection to Recommendation
                                                Civil Action No. 1:19-cv-00328-TMT-MEH

'frivolous' and 'phony' litigation cannot, alone give rise to viable predicate acts of mail and wire fraud." 758 F. Supp. 2d 153, 176 (E.D.N.Y. 2010).[11] Magistrate Judge Hegarty also relied on *Ghandi v. Ehrlich* where "Plaintiffs' RICO claims are predicated on the novel theory that the frequent filing of ADA litigation is somehow illegal." No. 1:19-CV-03511-SDG, 2020 WL 5633416, at *6 (N.D. Ga. Sept. 21, 2020). In their Objection, plaintiffs attempt to distinguish *Ghandi* by arguing that that plaintiff stood on "the fact that there is a loophole in the law and defendant is using this loophole for his own benefit." *Id.* at *7. "Plaintiffs' claims center not on the filing of false or frivolous ADA lawsuits, but rather on filing so many (presumably) meritorious ones." *Id.*

However, this case is similar to *Ghandi* because the court determined, "Plaintiffs have not, and apparently cannot, identify a single fraudulent statement, filing, or activity by Defendants." *Id.* at *6. "[O]ther courts have found litigation activities insufficient to support federal RICO claims." *Id.* at *7. In addition, "other courts have held that '[i]n the absence of corruption,' such litigation activity 'cannot act as a predicate offense for a civil-RICO claim.'" *Id.* "They have not provided any authority, in this circuit or any other, that allows for such claims." *Id.* Based upon this, the court granted a motion to dismiss. *Id.*

As determined by Magistrate Judge Hegarty, "[t]here is no evidence of fraudulent activity that occurred 'entirely external to, and independent of,' the dispute over whether the Riverbend

---

[11] Plaintiffs also argue that since Huff & Leslie were not actual parties to the underlying lawsuits, the predicate act analysis does not apply to them. (Doc. 169, p. 25). This is unavailing. *See Curtis & Assocs., P.C.*, 758 F. Supp. 2d at 153; *see also Saniefar,* 2017 WL 5972747, at *10 ("*Noerr-Pennington Immunity* applies to petitioning conduct, which generally includes the conduct of parties to a lawsuit, but could include other non-parties as well. It would be completely illogical to construe the immunity doctrine to apply broadly to non-parties while construing the exception only to apply narrowly to parties.").

violated the ADA's public access requirements." (Doc. 163, pp. 32-33). "Instead, Plaintiffs' RICO theory is premised on that lawsuit itself." *Id.*[12] The Recommendation confirmed, "the Court adds that Plaintiffs have no evidence that Mr. Abreu's other lawsuits were frivolous[.]" (Doc. 163, p. 32). Despite this, the Objection continues to espouse the belief of a broad conspiracy involving over 300 lawsuits in multiple states and including several individuals (many of whom are not parties to this case). Yet, plaintiffs cite to no actual evidence to support their belief.[13]

More specifically, there is no evidence directed at Huff & Leslie, who acted as local counsel in Colorado as to only a fraction of the lawsuits, that they were somehow a part of a broader scheme to file lawsuits across the country while knowing that Mr. Abreu had not actually visited any of these locations in different states. Plaintiffs notably raise innuendo that many of the defendants, as well as Mr. Abreu, Mr. Noreiga, and Mr. Merwin all knew each other from Florida and were close acquaintances. (Doc. 169, p. 7). However, this merely demonstrates that Huff & Leslie, a small law firm in Colorado with two attorneys who live and work in Colorado, did not have this history or commonality with them. Indeed, it is undisputed that Mr. Huff met Ms. Paloni once and does not recall ever meeting Mr. Noriega or Mr. Merwin. Mr. Leslie did not meet with any of these individuals. As determined by Magistrate Judge Hegarty, plaintiffs have failed to produce any evidence of a broader scheme to support their RICO claim and to otherwise defeat summary judgment.

---

[12] Consequently, a RICO conspiracy claim must also fail. *See BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) ("A conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit").
[13] Plaintiffs merely attach a single photograph from a purported location in Florida to their Objection. (Doc. 169-1). However, they do not translate it to any proof of wrongdoing by Huff & Leslie.

[18]                                                                 Response to Objection to Recommendation
                                                                       Civil Action No. 1:19-cv-00328-TMT-MEH

## V. CONCLUSION

For the foregoing reasons, Defendants Huff & Leslie, Brett Huff, and Richard Leslie respectfully request that the Objection to Magistrate Judge Hegarty's Recommendation be overruled and that this Court adopt the Recommendation as it pertains to summary judgment of the RICO claims.

DATED this the 21st day of April, 2022.

Respectfully submitted,

*/s/ Franz Hardy*
Franz Hardy, Esq.
Stephanie S. Brizel, Esq.
GORDON REES SCULLY MANSUKHANI, LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Telephone: (303) 534-5160
fhardy@grsm.com
sbrizel@grsm.com
*Attorneys for Defendants Brett Huff,
Richard Leslie, and Huff and Leslie, LLP*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system which will send notification to all counsel of record on this the 21st day of April, 2022.

Courtenay Patterson, Esq.
LAW OFFICES OF COURTENAY PATTERSON
1716 N. Main Street, Suite A #331
Longmont, Colorado 80501
courtenay.patterson@gmail.com

Joel Rothman
SRIPLAW
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
joel.rothman@sriplaw.com

George Blackmore, Esq.
BLACKMORE LAW PLC
1129 West 14 Mile Rd. #1006
Clawson, MI 48017
george@blackmore.law

/s/ Franz Hardy
Franz Hardy, Esq.
Stephanie S. Brizel, Esq.
GORDON REES SCULLY MANSUKHANI, LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Telephone: (303) 534-5160
fhardy@grsm.com
sbrizel@grsm.com
*Attorneys for Defendants Brett Huff,
Richard Leslie, and Huff and Leslie, LLP*