UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

CASE NO.: 1:19-cv-00328-RPM

MICHAEL ABBONDANZA and TAVIN
FOODS, INC.,

    Plaintiffs,

v.

JASON WEISS, WEISS LAW GROUP,
P.A., BRETT HUFF, RICHARD LESLIE,
HUFF AND LESLIE, LLP, PETER
LEINER, and GIOVANIA PALONI,

    Defendants.

___

**DEFENDANTS WEISS LAW GROUP, P.A., JASON WEISS AND PETER LEINER'S, RENEWED MOTION FOR FED. R. CIV. P. RULE 11 AND 28 U.S.C. § 1927 SANCTIONS**

___

Defendants, Weiss Law Group, P.A. and Jason Weiss (together "Weiss") and Peter Leiner ("Leiner"), by and through undersigned counsel, hereby file this Motion for Sanctions and Attorneys' Fees against plaintiffs, Michael Abbondanza ("Abbondanza") and Tavin Foods, Inc. ("Tavin") and their legal counsel, Courtenay Patterson ("Patterson"), and state as follows:

I.    **Introduction**

The Magistrate Judge issued his report and recommendation granting defendants' motions for summary judgment on March 24, 2022. [D.E. 164]. The Circuit Court of Appeals Judge, sitting as a District Court Judge, overruled defendants' objections to the report and recommendation on December 5, 2022. [D.E. 173].

This case arises out of an underlying action filed by Santiago Abreu ("Abreu"), by

and through his attorneys Huff & Leslie, LLP and Weiss, against Tavin, Case Number 16-cv-432 MEH, alleging that Abreu encountered barriers to access in violation of the Americans with Disability Act ("ADA") at the Riverbend Market and Eatery ("Premises"). Abbondanza filed this action, represented by Patterson, claiming that Weiss, Leiner and their co-defendants to this case violated the Racketeer Influenced Corrupt Organizations Act ("RICO") and other statutes, in connection with the filing of the ADA claim against Tavin and others in this district.

The case was predicated on several false claims by Abbondanza and Patterson. One was that Abreu was fictional and did not exist. Another was that Abreu did not visit the Premises. Another was that the Premises were not non-compliant with the ADA. All those claims were demonstrated to be false; Abreu does exist, is disabled, encountered the barriers to access detailed in the underlying complaint, and those barriers violated the ADA.

Abbondanza and his counsel received a draft of this motion and failed to dismiss this case as required by Fed. R. Civ. P. Rule 11. The Court previously denied the Rule 11 and § 1927 motion as premature. [D.E. 41]. Now that the case has been dismissed, the motion is ripe for determination.

## II.     Factual Background

1.     On February 23, 2016, Santiago Abreu filed a Complaint, by and through his attorneys Huff & Leslie, LLP against Tavin, Case Number 16-cv-432 MEH alleging that Abreu encountered barriers to access in violation of the Americans with Disability Act at the Riverbend Market and Eatery ("Premises").  *See* Underlying Action [D.E. 1].

2. On December 30, 2016, Tavin, through Patterson, filed its Expert Witness Disclosure and a copy of the Expert Witness' Report, *see* Underlying Action [D.E. 50], wherein it was admitted that at least four (4) of the alleged violations were present at the Premises.

3. On February 3, 2017, Abreu, through counsel, Weiss Law Group, P.A., filed a Motion for Summary Judgment on four (4) admitted violations and attached an affidavit of Mr. Abreu stating he was present at the Premises and encountered barriers ("First Abreu Affidavit"). See Underlying Action [D.E. 50 and D.E. 50-1]. Tavin filed no opposition in response to the Motion for Summary Judgment in the Underlying Action.

4. On February 9, 2017, Jason Weiss (one of the attorneys for Abreu) spoke with Patterson via telephone. During the telephone call, Patterson, as an officer of the Court, represented to Jason Weiss ("Weiss") that the four (4) undisputed violations had been eliminated. Weiss, taking an officer of the Court at her word, informed Patterson that based upon her representations, the Underlying Action was moot and that the parties should dismiss the Underlying Action via a Joint Stipulation of Dismiss with each side bearing its/his own fees and costs.

5. On or about February 10, 2017, the parties filed a Joint Stipulation of Dismissal with Prejudice (see Underlying Action [D.E. 51]) and the Court Dismissed the Underlying Action with Prejudice on February 13, 2017. See Underlying Action [D.E. 52].

6. On February 7, 2019, Abbondanza, through Patterson, filed the instant action and on February 28, 2019, Abbondanza, through Patterson, filed an Amended Complaint adding Tavin as a plaintiff ("Action").

7. The Complaint and the Amended Complaint allege six (6) causes of action in the form of RICO, Conspiracy to Violate RICO, Colorado Organized Crime Control Act, Abuse of Process, Conspiracy and Fraud against Weiss Law Group, PC[1], Weiss and Peter Leiner; Brett Huff, Richard Leslie and Huff and Leslie, LLP ("Huff Defendants"); and Giovania Paloni ("Paloni"). Motions to Dismiss filed on behalf of Defendants and Huff Defendants are currently fully briefed and docketed. As to Paloni, Plaintiffs have yet to have a summons issued or have her served.

8. As part of both the Complaint and the Amended Complaint in the Action, Plaintiffs and Patterson attached Abreu's Motion for Summary Judgment from the Underlying Action, but failed to attach Abreu's First Affidavit that was attached to the Motion for Summary Judgment wherein he, the real person signing the affidavit in the presence of a Notary, stated he was present at the Premises. See Underlying Action [D.E. 50 and D.E. 50-1].

9. On July 24, 2019, counsel for Defendants, Weiss and Leiner (collectively "Defendants") conducted a telephone conference with Plaintiffs' counsel, Patterson, who was advised that:

   a. Weiss had obtained and intended to file the affidavit of an attorney and notary public regarding and which contained the affidavit of Santiago Abreu, together with his photograph and photograph of his government identification.

   b. Defendants wished to deliver the affidavits of Mr. Abreu and the attorney to Plaintiffs and the Court in opposition to Plaintiffs' claims that

---

[1] Weiss Law Group, P.A. is improperly named as both "Weiss Law Group, PC" and Weiss Law Group, P.A. in both the Complaint and the Amended Complaint.

      Mr. Abreu did not exist and making his address and personal, confidential information available to Plaintiffs' counsel for her opportunity to conduct independent verification of same.

    c.  Defendants requested a protective order of the confidential information (including Mr. Abreu's address, social security number, date of birth and Florida identification card number) to be considered "Attorneys' Eyes Only" pending further order of the Court, with redacted copies filed in the pleadings.  Defendants counsel advised that he and his clients believed that it was reasonable to protect the privacy rights of the person formerly alleged not to exist from the media and otherwise without restricting Plaintiffs' counsel's access to the data for representation of her clients.

    10.    Plaintiffs' counsel advised Defendants' counsel that Plaintiffs had not yet determined what their response would be.  However, both Plaintiffs and Patterson made statements to the press after the receipt of this information (in another attempt to try this case in the media).

    11.    On July 24, 2019, Defendants' counsel filed the Motion for a Protective Order that attached the affidavit of John F. Bradley with redacted Exhibits ("Bradley Affidavit").  [D.E. 24]  On August 7, 2019, Plaintiffs filed an objection to the Protective Order stating that the redacted information should not be "Attorneys Eyes Only" and that Plaintiffs should be allowed to see the non-redacted information about Mr. Abreu.  [D.E. 28]

12. On August 8, 2019, this Court denied the Motion for Protective Order, but stated that "The Court will reconsider issuing a Protective Order if the one submitted complies with the one contained in this Court's Pretrial and Trial Procedures Memorandum - Civil (Revised Jan. 2019) found at http://www.cod.uscourts.gov/JudicialOfficers/SeniorArticleIIIJudges/HonJohnLKane.aspx and with the provisions of Fed. R. Civ. P. 5.2".  [D.E. 29]

13. On September 18, 2019 Defendants submitted a Stipulated Motion for a Protective Order [D.E. 33] and the Court entered said Protective Order on September 19, 2019.  [D.E. 34]

14. On September 19, 2019, pursuant to the September 19, 2019 Protective Order ("Protective Order") counsel for Defendants provided counsel for Plaintiffs and counsel for Huff Defendants the complete Bradley Affidavit with the complete, unredacted Exhibits and information for Mr. Abreu.

15. Mr. John F. Bradley ("Bradley") is an officer of the Court and his affidavit provides, under oath, that:

    a. On June 26, 2019, he traveled to West Palm Beach, Florida and met a gentleman in a mobility device who identified himself as Santiago Abreu;

    b. Mr. Abreu was asked to produce government issued identification for Mr. Bradley to review in order to notarize an affidavit for Mr. Abreu, which he did immediately;

    c. Mr. Bradley took photographs of Mr. Abreu's State of Florida Identification Card referencing his full legal name of Santiago Donalito

    Abreu, Jr. and bearing a hologram and the address where he met Mr. Abreu;

  d. Mr. Bradley attached true copies of all of those photographs to his affidavit as Exhibit 2;

  e. In Mr. Bradley's presence, Mr. Abreu read his affidavit (attached to the Bradley Affidavit as Exhibit 3) and executed same, following which Mr. Bradley signed same and affixed his notary seal thereto.

*See* Bradley Affidavit with a redacted Florida Identification card for Santiago Abreu, redacted photographs of Santiago Abreu and a redacted notarized affidavit of Santiago Abreu, all attached hereto as Composite Exhibit "A."[2]

  16.  A copy of this Motion for Sanctions ("Motion") and the required Safe Harbor Letter (attached hereto as Exhibit "C"), was sent to counsel for Plaintiffs on September 23, 2019 via email at courtenay.patterson@gmail.com and via Federal Express to Courtenay Patterson, Law Offices of Courtenay Patterson 1716 N. Main St., Suite A #331 Longmont, CO 80501.[3]

  17.  Plaintiffs failed to dismiss the Amended Complaint within the allotted twenty-one (21) day safe harbor period provided for by Rule 11.

---

[2] Undersigned counsel turned over the Bradley Affidavit with the complete, non-redacted Exhibits to counsel for Plaintiffs on September 19, 2019, prior to serving Plaintiff's counsel with this Motion. Due to the sensitivity of Mr. Abreu's personal information, only the redacted versions of these Exhibits, which are already part of the record of this Action, have been filed with the Court with this Motion. However, Plaintiffs and their counsel are in possession of the complete, unredacted information about Mr. Abreu that show he is a real person and makes this Action improper.

[3] The only difference in content between the motion that was served on Plaintiffs' counsel on September 23, 2019 via email and Federal Express and the instant Motion that has been filed is the inclusion of this footnote; the September 23, 2019 Safe Harbor Letter is attached hereto as Exhibit C; the certificate of conferral pursuant to Local Rule 7.1 is included; undersigned counsel's Fla. Bar No. has been added to his signature block; and the date that this Motion was filed with the Court, as opposed to just being served on Plaintiffs and their counsel, has been included in the Certificate of Service.

### III. Fed. R. Civ. P. 11 Standard and Basis for Sanctions

#### A. Standards

In deciding whether to impose Rule 11 sanctions, a district court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe the merit of an argument. *See White v. General Motors Corp.,* 908 F.2d 675, 680 (10th Cir. 1990) (holding that this circuit has adopted the view that an attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions); *see also Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir.1988). A good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances. *Id.* In addition, it is not sufficient for an offending attorney to allege that a competent attorney could have made a colorable claim based on the facts and law at issue; the offending attorney must actually present a colorable claim. *Id. citing to Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1470 (2d Cir.1988) (focus on whether an objectively reasonable basis for claim "was demonstrated"), *rev'd in part on other grounds,* 493 U.S. 120, 110 (1989). Thus, Plaintiffs may not shield their own incompetence by arguing that, while they failed to make a colorable argument, a competent attorney would have done so. *Id. quoting Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 482 (3d Cir.1987) (Rule 11 intended to prevent abuses arising from bad faith, negligence, and to some extent, professional incompetence).

Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management.

*See White,* 908 F.2d 675; *see also American Bar Association, Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure (1988)*, *reprinted in,* 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* 212, 235–36 (Supp.1989).  Deterrence is, however, the primary goal of the sanctions. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990) ("It is now clear that the central purpose of Rule 11 is to deter baseless filings in District Court and thus, ... streamline the administration and procedure of the federal courts").

As this Court and Plaintiffs' counsel are undoubtedly aware, when an attorney files a pleading, written motion, or other paper, the attorney signs it to certify that, among other things, (1) the pleading is not being presented for an improper purpose; (2) the legal contentions are warranted by existing law or a nonfrivolous argument to change existing law; and (3) the factual contentions have evidentiary support or will likely have evidentiary support after discovery. Fed. R. Civ. P. 11(b).  Rule 11 requires litigants to reasonably inquire into the law and facts before making legal and factual contentions in a pleading, motion or other paper; ***it emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention***. *See* Advisory Committee Notes to Rule 11, 1993.

### B. The Bradley Affidavit

This Motion included the Bradley Affidavit with Exhibits.  *See* Bradley Affidavit attached hereto as Exhibit "A."  Bradley stated in the Bradley Affidavit that he personally met Mr. Abreu at the end of June 2019 at an address listed on a State of Florida issued

identification and had him sign an affidavit in Bradley's presence. The Bradley Affidavit clearly shows that Mr. Abreu is a real person.

### C. Plaintiffs' Failed Pretrial Investigation

Plaintiffs and Plaintiffs' counsel's failure to investigate the facts of the claim before filing the Complaint and then the Amended Complaint is sanctionable. *Hilton Hotels Corp. v. Banov,* 899 F.2d 40, 41–44 (D.C.Cir.1990). The standard by which courts evaluate the conduct of litigation is objective reasonableness - whether a reasonable attorney admitted to practice before the district court would file such a document. *Adamson v. Bowen*, 855 F.2d 668 (10th Cir. 1988); *see also Burkhart v. Kinsley Bank,* 804 F.2d 588, 589–90 & n. 3 (10th Cir.1986). If "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law ...," *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), then such conduct is sanctionable under Rule 11. *Adamson*, 855 F.2d 668; *see also Burkhart,* 804 F.2d at 589–90 & n. 3. The attorney must "stop, look, and listen" before signing a document subject to Rule 11. *Id., see also Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 157 (3d Cir.1987).

Part of a reasonable attorney's prefiling investigation must include determining whether any obvious affirmative defenses bar the case. *Schwarzer, Rule 11 Revisited,* 101 Harv.L.Rev. 1013, 1023–24 (1988). An attorney need not forbear to file her action if she has a colorable argument as to why an otherwise applicable affirmative defense is inapplicable in a given situation. However, the attorney's argument must be nonfrivolous, otherwise she runs the risk of sanctions if her only response to an affirmative defense is unreasonable. *See Id.* (if failure to make prefiling investigation is

sanctionable so too is failure to disclose adverse results of investigation). There does not need to be a finding of bad faith to impose sanctions under Rule 11, rather the investigation is into whether a reasonable inquiry has been conducted prior to the filing of papers with the court. As amended in 1993, the Rule provides that these certifications are not limited to information in the possession of a party and its counsel at the time they submit the certified document. **Instead, Rule 11 now also imposes a continuing "duty of candor by subjecting litigants to potential sanctions for insisting on a position after it is no longer tenable, . . . or. . . advocating positions contained in those pleadings. . . after learning that they cease to have any merit."** Advisory Committee Note to 1993 Amendments to Rule 11; *Phonometrics, Inc. v. Economy Inns of America,* 349 F.3d 1356, 1362-1363 (Fed. Cir. 2003). **Based on the Bradley Affidavit, as well as the First Abreu Affidavit (attached hereto as Exhibit "B"), this Action was no longer tenable, Plaintiffs' claims lacked merit and Plaintiffs could not advance their baseless position that Mr. Abreu was not real.**

### D. Claim Debunked: Santiago Abreu is a Living Person

The Bradley Affidavit with the included Affidavit of Santiago Abreu go deeper. Taken together with the First Abreu Affidavit, admissions of Tavin's violations and Joint Stipulation for Dismissal of the Underlying Action make it clear that Plaintiffs had no good faith basis upon which to assert any of the claims against Defendants.

Plaintiffs did not allege, and had no basis to assert, that Defendants and the other named defendants were involved in some conspiracy and knew that the First Abreu Affidavit was false or that Mr. Abreu was not at the Premises. Worse yet, Plaintiffs' counsel intentionally removed the First Abreu Affidavit from the Motion for

Summary Judgment from the Underlying Action in an apparent attempt to mislead the Court and the press as to these false and baseless assertions. This is an affirmative action taken by Plaintiffs and Patterson intending to mislead the Court and done so without any factual basis.

Although Plaintiffs and Patterson "carefully" couched their allegations as "Plaintiffs are informed and believe", tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties, make claims, or present defenses without any factual basis or justification. *See* Advisory Committee Note to 1993 Amendments to Rule 11. A complaint cannot be based merely on a plaintiff's beliefs and suspicions, as is in the case at hand. *Zuk v. Eastern Pennsylvania Psychiatric Inst. of the Med. Coll. of Pennsylvania,* 103 F.3d 294, 299 (3d Cir. 1996). Plaintiffs can speculate all they want about the facts of the Underlying Case, but they did not take action on their unsupported beliefs in the Underlying Case and cannot now, all of a sudden, make unsupported blanket accusations. Not being able to find Google Images of Mr. Abreu in a wheelchair is not a basis to say that he does not exist, especially now that Plaintiffs (and their counsel) have the Bradley Affidavit. To state that Defendants and the other named defendants in this Action knew that Mr. Abreu was not at the Premises without any proof to support such statement is improper and done for the mere purpose of harassing Mr. Abreu and Defendants and wasting this Court's time.

The facts of this instant lawsuit resemble those of *White, supra.*, in that in *White*

the plaintiffs refused to dismiss the cause of action when confronted with an affidavit of a Westlake employee that she made no inquiry of GM, <u>and plaintiffs had no evidence to contradict her affidavit</u>. Here, in the Underlying Action [D.E. 50, 50-1], the First Abreu Affidavit, which Plaintiff intentionally left out of the pleadings in the instant Action even though the Motion for Summary Judgment that it was attached to was attached to both the Complaint and the Amended Complaint, negates the entire Action. This First Abreu Affidavit was proof at the time of filing that Mr. Abreu is a real person (and is further supported by the Bradley Affidavit).

### E. Claim Debunked: No Action Against Santiago Abreu

Tavin previously settled its claims with Mr. Abreu. *See* Underlying Action [D.E. 51 and 52] Any claims Plaintiffs may have wished to assert against Mr. Abreu (including those suggested in this litigation) would have been compulsory counterclaims in the Underlying Action. Plaintiffs asserted no such claims. Any such claims are barred based on the parties' Stipulation for Dismissal with Prejudice and *res judicata*. Despite their apparent desire to do so, Plaintiffs are not entitled to another bite at the apple with Santiago Abreu, indirectly, in this Action. Obviously, that is why Santiago Abreu has not been named by Plaintiffs in this Action. Thus, the facts and details related to Mr. Abreu's claim, including Plaintiffs unsupported claim that Mr. Abreu did not visit the establishment, are not the inquiry here absent some sort of proof that Defendants created and perpetrated some kind of a fraudulent scheme.

### F. Claim Debunked: No Proof of Fraud by Defendants.

Plaintiffs have provided no evidence contradicting the undisputed fact that Santiago Abreu represented to Weiss that he had visited the Premises. The Complaint

in the Underlying Action, filed by Huff & Leslie, established the foregoing. The Motion for Summary Judgment filed by Weiss in the Underlying Action established the foregoing. The First Abreu Affidavit established the foregoing. The Affidavit of Abreu attached to the Bradley Affidavit established the foregoing. It is unmistakably clear that Santiago Abreu had represented to Weiss that he had in fact visited the Premises and experienced discrimination.

In this case, Plaintiffs took Abreu's deposition. Abreu testified consistent with his Affidavits. There never was any basis to doubt Abreu. Plaintiffs' allegations were speculative and fantastic. Plaintiffs' Amended Complaint made unsupported allegations that were debunked in discovery. Plaintiffs never had any proof to make their allegations that (1) the two (2) affidavits of Mr. Abreu (collectively "Affidavits") are false about visiting the Premises; (2) Weiss or the other defendants knew of any alleged falsity; or (3) Weiss and others created and perpetrated some fraud based on some alleged false information.

None of the expense incurred by the defendants to defend this case was necessary. Plaintiffs never had any proof of falsity, that Defendants had knowledge of any such alleged falsity, or that any scheme was perpetrated on Plaintiffs. There was never any evidence from Plaintiffs or their counsel contradicting the Affidavits and exhibits presented to them with the original motion. There was no evidence to contradict the two (2) Affidavits of Mr. Abreu wherein he stated that he was present at the Premises. Plaintiffs never had any basis or evidence for their statements but pursued this case anyway even though whether or not Abreu was at the Premises should have been dealt with in the Underlying Action.

### IV. Sanctions Should Be Awarded

#### A. Sanctions Should be Awarded under Rule 11

Sanctions are appropriate because there was no plausible basis in law or fact for the filing of the Action. Although Defendants' counsel sent the required safe harbor correspondence with a Motion for Sanctions to Plaintiffs' counsel, Plaintiffs and their counsel did not dismiss the Amended Complaint.  Accordingly, sanctions should be imposed against Plaintiffs because, despite having actual notice that the instant lawsuit is *not tenable,* Plaintiffs and their counsel failed to withdraw the claim.  Plaintiffs and their counsel violated Rule 11 by continuing to pursue the frivolous claims after knowledge that the claims had no reasonable factual or legal basis. Under these circumstances, sanctions in the form of reasonable attorneys' fees and costs are warranted against both Plaintiffs and their legal counsel under Rule 11 and the Court's inherent authority.

#### B. Sanctions Should be Awarded under 28 U.S.C. § 1927

Another basis for imposition of sanctions is 28 U.S.C. § 1927. Under that section, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Sanctions under § 1927 are appropriate when an attorney acts recklessly or with indifference to the law." *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006) (internal quotation marks omitted).

An "attorney's actions are considered vexatious and unreasonable under § 1927 if the attorney acted in bad faith." *Dreiling v. Peugeot Motors of Am., Inc.*, 768 F.2d

1159, 1165 (10th Cir. 1985). cf. *Steinert,* 440 F.3d at 1221 (listing, as an example of sanctionable conduct under § 1927, instances when attorneys are "cavalier or bent on misleading the court"). *Baca v. Berry,* 806 F.3d 1262, 1273 (10th Cir. 2015). In addition, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.*, the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1239 (11th Cir. 2007) (internal citation omitted)**.**

For purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the objective conduct of attorneys who manifested "intentional or reckless disregard of [their] duties to the court." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008); *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278 (10th Cir. 2005); *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987).

The term "vexatiously" similarly requires an **objective** evaluation of the attorney's objective conduct. See *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205 (10th Cir. 2008). Under this objective standard, claims of good faith by the attorney are foreclosed. *Roth v. Spruell,* 388 F. App'x 830, 835-36 (10th Cir. 2010).

Judged objectively, Patterson's conduct manifested intentional or reckless disregard of the attorney's duties to the court, and is therefore sanctionable. Ms. Patterson knew at the very latest upon receiving the two affidavits of Santiago Abreu that he was a live, real, actual person and not a fiction, and that the attorneys for defendants presented Abreu as a plaintiff in the Underlying Action for the proper purpose of vindicating his rights under the ADA. Paterson's litigation conduct became vexatious, multiplied the proceedings unnecessarily, and was sanctionable as of the

time that she admitted in open court on February 11, 2021 that Santiago Abreu was real. The case should have ended there and then. Ms. Patterson's insistence on prosecuting it further was vexatious, multiplied the proceedings unnecessarily, and violated § 1927.

V.   **Attorneys' Fees Incurred and Awardable**

"A reasonable fee is the product of a reasonable rate in the relevant community multiplied by the number of hours reasonably spent on the litigation." *Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006), citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Guardian Life Ins. Co. of Am. v. Wilds*, Civil Action No. 12-cv-01215-WYD-KLM, 2014 U.S. Dist. LEXIS 147652, at *21 (D. Colo. Aug. 12, 2014). In analyzing the hourly rate, the court is to refer "to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). To determine the appropriate number of hours expended, reasonableness is also the standard. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In determining reasonable attorneys' fees, the goal "is to do rough justice, not to achieve auditing perfection." *Fox. v. Vice*, 563 U.S. 826, 838 (2011).

In support of the motion, Weiss submits the declaration of Joel B. Rothman, counsel for Weiss. Courts in this Circuit have recognized, sworn testimony supporting billing records are sufficient to support a request for fees. *See Fatpipe Networks India Ltd. v. XRoads Networks, Inc.*, No. 2:09 cv 00186 TC DN, 2012 U.S. Dist. LEXIS 30887, at *3 (D. Utah Mar. 6, 2012), quoting *Norman v. Hous. Auth.*, 836 F. 2d 1292, 1303 (10th Cir. 1988) ("It is perfectly proper to award attorney's fees based solely on affidavits in the record.").

A reasonable hourly rate is considered the prevailing market rate in the relevant legal community for similar services provided by lawyers of "reasonably comparable skills, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 892 n.5 (1984). Courts generally look to the experience and reputation of similarly situated lawyers within the community. *Id.* In order to arrive at the amount of the award, the Court multiplies the number of hours spent on the litigation by the reasonable hourly rate. *Hensley*, 461 U.S. at 433. This approach, known as the lodestar approach, "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* While the starting point in fashioning an award of attorneys' fees is to multiply the number of hours reasonably expended by the reasonable hourly rate, the product may then be adjusted based upon other considerations which include the results obtained and the quality of representation. *Norman*, 836 F.2d at 1301.

Many courts, including the Tenth Circuit, consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), in determining attorney's fees. *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 861 F.3d 1182, 1185-86 (10th Cir. 2017). The Johnson factors include: (1) the time and labor required in the case; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12)

awards in similar cases. 488 F.2d at 718-719.

Examining the most relevant *Johnson* factors, the reasonableness of the attorneys' hourly rates and the reasonableness of the overall amount of the fees sought is supported here. As to *Johnson* factor 1, my declaration and the supporting documents provide the detail for the time required in this case. This case was handled very efficiently, considering the fact that it progressed through significant motion practice. Defendants sought only the discovery that was essential to properly defend the action to keep hours low and avoided motion practice that did not advance the case towards resolution in its favor. Such targeted activity and efficiency is due in large part to counsel's skillful expertise in this area of the law, which reduced the number of total hours required and argues for the higher end at the hourly rate schedule.

As to the second and third *Johnson* factor, the action was a RICO racketeering case requiring highly specialized counsel. Weiss selected the undersigned as a result of specific experience in litigating these types of matters and in defending attorneys. *Johnson* factor 5 is addressed thoroughly in declarations filed herewith. *Johnson* factor 8 weighs in favor of a finding the requested fees are reasonable, as Weiss was successful in obtaining dismissal on summary judgment. *Johnson* factor 9 supports the hourly rate of counsel here at $495 per hour.

Weiss seeks an award of attorneys' fees totaling $94,367.00.

**VI.    Conclusion**

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, and 28 U.S.C. §1927, Defendants are entitled to an award of their attorneys' fees and costs incurred in drafting of this Motion for Sanctions and the defense of this Action.

WHEREFORE, Defendants respectfully request that the Court enter an Order Granting Defendants' Motion for Sanctions and awarding Defendants their attorneys' fees and costs incurred in the drafting of this Motion for Sanctions, the defense of this Action and granting any other relief the Court deems just and proper.

Dated:  December 19, 2022            Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
joel.rothman@sriplaw.com

**SRIPLAW**
21301 Powerline Road
Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Defendants Jason Weiss, Peter Leiner and Weiss Law Group, PC*