IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00328-TMT-MEH

MICHAEL ABBONDANZA and
TAVIN FOODS, INC.,

    Plaintiffs,

v.

JASON WEISS,
PETER LEINER,
WEISS LAW GROUP, PC,
BRETT HUFF,
RICHARD LESLIE,
HUFF & LESLIE, LLP, and
GIOVANNIA PALONI,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court are the Defendants' respective motions for sanctions (collectively, "Motions"). The first is the "Motion for Attorneys' Fees" filed by Defendants Brett Huff, Richard Leslie, and Huff & Leslie, LLP. ECF 177. The second is "Defendants Weiss Law Group, P.A., Jason Weiss and Peter Leiner's Renewed Motion for Fed. R. Civ. P. Rule 11 and 28 U.S.C. § 1927 Sanctions." ECF 179. For the following reasons and based on the submitted record, I respectfully recommend that the Motions be denied.

## BACKGROUND

A short history of this case is appropriate. In Civil Action No. 16-cv-00432-MEH, Santiago Abreu sued Plaintiff Tavin Foods, Inc. for ADA violations. The Defendants (other than Ms. Paloni,

who was Mr. Abreu's ADA expert in his cases) represented Mr. Abreu in that lawsuit. The basic allegations were that Mr. Abreu, who lives in Florida, drove to Colorado and, among other places, visited the Riverbend Market & Eatery in Bailey, Colorado (owned by Tavid Foods, Inc.) and encountered unlawful obstacles to his access (he is disabled). By my count, this was one of seventy such lawsuits filed in the District of Colorado by Mr. Abreu, apparently arising out of his single trip to Colorado (Plaintiffs represent that Mr. Abreu has filed more than 300 such lawsuits nationwide; my own research on PACER showed between 200-300). The lawsuit was dismissed by stipulation of the parties, less than a year after filing. As former presiding judicial officer Judge John L. Kane noted in his Order of October 23, 2019:

> The case was abruptly settled shortly after Plaintiffs attempted to depose Mr. Abreu, no employees at Plaintiffs' restaurant remembered seeing a man in a wheelchair on July 14, 2015, and there was no evidence disclosed in the underlying suit confirming that Mr. Abreu existed, let alone that he came to Colorado or visited Plaintiffs' restaurant.

ECF 41, at 4. Regarding the attempted deposition of Mr. Abreu, Plaintiffs represent that at the time they sought his deposition, he had never been deposed in his hundreds of lawsuits.

This civil action followed two years later. It alleged six claims against the Defendants: (1) Racketeer Influenced and Corrupt Practices Act (RICO), (2) conspiracy to violate RICO, (3) Colorado Organized Crime Control Act, (4) abuse of process, (5) civil conspiracy, and (6) fraud. The premise of this lawsuit was that Defendants have operated as a conspiracy to file baseless ADA access lawsuits (colloquially "tester cases") against small businesses for the purpose of obtaining quick settlements. Judge Kane denied a motion to dismiss and a motion by Defendants Weiss Law Group, P.A., Jason Weiss, and Peter Leiner for sanctions. ECF 41. The case proceeded into discovery, during which evidence was produced supporting some of the underlying allegations in the 2016 lawsuit (including Mr. Abreu's existence and his visiting the restaurant and encountering several ADA violations).

2

On March 24, 2022, I recommended that Defendants' motions for summary judgment be granted, because Plaintiffs' only response to the evidence supporting the 2016 case (and thus refuting their claims) was to challenge Mr. Abreu's credibility. Circuit Judge Timothy Tymkovich, acting as the presiding judicial officer by designation, adopted the Recommendation. ECF 173. Judgment for the Defendants followed. ECF 174.

Defendants contend in the current Motions that once confronted with credible evidence (including the actual deposition of Mr. Abreu) supporting his original allegations, Plaintiffs should have dismissed this lawsuit, and their refusal to do so merits sanctions. The Huff Defendants seek fees under Section 1927 and the Court's inherent authority. The Weiss/Leiner Defendants seek fees under Section 1927 and Fed. R. Civ. P. 11.

## **LEGAL AUTHORITY**

Pursuant to 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 sanctions may be appropriate when an attorney's conduct "imposes unreasonable and unwarranted burdens on the court and opposing parties." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (en banc). "An attorney becomes subject to § 1927 sanctions by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law." *Id*. at 1511 (internal quotation marks omitted). Section 1927 applies only to the *multiplication* of proceedings; therefore, it does not authorize sanctions for the *initiation* of proceedings. *See Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224-25 (10th Cir. 2006). In determining whether to sanction under this statute, the Court does not consider an attorney's subjective motivations, but rather looks to "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the

3

court." *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015) (brackets and internal quotation marks omitted); *see also Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1203 (10th Cir. 2008) ("Where, 'pure heart' notwithstanding, an attorney's momentarily 'empty head' results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible."). To avoid sanctions, attorneys must exercise judgment, *see Hamilton*, 519 F.3d at 1202; *Braley*, 832 F.2d at 1512, and "regularly re-evaluate the merits" of claims to "avoid prolonging meritless claims," *Steinert*, 440 F.3d at 1224. "Continuing to pursue claims after a reasonable attorney would realize they lacked merit can warrant sanctions under § 1927." *Frey v. Town of Jackson*, 41 F.4th 1223, 1245 (10th Cir. 2022); *see also Baca*, 806 F.3d at 1278 ("[I]n a meritless case, protracted failure to do anything but dismiss the case . . . might be sanctionable."). Ultimately, the propriety of Section 1927 sanctions is committed to the discretion of the district court. *Baca*, 806 F.3d at 1278 n.17.

Furthermore, a federal court has "inherent authority to sanction" a party or attorney who "'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *E.g., Hutchinson v. Pfeil*, 208 F.3d 1180, 1186 (10th Cir. 2000) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "In this regard, if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party." *Chambers*, 501 U.S. at 46 (quoting *Universal Oil Prod. Co. v. Root Ref. Co.*, 328 U.S. 575, 580 (1946)). Sanctions under this theory are "limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017). Non-statutory "inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

Finally, Fed. R. Civ. P. 11(b) "imposes . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). A federal court must "evaluate [an attorney's] conduct under a standard of 'objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document.'" *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015) (quoting *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988)). "Because our adversary system expects lawyers to zealously represent their clients, [the Rule 11] standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable." *Id. See Collins v. Daniels*, 916 F.3d 1302, 1320 (10th Cir. 2019).

## ANALYSIS

My conclusion that sanctions should not be ordered here arises from two propositions: First, that under the standards for sanctions, it is a very close call on whether they are merited here on the facts; and second, that a trial court may, in its discretion, refuse to assess attorney's fees under any of these authorities if the *relative* equities do not support them. I do not believe discretionary sanctions against Plaintiffs are appropriate, based on numerous facts and circumstances of this case.

First, the Defendants' conduct in this case aroused as many suspicions as it did alleviate them. Turning to the Recommendation I submitted in this case suggesting summary judgment for Defendants, I noted the following, which I provide here in detail. I will thereafter address the import of these facts:

> The record contains a letter from Louis J. Butera, D.O., of the Palm Beach Neurology medical practice dated June 25, 2015. Dr. Butera states that Mr. Abreu has been his patient for several years and suffers from moderately severe multiple sclerosis. Dr. Butera describes Mr. Abreu's condition as a paraparetic and totally disabled. ECF 125-10. At his deposition, Mr. Abreu denied ever seeing that letter and did not know why it was prepared. ECF 151-15 at 172. Mr. Weiss explained needing a description of Mr. Abreu's

condition for the ADA complaints, and it was either Mr. Noriega or Ms. Paloni who obtained the letter for him. ECF 151-16 at 38.

Mr. Weiss has a client by name of Janet Hoyt who also has brought many ADA public accommodation lawsuits. ECF 151-16 at 29-30. Mr. Weiss met Janet Hoyt through Mr. Merwin. *Id*. at 227.  Mr. Weiss did not know whether his client was the same "Janet Hoyt" who notarized Mr. Abreu's affidavit in January 2017. *Id*. at 226.

Mr. Weiss believes that Ms. Paloni had employees who confirmed the presence of ADA violations. ECF 151-16 at 115-116. Ms. Paloni denied that anyone worked for her, although occasionally and only in Florida, she conceded, others would go take measurements for her. ECF 151-18 at 229-232. Both Ms. Paloni and Mr. Weiss stated that they spoke with each other since the filing of the present federal lawsuit. ECF 151-18 at 249-250; ECF 151-16 at 79. Mr. Weiss added that he informed her of the instant federal lawsuit. ECF 151-16 at 79. Ms. Paloni denied discussing Plaintiffs' claims against them or learning about this litigation from Mr. Weiss. ECF 151-18 at 250.

The attorneys who represented Santiago Abreu disagree whether (1) the Colorado lawyer Defendants' role was limited strictly to that of passive local counsel or (2) whether the Colorado lawyer Defendants acted as lead counsel on cases filed in Colorado. According to Mr. Huff, theirs was an entirely secondary role, acting at Mr. Weiss' direction. It was Mr. Weiss who handled all communications with Mr. Abreu and Ms. Paloni, and who paid litigation fees. Mr. Huff filed lawsuits based on the information that Mr. Weiss provided him; discussed pending lawsuits with him; served Colorado defendants; and communicated with Colorado defendants to help settle them. ECF 151-19 at 18-20, 23-24, 28-34, 53-54. He also spoke with Mr. Leiner. *Id*. at 36-37. Almost all of the Colorado ADA cases of which he was part settled. Often Mr. Weiss would inform him for how much to settle a case. *Id*. at 63. Mr. Huff's law practice was involved in ADA litigation for less than a year, from early 2016 until September 2016. Mr. Huff transitioned remaining active lawsuits back to Mr. Weiss. The work was not profitable. *Id*. at 38, 61. By contrast, Mr. Weiss described Mr. Huff as acting independently on the Colorado lawsuits and taking charge of them. ECF 151-16 at 35, 65. Mr. Weiss added that Mr. Huff would add his name to the cases without his knowledge. *Id*. at 134.

Mr. Abreu and a companion, Mr. Noriega, carried no credit cards with them on their trip. ECF 151-15 at 146. Mr. Abreu withdrew cash at ATMs from the account in which his Social Security disability benefit was deposited. *Id*. at 123. Mr. Abreu did not fly to Colorado. The last time he traveled by airplane was in 2010 to Maryland. *Id*. at 61, 176. However, Defendants produced in discovery a one-way airline ticket bought in Mr. Abreu's name for a March 9, 2016, flight from Fort Lauderdale to Denver. ECF 151-11. Not only was that flight nine months after Mr. Abreu's Riverbend visit, but the airline said the flight was neither actually taken nor rebooked (ECF 151-12). Mr. Weiss explained that either Ms. Paloni or Mr. Noriega gave him the ticket when he asked for proof of Mr. Abreu's travel to Colorado. ECF 151-16 at 173.

6

On their two trips to Colorado from Florida, Mr. Abreu and Mr. Noriega traveled by motor vehicle. ECF 151-15 at 127-128. As Mr. Abreu testified at his deposition, the two traveled in a minivan borrowed from George Merwin that had a wheelchair lift. *Id*. at 53. Mr. Weiss described it as an RV that was not ADA accessible. ECF 151-16 at 173, 177, 180, 233. Neither Mr. Weiss nor Mr. Huff saw any purchase receipts by him during his travels from Florida to Colorado (or produced such receipts in discovery). *Id*. at 112, 180-181; ECF 151-19 at 115. The only document indicative of travel that was produced was the airline ticket which postdated the Riverbend visit by nine months and was not even used in the first place. ECF 151-16 at 179-180.

Mr. Abreu brought no ADA public access lawsuits against businesses from their travels *between* Florida and Colorado. ECF 151-15 at 208. Mr. Abreu does not remember all the places he visited during his trip to Colorado. However, he does remember seeing signs for Colorado Springs. *Id*. at 62. He remembers being in Durango with Mr. Noriega to visit a friend there by name of Jesus. Mr. Abreu wanted to start a marijuana grow business and was looking for a place to live. During his time in Durango, Mr. Abreu also monitored for ADA violations, and from that effort, lawsuits were filed against Durango businesses, mostly hotels. *Id*. at 63-69. Mr. Abreu left Durango and traveled to the town of Bailey (where the Riverbend restaurant was located). Jesus had a cousin, Teresa, who lived there and whom Mr. Abreu already knew. *Id*. at 70-71. Mr. Abreu stayed in Denver with friends. *Id*. at 72. Mr. Abreu does not remember visiting Grand Junction or Telluride even though he sued businesses located there for ADA violations. *Id*. at 73-78. He explained that his primary activity while in Colorado was marijuana cultivation which entailed long workdays. The ADA lawsuits grew from ancillary visits to area businesses. *Id*. at 77-78. Yet Mr. Abreu was able to affirm that he actually was present at the Riverbend restaurant when, on July 14, 2015, he and Mr. Noriega stopped there for lunch.

Mr. Abreu signed an affidavit for the case. The affidavit's signature and notarization page is blurry and looks as if it had been signed and faxed separately from the rest of the document. Attached to the complaint in the underlying federal lawsuit is a photograph of a meal order ticket from the Riverbend restaurant. The photograph is incomplete. It shows only Riverbend's name and address; an order of antipasti for $10.9[ ]; and the date of [ ]-14-15 (potentially indicating *July* 14, 2015). There is the name, "Nicole," on the ticket which may refer to Nicole Garcia, a server at the Riverbend at that time. ECF 1-1 (filed in 16-cv-00432-MEH). The receipt was generated by the restaurant's Point-of-Sale (POS) system. ECF 124-5 at 7. It does not appear to be a receipt *of payment* for the meal. Mr. Abreu testified at his deposition that Mr. Noriega paid the bill in cash. ECF 151-15 at 146.

On June 26, 2019, Mr. Abreu signed another affidavit. He repeated that "[o]n July 14, 2015 [he] personally visited the Riverbend [restaurant]." He added that he had "experienced violations of the 2010 Americans With Disabilities Act" while there, and he requested his lawyers to file suit against Riverbend. ECF 125-8. John Bradley notarized the document and identified Mr. Abreu by his State of Florida Identification Card. *Id*. Mr. Bradley is a Florida lawyer and friend of Mr. Weiss. ECF 151-16 at 9. One of the above affidavits—presumably the first but Plaintiffs do not specify—Mr. Abreu denied reading

7

> before signing it. Mr. Noriega brought it to him for his signature and took it back to Mr. Abreu's attorney. ECF 151 at 11, ¶ 8; ECF 151-15 at 240.
>
> At his deposition taken for purposes of the instant lawsuit, he explained that he and Mr. Noriega chose the Riverbend restaurant at random. He did not use his scooter because he saw no ramp leading from the parking lot into the restaurant. Instead, Mr. Noriega pushed him in his wheelchair. Upon entry, Mr. Abreu went into the restroom. The space was too small for him to be able to maneuver fully around in his wheelchair. By that point, he had become so angry that he lost his appetite and did not order a meal for himself. Instead, he shared the pasta with Mr. Noriega. Of note, Mr. Abreu did not remember the Riverbend visit until his lawyer showed him photographs in preparation for his deposition. ECF 124-2 at 22-26, 46. While at Riverbend, Mr. Abreu took photographs of the sink, grab bar, and toilet in the men's restroom as well as the front of the building to show the lack of a ramp. His photos were blurry and "all messed up." ECF 151-15 at 111. Mr. Abreu says it was not until his return to Florida when he gave Mr. Weiss the photos he had taken at Riverbend. ECF 124-2 at 31-32. Mr. Weiss does not remember conversing with Mr. Abreu about Riverbend. ECF 151-16 at 109.
>
> Before they commenced the instant lawsuit, Ms. Patterson, on Plaintiffs' behalf, sent demand letters to Mr. Weiss and Mr. Huff requesting documentary proof of Mr. Abreu's trip to Colorado and his Riverbend visit. In addition, Ms. Patterson described the litigation conduct in terms of abuse of process, civil conspiracy, fraud, and a RICO violation. She invited offers to settle those potential claims. ECF 1-11; ECF 1-12; ECF 1-13; ECF 1-14. Mr. Weiss did not respond to the letter. He regarded it as extortive and inconsistent with the stipulated nature of the lawsuit's dismissal. ECF 151-16 at 96-97. Mr. Huff did not respond because of its aggressive tone. He regarded the letter as making baseless threats and the earlier newspaper articles as defamatory. ECF 151-19 at 84-87.

Recommendation of United States Magistrate Judge, ECF 163 at 8-24 *seriatim*.

There are other findings of a similar nature that I made but have not repeated here. Collectively, they demonstrate confusing, contradictory, and disorganized positions taken by Mr. Abreu, his counsel, and his ADA expert. Any skeptical attorney would have smelled something fishy. They consistently contradicted each other, often failing to get their stories straight. Mr. Abreu's bills during his travels were paid in cash with no paper trail except one butchered receipt. At one point Defendants asserted Mr. Abreu traveled to Colorado on an airplane, but the evidentiary record disagreed; Mr. Abreu remembered almost nothing about his trip to Colorado *except* that he visited the Riverbend Market and Eatery, and even then, he could not recall what

the place looked like until he was shown pictures. Material documents, including photographs, were blurry and seemed patched together. Mr. Abreu testified he did not read an affidavit before he affixed his sworn signature. The first case was settled almost immediately upon Plaintiffs' request for Mr. Abreu's deposition.

Plaintiffs add certain allegations of the same nature. Before filing this lawsuit, they sought proof of Mr. Abreu's existence from the Weiss and Huff Defendants, but their communications went unanswered. Plaintiffs' Response, ECF 193, at 1-2. Plaintiffs' own investigation of the existence of Mr. Abreu failed to produce any concrete results despite his hundreds of federal lawsuits. *Id.* at 9. Mr. Abreu's ADA expert, Ms. Paloni, "evaded roughly 20 attempts at service over 2 ½ years." *Id.* Ms. Paloni included alleged ADA violations at the Riverbend Market and Eatery "that were entirely false," *id.* at 10, which strongly implied she blended the allegations against that establishment with others against which she had previously made allegations of ADA violations. Ms. Paloni could not remember virtually any details about her week-long trip to Colorado which she took with defense counsel, during which she inspected the Riverbend Market and Eatery. Mr. Abreu could not produce any hotel receipts, purchase receipts, fuel receipts, photographs of his trip, or other indicia that he actually traveled to Colorado. He could not provide contact information for the two men with whom he traveled to and throughout Colorado. *Id.* at 14.

Furthermore, the Weiss Defendants' Motion is a virtual cut-and-paste job from their original motion that Judge Kane denied. Indeed, they even failed to proofread to delete stale or inapposite assertions. The current Motion was filed on **December 19, 2022**. In it, for example, the Weiss Defendants assert: "Motions to Dismiss filed on behalf of Defendants and Huff Defendants are currently fully briefed and docketed. As to Paloni, Plaintiffs have yet to have a summons issued or have her served." ECF 179 at 4. However, Judge Kane denied the motion to dismiss on **October**

9

**23, 2019**. ECF 41. Further, Ms. Paloni was served with -- and then answered -- the Amended Complaint on **January 26, 2022.** The Motion refers to a "Composite Exhibit 'A'" which I could not find. The Motion asserts: "A copy of this Motion for Sanctions ("Motion") and the required Safe Harbor Letter (attached hereto as Exhibit "C"), was sent to counsel for Plaintiffs on **September 23, *2019*** via email." ECF 179 at 7 (emphasis added). The Motion included two footnotes that apparently refer to events associated with the first motion but not the current Motion. *Id.* nn. 2, 3.

Such practice, not surprising given the nature of the underlying repetitive ADA tester cases and the resulting filing of many dozens of cases with potentially similar or identical facts, does not merit this Court's award of sanctions. Yes, Mr. Abreu's existence was credibly established early in the case, but the veracity of his travel to the Riverbend Market and Eatery at the time in question remained a contested issue to the end. Along these lines I note the parting words of Judge Kane in his Order denying the original motions to dismiss and motion for sanctions: "Plaintiffs' lawsuit does not become entirely frivolous if Mr. Abreu exists, as there would still be questions regarding whether Mr. Abreu visited Plaintiffs' restaurant or any of the dozens more he has sued in Colorado or whether there is more than one person acting as Mr. Abreu." ECF 41 at 16.

The Huff Defendants' Motion does not suffer from the same defects. One of the main premises of their Motion is that they reached out to Plaintiffs' counsel in a spirit of cooperation, trying to secure their dismissal based on the evidence of the existence of both Mr. Abreu and Ms. Paloni, and those persons' actual presence in Colorado at the times alleged. What is significant, and quite different from Plaintiffs' version of what happened during the 2016 lawsuit and immediately preceding the current case, is the Huff Defendants' admission that Plaintiffs' counsel listened to them, engaged with them, interacted with them, but ultimately disagreed that there was

10

a sufficient basis to dismiss this lawsuit. If this record established that that sort of interaction had been reciprocated during the time that Plaintiffs were seeking informal, credible evidence of Mr. Abreu's allegations, this Recommendation might be different.

Further, while I did recognize that "a party may not defeat the entry of summary judgment simply by calling a witness's credibility into doubt," ECF 163 at 5, an attorney's sincere, fact-based, and record-supported concerns of credibility may be sufficient to (1) satisfy Section 1927's mandate requiring a reasonable attorney to realize a claim lacks (or does not lack) merit; (2) avoid the conclusion that an attorney's actions have been vexatious (under a court's inherent authority to sanction), and (3) meet an attorney's obligation to conduct a reasonable inquiry into the facts under Rule 11. Further, and unfortunately for them, the Huff Defendants are burdened with the confusion that the Weiss Defendants and their client created by their actions, because I do not see a record of the Huff Defendants engaging in affirmative conduct to (1) dispel the contradictions evident from the Abreu entourage's conflicting testimony and statements, including that of Mr. Abreu himself, Ms. Paloni, Mr. Noriega, and even Attorney Weiss, or (2) distance themselves from the suspicious evidentiary record.

Under none of the sources of sanctions addressed herein or requested by Defendants can I find by a preponderance of the evidence vexatious, multiplied, or frivolous/bad faith conduct. But even if I had, if a balancing of equities has any application at all to a trial court's imposition of sanctions, then no such sanction is merited here.

## CONCLUSION

Accordingly, the Court respectfully recommends[1] that the Motion for Attorneys' Fees filed by Defendants Brett Huff, Richard Leslie, and Huff & Leslie, LLP [ECF 177; filed December 19, 2022] and Defendants Weiss Law Group, P.A., Jason Weiss and Peter Leiner's Renewed Motion for Fed. R. Civ. P. Rule 11 and 28 U.S.C. § 1927 Sanctions [ECF 179; filed December 19, 2022] be **denied**.

Respectfully submitted this 17th day of February, 2023, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).